# EXHIBIT 1

WILMERHALE

June 7, 2024

**Brendan R. McGuire**

+1 212 295 6497 (t)
+1 212 230 8888 (f)
brendan.mcguire@wilmerhale.com

Hagan Scotten, Esq.
Derek Wikstrom, Esq.
Assistant United States Attorneys
United States Attorney's Office
Southern District of New York
26 Federal Plaza
New York, New York 10007

Re:  Eric Adams

Dear Mr. Scotten and Mr. Wikstrom:

As you know, we represent Eric Adams, the 110th Mayor of the City of New York, and his 2021 campaign committee ("Eric Adams 2021").  As detailed below, we believe that the continuing series of leaks of confidential and grand jury information concerning this matter warrant an investigation.  It would be a sad irony if the very principle your investigation is seeking to protect – election integrity – were to be subverted by leaks about the investigation that influence the upcoming 2025 mayoral election.  We respectfully request a response confirming that the office has opened an investigation into the source(s) of past leaks and is taking all necessary measures to prevent future leaks.

Since our initial meeting with you in November, there have been numerous articles about the investigation that have contained confidential information, including grand jury-related information, and cited to anonymous sources familiar with the investigation.  In one instance, a media outlet was provided with a copy of the office's search warrant on or before the day of the search.  We provide below a sample of some of the articles.

- On November 2, 2023, *The New York Times* ("*The Times*") reported that it had obtained a copy of the search warrant authorizing the FBI to search the residence of Brianna Suggs that day and described its contents in detail, including the focus and direction of your investigation.[1]  The article also provided a detailed description of the materials seized by the FBI during the search, and specifically highlighted a folder seized with the Mayor's name written on it.  In addition, the article disclosed that FBI agents had served a grand jury subpoena seeking testimony from Ms. Suggs.

---

[1] *See* The New York Times, *U.S. Investigating Whether Adams Received Illegal Donations From Turkey* (Nov. 2, 2023), https://www.nytimes.com/2023/11/02/nyregion/eric-adams-brianna-suggs-fbi-raid.html.

Hagan Scotten, Esq.
Derek Wikstrom, Esq.
June 7, 2024
Page 2

**WILMERHALE**

- The following week, on November 10, 2023, *The Times* reported in detail how the FBI seized the Mayor's devices from him, that the government had obtained a court-authorized search warrant for the devices, and that the devices were later returned to the Mayor.[2]  *The Times* had been told that the devices the FBI seized included at least two cellphones and an iPad.

- Two days later, on November 12, 2023, citing "three people with knowledge of the matter," *The Times* reported that the investigation was focused on whether the Mayor had pressured the New York City Fire Department ("FDNY") on behalf of the Turkish embassy in New York.[3] According to the sources, the FBI had been interviewing top FDNY officials about the issue since the spring and those interviews included two FBI agents assigned to the same New York public corruption squad that had executed the search warrant at Ms. Suggs' residence.  The sources further disclosed that the FBI had asked "detailed questions" about "safety issues, the approval process and whether pressure had been brought to bear and by whom."[4]

- On November 14, 2023, *CNN*, citing its own source familiar with the investigation, reported that FDNY Commissioner Daniel Nigro had received a grand jury subpoena seeking his testimony and had agreed to a voluntary interview by the FBI.[5]

- On April 5, 2024, *The Times* reported that the investigation was now focused on flight upgrades, writing that "[f]ederal prosecutors in Manhattan and F.B.I. agents conducting the inquiry have developed evidence that Mr. Öcal helped arrange at least some of the upgrades in coordination with Ms. Abbasova."[6]  These details were attributed to two people "familiar with the federal investigation" who agreed to speak on

---

[2] *See* The New York Times, *F.B.I. Seizes Eric Adams's Phones as Campaign Investigation Intensifies* (Nov. 10, 2023), https://www.nytimes.com/2023/11/10/nyregion/adams-fbi-investigation-phones.html.
[3] *See* The New York Times, *F.B.I. Examining Whether Adams Cleared Red Tape for Turkish Government* (Nov. 12, 2023), https://www.nytimes.com/2023/11/12/nyregion/eric-adams-investigation-turkey-consulate.html.
[4] *Id.*
[5] *See* CNN, *Investigation Into NYC Mayor Adams Focused On Campaign Money And Possible Foreign Influence* (Nov. 14, 2023), https://www.cnn.com/2023/11/14/politics/mayor-eric-adams-investigation-campaign-money-foreign-influence/index.html.
[6] *See* The New York Times, *F.B.I. Examining Free Airfare Upgrades Received by Adams* (Apr. 5, 2024), https://www.nytimes.com/2024/04/05/nyregion/eric-adams-turkish-airlines-upgrades.html.

Hagan Scotten, Esq.
Derek Wikstrom, Esq.
June 7, 2024
Page 3

**WilmerHale**

condition of anonymity.[7]

- On May 20, 2024, *The Times* reported that Rana Abbasova has "turned against" the Mayor and is cooperating with the investigation, according to "three people with knowledge of the matter."[8]

- Recently, we were informed that an article will be published imminently concerning an interview conducted of a City Hall employee.

As we know you agree, the strategic disclosure of confidential investigative information to generate evidence or inflict reputational harm is of course anathema to our system of justice. To the extent that information relates to matters occurring before a grand jury, disclosure is a violation of Rule 6 of the Federal Rules of Criminal Procedure. *See* Fed. R. Crim. P. 6(e)(2)(B)(iv). Disclosing the recipient of a grand jury subpoena, the focus and direction of a grand jury investigation, or records obtained via grand jury subpoena violates Rule 6(e). *See, e.g.*, *Hodge v. FBI*, 703 F.3d 575 (D.C. Cir. 2013); *Germosen v. Cox*, No. 98-cv-1294 (BSJ), 1999 WL 1021559 (S.D.N.Y. Nov. 9, 1999). In addition, the unauthorized disclosure of law enforcement action by a government agent can constitute obstruction of justice. *See The New York Times Co. v. Gonzales*, 459 F.3d 160, 163 (2d Cir. 2006).

The Mayor respects your office's authority to conduct this investigation and shares your interest in holding any who have violated the law to account. He has refused repeated invitations to be critical of the investigation in public and has cooperated with every request made in private. He has also directed his administration and his campaign team to do the same.

Notwithstanding the respectful and reserved approach the Mayor has taken regarding the investigation, we have been deeply concerned about the pattern of repeated and reprehensible media leaks about confidential details of your work. When we met with you in November, we advised you that the leaks appeared specifically designed to harm the Mayor and to impact him politically. Over the past seven months, our alarm has only grown as there have been additional disclosures about the investigation.

We have received numerous requests from members of the media seeking comment about specific non-public investigative steps shortly after they have been taken. Just two weeks ago, *The Times* reported Ms. Abbasova's ongoing cooperation with the FBI and specific actions of Ms. Abbasova that are the subject of this investigation. As noted above, we just recently received information suggesting that another article will run imminently regarding a recent interview of a current City Hall employee. There is

---

[7] *Id.*
[8] *See* The New York Times, *City Hall Aide Is Cooperating With Corruption Investigation Into Adams* (May 20, 2024), https://www.nytimes.com/2024/05/20/nyregion/adams-fbi-corruption-investigation-aide.html.

Hagan Scotten, Esq.
Derek Wikstrom, Esq.
June 7, 2024
Page 4

**WILMERHALE**

no indication that the information provided by the employee was in any way derogatory
to the Mayor, yet an article about the interview will almost certainly be damaging to both
the Mayor and the witness.

      The manifest unfairness to the Mayor is only magnified by the fact that we are
not aware of any evidence against him.  Over the past seven months, we have conducted
our own review of the areas we understand you are investigating.  Our review has
included an evaluation of relevant campaign documents, an analysis of tens of thousands
of electronic communications, and witness interviews.  Simply put, we have not
identified any evidence of illegal conduct by the Mayor.  Consistent with our findings, at
no time has your office told us that he is a target of any investigation.  Nonetheless, the
leaks of confidential information associated with the investigation have continued.

      Unfortunately, there can be no question that the leaks have already influenced
next year's mayoral election.  If they continue, they have the potential to fundamentally
compromise the Mayor's reelection candidacy.  To be clear, we are not suggesting that
the office is the source of these leaks.  But, to the extent anyone has the authority and the
ability to hold others accountable for past leaks, and prevent future leaks, it is the United
States Attorney's Office.

      While the content and cadence of the above leaks would be troubling in any case,
this pattern is especially disturbing in an investigation of the political campaign of a
high-profile elected public official.  We know your office is sensitive to the impact that
this type of investigation can have on an election; however, we believe that the detail of
the public reporting to date, including especially the citation to search warrants and
subpoenas, has already had an impact on the upcoming mayoral election.  In particular,
potential election opponents are using the reporting about the investigation to attract
supporters and contributions, and to cast doubt upon the Mayor's prospect for re-
election.

      The next filing deadline for mayoral candidates to disclose the total amount of
campaign contributions and the identities of their donors is July 15, 2024 – less than 45
days away.  From a political perspective, this is an extremely important date for
candidates challenging an incumbent to demonstrate their viability.  Unfortunately, over
the next 45 days, we are concerned that past reporting and any new reporting based on
leaks about the investigation will be exploited for political purposes to the Mayor's
detriment.

      Finally, we feel compelled to reiterate that New York City campaign finance and
ethics laws prohibit the use of campaign funds to cover legal fees incurred as a result of
the investigation, prohibit the provision of pro bono legal services to the Mayor, and
prohibit the City's Law Department from representing the Mayor.  The Mayor therefore
must cover these costs personally or have them paid for with a legal defense trust.  As a
lifelong public servant, the Mayor cannot afford these costs personally so he and his team

DocuSign Envelope ID: 5F11EE89-C3E8-4E96-B43E-D6B2401D7868

Hagan Scotten, Esq.
Derek Wikstrom, Esq.
June 7, 2024
Page 5

WILMERHALE

have been forced to create a legal defense trust to coordinate the fundraising of every dollar needed for legal fees and other related expenses.  To date, over $1 million has been raised for the trust via contributions that cannot exceed $5,000.  There can be no doubt that the leaks have increased the financial costs the legal defense trust has been forced to pay, and the fundraising efforts for the trust have diverted time, attention, and resources from his re-election campaign.

Based upon the above, we believe there is a sufficient basis to open an investigation of the potential improper disclosure of confidential and grand jury information about your investigation.  The risk of interference with the upcoming mayoral election is too high not to act.  Accordingly, we respectfully request that you confirm that the office has opened an investigation into the source(s) of past leaks and is taking all necessary measures to prevent future leaks.

We conclude by restating our commitment, on behalf of the Mayor and Eric Adams 2021, to assist your investigation in any way that would facilitate its prompt and just resolution.  We are prepared to continue to cooperate and provide information, including discussing the Mayor offering his perspective on any relevant topics.  We hope you agree that it is critical to take prompt action to minimize any unintended impact on the upcoming election.

We look forward to hearing from you soon.

Sincerely,

*Brendan R. McGuire*

Brendan R. McGuire
Boyd M. Johnson III


cc:    Daniel Gitner, Chief, Criminal Division
       Maurene Comey, Co-Chief, Public Corruption Unit
       Robert Sobelman, Co-Chief, Public Corruption Unit