OA2CadaC

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4                v.                        24 Cr. 556 (DEH)

5    ERIC ADAMS,

6                     Defendant.

7    ------------------------------x

8                                          New York, N.Y.
                                           October 2, 2024
9                                          10:30 a.m.

10
     Before:
11
                          HON. DALE E. HO,
12
                                           District Judge
13
                          APPEARANCES
14
     DAMIAN WILLIAMS,
15        United States Attorney for the
          Southern District of New York
16   BY:  HAGAN SCOTTEN
          CELIA V. COHEN
17        DEREK WIKSTROM
          ANDREW ROHRBACH
18        Assistant United States Attorneys

19   QUINN EMANUEL URQUHART & SULLIVAN LLP
          Attorneys for Defendant
20   BY:  ALEX SPIRO

21

22

23

24

25
```

OA2CadaC

```
 1              (Case called)
 2              MR. SCOTTEN:  Good morning, your Honor.  Hagan
 3    Scotten, Celia Cohen, Derek Wikstrom, and Andrew Rohrbach for
 4    the government.  Also, right behind counsel table are Braden
 5    Florczyk and Anna Gamboa who are paralegals with our office.
 6              THE COURT:  Good morning.
 7              Everyone, please have a seat.
 8              MR. SPIRO:  Good morning, your Honor.  Alex Spiro on
 9    behalf of Mayor Adams.
10              THE COURT:  Good morning, Mr. Spiro.
11              Good morning, Mayor Adams.
12              THE DEFENDANT:  Good morning.
13              THE COURT:  I'm Judge Ho, the district assigned to
14    your case.
15              We're here for an initial conference in this matter.
16    Before I proceed, I just want to give everyone a roadmap of
17    what I intend to go over today.  We'll go over some preliminary
18    matters, we'll talk about the pending motions that have been
19    filed and set a schedule for resolving those, we'll address
20    discovery, including the nature and volume of discovery, the
21    timeline for production and any motions related to discovery,
22    we'll talk about a trial date, a few items with respect to
23    guidelines that I have for the parties going forward on a few
24    matters.
25              Two other things I want to raise.  I'll give the
```

OA2CadaC

1    parties an opportunity to raise anything you want to raise with

2    me and then we'll talk about the Speedy Trial Act.

3            Let's start with the preliminary matters.  Can I get a

4    report from the government on the nature of the case.

5            MR. SCOTTEN:  Yes, your Honor.  This case -- and I

6    know your Honor has read the indictment, so I'll be very brief.

7    But in short, this case concerns a long-running conspiracy by

8    the defendant to use his official position to obtain improper

9    benefits.  Some of those benefits, such as the illegal foreign

10   campaign contributions are illegal per se, simply by their

11   nature.  Others, such as the free heavily discounted travel he

12   took from foreign officials are illegal only because they were

13   exchanged for something else, because they were exchanged for

14   the defendant's sacrifice of his duties to the city in those

15   official positions.  And so in total there's a conspiracy

16   charge encapsulating all of that.

17           Then there are three substantive offenses, although

18   there's two counts of one, which are, in short, wire fraud,

19   which is a result of filing false certifications and seeking

20   matching funds for what the defendant in fact knew to be

21   illegal contributions.  There is a foreign contributions

22   count -- actually two because that's a per-calendar-year count,

23   and then finally there is a bribery count.  I'd like to go into

24   further detail, but I know your Honor's reviewed the

25   indictment.

OA2CadaC

1          THE COURT:  Thank you.

2          Does the government at this time anticipate — and I

3    know it may be hard to say — filing a superseding indictment

4    that would add charges or defendants?

5          MR. SCOTTEN:  We think that is quite likely, both --

6    I'll say it is possible as to additional charges and likely

7    that additional defendants will be charged in connection with

8    this scheme.  Now, it's possible, and not entirely up to us,

9    that those additional defendants may have different cases,

10   whether or not they're superseded in this case or deemed

11   separate matters, I think the Court can judge once it sees

12   those cases.

13         THE COURT:  Thank you.

14         I don't suppose you have anything as far as a timeline

15   for when we might expect something like that?

16         MR. SCOTTEN:  I don't.  I can say we're moving

17   quickly.  And so I think the Court will able to analyze at

18   least some of this early before it's committed to a trial date,

19   but I can't say when any particular investigation will

20   conclude.

21         THE COURT:  Understood.

22         I assume based on the nature of the charges there are

23   no identifiable victims requiring notice under the CVRA?

24         MR. SCOTTEN:  That's our understanding.  That's right,

25   your Honor.

1          THE COURT:  Can you tell me your understanding of the

2     current status of the speedy trial clock.

3          MR. SCOTTEN:  So the speedy trial clock was initially

4     not started with the defendant's consent at the appearance

5     before Judge Parker on Friday, and the speedy trial clock is

6     now tolled by the defendant's actions.  Because the defendant

7     has filed pretrial motions, he's prevented the clock from

8     starting to run.  So the clock will be tolled until those

9     motions are fully briefed and speedily resolved.

10          THE COURT:  I want to confirm, Mr. Spiro, that's your

11     understanding as well?

12          MR. SPIRO:  It is not, your Honor.

13          THE COURT:  Please.

14          MR. SPIRO:  So I just want to respond, and I guess it

15     is easier to use the podium very quickly.

16          THE COURT:  I was just asking about the speedy trial

17     clock.

18          MR. SPIRO:  We waived for two days.  The motions, and

19     there were two of them filed, one of them has to do with

20     intentional government misconduct, and so they don't get an

21     exclusion from the Speedy Trial Act when they commit

22     intentional misconduct.  So the speedy trial clock runs as of

23     today as far as I'm concerned.

24          THE COURT:  You're saying that the speedy trial clock

25     is not paused by the motion to dismiss?

OA2CadaC

1          MR. SPIRO:  Not when adjacent to a motion that

2    involves intentional government misconduct, no.  That's our

3    position.

4          THE COURT:  I'm not sure I understand that.  Could you

5    elaborate why, under 3161(h)(1)(D), the filing of your motion

6    to dismiss, which was filed before the motion for sanctions,

7    does not stop the speedy trial clock and any authority you have

8    for that proposition?

9          MR. SPIRO:  Sure.  When they are simultaneous motions

10   filed and one of them has to do with government misconduct,

11   it's our position that intentional government misconduct and

12   the need to respond to that does not toll the speedy trial

13   clock.  They don't get an advantage from that.  And so --

14         THE COURT:  I understand that's your position,

15   Mr. Spiro, but what's your authority for it?

16         MR. SPIRO:  There are Second Circuit cases -- if the

17   Court will just give me a moment.

18         THE COURT:  Well, we can come back to the speedy trial

19   clock at the end of today's conference, Mr. Spiro.  That's

20   fine.  I understand your position.  We'll talk about it at the

21   end.

22         Why don't we move to a schedule for the motions that

23   you've filed.  My first question before setting a schedule is

24   whether or not you anticipate filing any additional motions at

25   this time?  The reason I ask is because I'd like to set a

OA2CadaC

1  single schedule for any early motions that don't require the

2  benefit of a review of the discovery so that we're not doing it

3  piecemeal, we can do it all at once.

4  　　　　MR. SPIRO:  We do not intend to file additional

5  motions at this time.

6  　　　　THE COURT:  Under local Rule 49.1, there's two weeks

7  for the government to oppose and one week for reply, but I'll

8  hear from the parties if either of you think that there's a

9  more appropriate schedule for these motions.

10 　　　　MR. SCOTTEN:  Thank you, your Honor.

11 　　　　So, assuming that the Court is effectively setting a

12 deadline of today — it sounds like with the defense consent —

13 for motions under 12(b), which, as your Honor says, are

14 typically done all together, responded to all together, and

15 resolved all together, I think we would ask for a response

16 period of four weeks and be comfortable with two weeks for

17 reply.

18 　　　　I'm happy to discuss the two motions briefly.

19 　　　　So the first motion --

20 　　　　THE COURT:  I don't think we need to get into the

21 substance of the motions.  You may have to touch upon the

22 substance a little bit, but can you tell me why you think you

23 need four weeks when the local rules typically provide for two?

24 　　　　MR. SCOTTEN:  Sure.  So the first motion, the motion

25 to dismiss a count, is -- entirely expected, is essentially the

OA2CadaC

1    motion that every public corruption defendant files at the

2    beginning of a case.  So that we don't think would require any

3    additional time.  I think we can do two weeks if the Court

4    wants to do them in different time sequences.

5          The motion alleging improper disclosure of grand jury

6    material was a bit surprising to us because the Mayor has

7    previously taken the position through his attorneys that he

8    knew our office was not behind any improper disclosures, and in

9    fact said he understood that it was against our interest

10   through his attorneys.

11         Answering that probably requires a more careful

12   submission to the Court for a couple reasons.  It's bounded by

13   a lot of factual misunderstandings.  Some of those I think are

14   maybe honestly come by.  The defendant is not going to be aware

15   of all the measures our office has taken in this case to

16   prevent unauthorized disclosure for the simple reason that we

17   don't discuss those things publicly or with subjects of

18   investigations.

19         Other aspects -- and I'll get to why this takes time

20   because it's sort of about being careful and how we address it.

21   Other aspects, the factual errors I think are more maybe clear

22   from the face, but have to be developed carefully.  So, for

23   example, the motion asserts that with respect to some subpoenas

24   that were served, only the prosecution team could have known

25   about them, and that's obviously wrong.  They were served upon

OA2CadaC

1    the defendant, his staff, his campaigns.  And so the circle of

2    the distribution of that information as a natural result of

3    serving it became quite wide.  We want to be able to fully

4    inform the Court as to sort of this broad circle of people that

5    the defendant shared it with, but we don't want to imply that

6    just because somebody had the information, that person or group

7    of persons was the source of any particular disclosure.  So we

8    want to make a careful submission that has some factual

9    development in it and doesn't sort of -- sort of makes our

10   points without implying any particular person was the source of

11   disclosure.

12           THE COURT:  Thank you.  I'll hear from Mr. Spiro.

13           MR. SPIRO:  They brought this case, they decided

14   they're going to bring it, they knew we were going to file

15   these motions.  They knew, as they just said, that these

16   motions are filed regularly in corruption cases.  In fact,

17   these same prosecutors brought the case against Mr. Benjamin,

18   which was dismissed.

19           As to the other motion, they also knew we were going

20   to bring that motion.  We sent three letters telling them

21   effectively we were going to bring that motion, telling them to

22   stop leaking, stop violating their ethical canons, stop

23   committing 6(e) violations, which are crimes.  We told them

24   that.  They knew we were going to file that motion.  They

25   brought this case against the city Mayor.  There's a primary

OA2CadaC

1    election at the beginning of next year.  We have every right

2    and the public has a right to have a speedy trial here.  There

3    is no reason to expend any more time on this issue or to give

4    them any further than two weeks.  They have a bevy of lawyers

5    here to handle these motions.  They're not particularly

6    complicated.  There's absolutely no good cause to extend this

7    any further as to the two weeks.

8         The case that your Honor asked me about, I had thought

9    you were going to speedy trial at the end, but I'll give it to

10   you now, which is *United States v. Moreno*, which is a Second

11   Circuit case, 2015.  I can give you the cite if you would like.

12        THE COURT:  We'll take it up at the end of the

13   conference, Mr. Spiro.

14        Just so I understand, your proposal is government

15   oppositions to your two motions in two weeks.  So that would be

16   October 16th?

17        MR. SPIRO:  Yes.

18        THE COURT:  The government's proposal is October 30th;

19   is that right?

20        MR. SCOTTEN:  That sounds right, your Honor.

21        And, your Honor, as I said, the first motion was

22   expected.  So if the Court wants them one at a time, we can do

23   two weeks and then four weeks.  I think it would be quite easy.

24        MR. SPIRO:  With all due respect to the government,

25   that proposal, just to make the record clear, is objected to by

OA2CadaC

1    the defense.  We can even get our motions in faster than a

2    week, if necessary, and the reply.  We do not want this case

3    dragging.  There's no reason for it to drag and there's no

4    reason to deviate from the local rules.

5         The other thing I would just simply say is I assume

6    the government is preserving their cellphones and

7    communications, text messages, and other electronic

8    communications regarding the sanctions motion, and so are

9    everybody else at the U.S. Attorney's Office that was involved

10   in that.

11        THE COURT:  Here's what I'm going to say:  Let's have

12   the government's oppositions to the motions due — I'll give you

13   a little more than two weeks — October 18th, which is two weeks

14   from this Friday.

15        How much time would you need, Mr. Spiro for your

16   replies?

17        MR. SPIRO:  I would stick to the standard schedule at

18   this point.  If you want to do it a day early, I'd do a day

19   early, but I think the next Friday is fine.

20        THE COURT:  We'll say one week, which is consistent

21   with the local rules.  So that's October 23rd.  Unless there's

22   an objection from the government?

23        MR. SCOTTEN:  No objection, your Honor.

24        THE COURT:  I want to set a hearing date, if we need

25   one, we may not, but let's get something on the calendar for

OA2CadaC

1  that.  I said the 18th for the oppositions, right?

2         MR. SPIRO:  Yes, your Honor.

3         THE COURT:  We did one week.  So the 25th for reply.

4         MR. SPIRO:  Yes, your Honor.

5         THE COURT:  I said 23rd, but I think I meant 25th.

6         MR. SPIRO:  I thought so, too, your Honor.

7         THE COURT:  Thank you.

8         So 25th for reply.  Let's say the 31st for a hearing

9  date if we need one.  Is that fine with everyone?  I'm getting

10  a quizzical look from you.

11         MR. SCOTTEN:  I'm wondering, your Honor, if it might

12  be profitable — to the extent your Honor is going to entertain

13  argument on the motions — to have one date for argument and

14  then, if necessary, a later hearing date.  I suspect to the

15  extent there was going to be any hearing, the Court would

16  identify particular issues of material fact, which might not be

17  the entirety of the motions, it might proceed in the more

18  orderly fashion that way or we can sort of argue it, and then,

19  if there's going to be a hearing, do a hearing, as the Court

20  prefers.

21         THE COURT:  The latter is what I had in mind here.  I

22  wasn't setting an evidentiary hearing on the motions, on the

23  sanctions motion at this time.  It will be argument on the

24  motions that have been filed.

25         MR. SCOTTEN:  Thank you, your Honor.

OA2CadaC

1          MR. SPIRO:  That's fine, your Honor.

2          THE COURT:  Great.  Let's turn to discovery.

3          Before diving into the nature and volume of discovery,

4    I want to confirm that there's already been both an oral and a

5    written *Brady* order in this case.  Is that everyone's

6    understanding?

7          MR. SCOTTEN:  That's correct, both by Judge Parker,

8    your Honor.

9          MR. SPIRO:  Yes.  And I have reiterated a specific

10    raid *Brady* demand as to *Brady* I know is in the government's

11    potion, so yes.

12          THE COURT:  I'm sorry.  I didn't hear that, Mr. Spiro.

13          MR. SPIRO:  I have also served on them a specific

14    *Brady* demand regarding their key witness in this case, and

15    *Brady* that we believe is in their possession, and *Giglio* we

16    believe is in their possession.  Yes, it's those two orders

17    plus my specific demand.

18          THE COURT:  Just to put on the record, I'm directing

19    the government to review and comply with the written order that

20    Magistrate Judge Parker put on the docket earlier today.  Okay?

21          MR. SCOTTEN:  Did you want to hear about discovery,

22    your Honor?

23          THE COURT:  I just wanted to hear your confirmation

24    that you'll review and comply with the order.

25          MR. SCOTTEN:  Absolutely, your Honor.

OA2CadaC

 1          THE COURT:  And Mr. Spiro, you've already submitted to

 2   the government a request for specific *Brady* material?

 3          MR. SPIRO:  Yes, your Honor.

 4          THE COURT:  And you'll continue to do that if anything

 5   new occurs to you, any requests to the government, to seek out,

 6   review, and/or produce certain evidence or information that you

 7   believe may contain or is reasonably likely to lead to the

 8   discovery of *Brady* material?

 9          MR. SPIRO:  I'm doing my best, but they haven't

10   replied to it yet.

11          THE COURT:  In the event that there are other

12   categories of information that you seek from the government,

13   you'll put in a request?

14          MR. SPIRO:  Yes, your Honor.

15          THE COURT:  Thank you, Mr. Spiro.

16          Now, the parties also filed a proposed protective

17   order yesterday signed by counsel.  I just want to confirm on

18   the record that the parties consent to it?

19          MR. SCOTTEN:  Yes, your Honor.

20          MR. SPIRO:  Yes, your Honor.

21          THE COURT:  I'll so order it after this conference.

22          Mr. Scotten, could we turn to the nature and volume of

23   discovery in the case.

24          MR. SCOTTEN:  Absolutely, your Honor.

25          I suppose I'll start with the nature since your Honor

OA2CadaC

1    started there.  So, obviously I can't cover all of it.  The

2    discovery is extensive.  For the Court's reference, this is an

3    investigation that began in the summer of 2021.  So that's a

4    period of time essential to the conduct here, but, for

5    reference, it's before the defendant had even become Mayor.

6         Some of the more important categories of discovery we

7    expect to be turning over will include written communications,

8    texts, stuff from signal applications, emails, calendar entries

9    and the like.  And to be clear, some of these will be from the

10   defendant himself, the defendant directing a particular person

11   to obtain a contribution or asking the Turkish official -- and

12   I'm going to use all the names in the indictment, obviously not

13   proper names, asking the Turkish official for particular

14   benefits.

15        But others of the communications will then be sort of

16   the follow-on coordination between the defendant's

17   coconspirators.  So, for example, where the defendant will send

18   a message to a staffer or perhaps the airline manager.  They'll

19   then put in action by talking to coconspirators about how to

20   give the defendant exactly what he asked for in terms of

21   illegal money or travel.

22        And so what I wanted to flag about that, your Honor,

23   is a lot of those communications are going to be in Turkish.

24   Now, we have draft translations of what we consider to be the

25   most important communications and, assuming we can reach a

OA2CadaC

stipulation, we'll provide those to the defendant to help him

prepare for the case.  But the defense may have a different

view as to what's important, and we're certainly -- haven't

translated everything in our possession.

        The second category I wanted to discuss are business

records.  Some of these will be the things that your Honor

would expect in any white collar case — bank records, credit

card records, telephone records and the like.  Others will be

more specific to this case.  So, for example, we'll be

possessing -- sorry.  Disclosing a lot of records from the

Turkish airline, showing things like that the defendant did not

pay for the $50,000 in flights he took in 2017 or the

subsequent cases he obtained these tickets worth $10,000 or

more by requesting to pay economy class to create the illusion

that he was paying his way, but arranging in advance to receive

business class tickets and not some sort of upgrade on the day

of.

        There will also be absence of records issued.  So

produce all the records, but what may be more significant is if

something is missing.  So, for example, when the defendant

reached out to the Turkish official and the airline manager to

provide benefits to the person described as the Adams

fundraising indictment, we'll of course produce those messages

of the defendant's direct statements.  We'll also produce

credit card records, hotel records and the like showing that

OA2CadaC

1    none of this was paid for.

2            Similar category, government records, your Honor, and

3    I think the Court can foresee what some of that is going to

4    look like — forms submitted to the Campaign Finance Board

5    showing particular illegal contributions that we're going to

6    most directly prove, certifications from the defendant that he

7    understood all the rules applicable and to comply with them.

8    Others may be things like ethics trainings, which the defendant

9    took as a city official and at which he acknowledged

10   understanding, for example, that building inspections are

11   conducted for the safety of those who occupy the buildings and

12   that giving -- taking any kind of benefit in association with

13   that is a bribe, is against the law.

14           The next category, and I have two more I just want to

15   hit, your Honor, is electronic records.  Some of these will be

16   things like GPS data showing that, for example, a meeting

17   occurred when a witness said it occurred.  And then others will

18   be things like photographs, voice memos.  Some of the

19   coconspirators here communicated by leaving each other voice

20   memos, often in Turkish.  That will be a substantial electronic

21   volume discovery.

22           And then the final category I wanted to hit on, before

23   I get into sort of volume and timeline, your Honor, is

24   witnesses.  We expect offering the testimony of multiple

25   witnesses who directly participated with the defendant in the

OA2CadaC

1    charged conduct.  And they'll obviously testify about the

2    things they saw him do and heard him say to commit the charged

3    crimes.  But we'll also be calling lots of other fact witnesses

4    who will testify about events the defendant was involved in.

5    So just to give one example, I expect we'll be calling

6    witnesses who will say they made illegal contributions to the

7    campaign, and then after they were approached by the FBI, one

8    of the defendants' agents and a city hall employee came to them

9    carrying a message from the defendant, they should not tell the

10    truth to the FBI, and that if they continued to lie, the crimes

11    of question wouldn't be uncovered.

12        I can't get into a lot more detail about witnesses

13    because, as your Honor saw and I just alluded to, there's been

14    significant issues of witness interference in this case, but

15    that is a significant category of evidence for which we will

16    make the appropriate disclosures at the appropriate times.

17        In terms of schedule, your Honor just referenced

18    protective order, assuming the Court finds it acceptable and

19    enters it.  The defendant just today handed us a hard drive and

20    we will start loading that up with the first batch of

21    discovery.  We think it's about 560 gigabytes.  And then

22    subsequent productions after that we intend to make through a

23    commercial vendor, through one of these database companies,

24    which there can often be a little bit of a technical glitch

25    just getting whoever they use as a vendor to talk to our

OA2CadaC

vendor, but once we get that hooked up, it makes for a very

rapid transfer and also makes everything searchable by the

defendant's attorneys, which tends to greatly expedite things

here.

So that first production, which we will start loading

up as soon as we get back to our office, contains significant

electronic records, it contains some of the communications I

discussed, such as emails, copies of the defendant's devices,

and some files from the New York City Department of

Investigation.

The second production, which is already being sort of

processed by the vendor to be exported, is basically subpoena

returns.  And as your Honor can imagine, for a three-year

investigation, they're extensive.  The third we'll begin to get

some of these written messages and, I think in particular,

emails over to the defendant, and we'll continue to push out

productions after that.

Now, I'm sure the Court is going to ask me, when can

you get it all done.  By sort of, I guess, somewhat

happenstance.  Exactly one year ago today, Senator Menendez had

his initial appearance.  And at that appearance, the government

asked Judge Stein to give us until February to make discovery

complete and Judge Stein said December.  So we began this case

looking to comply with that aggressive schedule and we think we

will be able to get out substantially all of the discovery by

OA2CadaC

1    December.

2            There's a couple caveats I do need to make the Court

3    aware of, if that would be alright.

4            So the first is there's areas where we still don't

5    have everything coming in.  For example, City Hall -- the

6    Mayor's office, and both of his campaigns have had subpoenas

7    since July, we haven't received -- we have received very

8    little, something, it's not that they're not engaging, but we

9    received very little in terms of response.  When we get that

10    in, we'll have to process it and disclose it to the defendant's

11    attorneys.  A sort of significant wildcard in this case is the

12    defendant's personal cellphone that was seized in November.  As

13    the Court knows, after learning of our investigation, the

14    defendant chose to change --

15            MR. SPIRO:  I'm going to object to the continual

16    20-minute opening statement, most of which is misleading and

17    false in a response to a Court's request for categories of

18    discovery which -- and I appreciate that it's a "tell" that

19    they have a weak case, I get that, but it's now a full

20    10-minute opening statement about what the witnesses are going

21    to say, about what they think is going to happen next.  The

22    Court just simply asked the prosecutor when they're going to be

23    done with the discovery and the categories.  So the defense is

24    going to object to it because it's obvious what he's doing.

25            MR. SCOTTEN:  I should say, your Honor, if it's okay,

1    this is what most courts in this district ask because knowing

2    what the discovery is and what the evidence is helps the courts

3    to rule on motion.  And the thing I was about to get to, the

4    cellphone, really is a significant variable in discovery

5    timing, if the Court would like to hear about it.

6            THE COURT:  Okay.  First, I don't find that

7    Mr. Scotten has done anything inappropriate.  This is helpful

8    for me in understanding the discovery schedule.  I will give

9    you a chance, Mr. Spiro, to respond to anything that you want

10   to, but with respect to the cellphone, I think I understand

11   what you're referring to, a locked cellphone, which you don't

12   have access to; is that right?

13           MR. SCOTTEN:  That's correct, your Honor.  But the

14   sort of significant factor is we probably will get access to it

15   at some point.  This is the kind of thing where decryption

16   always catches up with encryption.

17           THE COURT:  Let me ask you a question, Mr. Scotten.

18   As relevant to the discovery production schedule, can you

19   provide a copy of this cellphone to defense without unlocking

20   it?

21           MR. SCOTTEN:  We can't.  Without unlocking it, nobody

22   can even look in the phone, much less --

23           THE COURT:  You can't clone it unless you unlock it is

24   what you're saying?

25           MR. SCOTTEN:  That's exactly right, your Honor.

OA2CadaC

1    And so the reason it's a delta is we don't know when

2    we'll get access.  And then when we do get access, it's not

3    just a question -- we can give him a full copy because it's his

4    own phone, but in terms of discovery litigation, to date, when

5    we've acquired the defendant's personal communications in an

6    overt way, we've then have to do a privileged review, which is

7    entirely appropriate, and not just assertions of privilege

8    relative to his private attorneys, but the city may hold a

9    privilege over some of these communications.  And so the

10   process of sort of going through this to produce disclosable

11   discoverable things that can be used as exhibits can be time

12   consuming.  I'm not asking for anything on account of that.  We

13   simply don't know what'll happen and we're alerting to the

14   Court to the possibility of a future development.

15   And in terms of variability, of course, there's just

16   other areas where devices were recently seized, and so those

17   will take some time also to go through.  I understand the

18   defendant's phone was recently seized and he can have all of

19   that, but for coconspirators whose devices are seized, we can't

20   just give him everything on those phones.  Our warrant doesn't

21   allow us to seize other people's communications and give them

22   to the defendant, it only allows us to seize what the warrant

23   allows us to seize, so we have to go and identify those and

24   export only those to the defendant and his attorney.

25   And then of course I have to say, as we often do, your

OA2CadaC

1    Honor, this investigation is continuing, so we'll produce new

2    discovery, our review of files will of course continue, and

3    I've never been in a case where we didn't continually find

4    small things and we say, wow, we really should give that to the

5    defendant, and we recognize that our obligations under Rule 16

6    and *Brady* are continuous, and so when we acquire something new,

7    we'll disclose it.

8          Last thing on that, your Honor, I'm just trying to be

9    comprehensive in case things come up, as the Court may know,

10   there are several related investigations here.  So what we

11   propose to do there is discuss them in the first instance, to

12   the extent we can, with the defendant and tell them how we

13   propose to handle the evidence gathered in those cases, and if

14   there's a disagreement, we'll bring it to the Court's

15   attention.

16         I think that is our submission on essentially timing,

17   but happy to answer the Court's question.

18         THE COURT:  The first question, you mentioned the

19   second production would be produced via vendor and that would

20   be searchable by defense.  Is that also the case with respect

21   to the first production that you're going to be making via the

22   hard drive, is that going to be searchable and useable in the

23   same way?

24         MR. SCOTTEN:  It won't come loaded into a database.

25   It will come old fashions PDFs and the like, but it will all be

OA2CadaC

| 1 | text-searchable documents and such.  And if he wants to put it |

1    text-searchable documents and such.  And if he wants to put it

2    into a database, he certainly can.

3          THE COURT:  So you propose a December cutoff or

4    deadline, I should say, for discovery along the lines of the

5    Menendez case.  What precise date in December would you

6    propose?

7          MR. SCOTTEN:  December 15th, your Honor.

8          THE COURT:  Figure the first week of December in the

9    Menendez case, the 4th or the 5th, if memory serves.

10          MR. SCOTTEN:  Then the 5th, your Honor, or the 4th, as

11    the Court chooses.

12          THE COURT:  I'll hear from Mr. Spiro on this.

13          MR. SPIRO:  Listening to the prosecutor makes me wants

14    to go back for a second to the *Brady* issue that the Court

15    raised with me.  The Court asked me a question which was

16    something along the lines of, if I know of *Brady*, I made a

17    specific demand, if I know of other issues with the government,

18    am I going to raise them.  Obviously I don't have any

19    obligation to do that, the obligation is on them.  And so I did

20    want to sort of clarify that, that there will be times when I

21    make the specific *Brady* demand.  I've had other cases where

22    prosecutors hide evidence all the way up until trial and, in

23    the middle of the trial, the trial ends.  And so I don't have

24    any affirmative obligation that I'm aware of to always make

25    them aware when I know they're hiding something.

OA2CadaC

1          In terms of what the prosecutor just laid out about

2     what he thinks his case is, I'm not going to respond to it.

3     That's not what production questions are about.  I will say

4     that I've seen the statements, the key ones, the exciting ones

5     that they wanted to put in the indictment and what that

6     supports and what that doesn't support, and so that speaks for

7     itself.  I think the only thing that really mattered in what he

8     said is that they'll comply by December 4th.  I don't really

9     understand what "substantially complied" means, but I assume I

10    will have everything that they have on December 4th.

11         There were three caveats I think that he gave.

12         One is, it is true that they served subpoenas.  They

13    served some subpoena on City Hall.  It seems to want every

14    possible interaction that Mayor Adams has had with any

15    immigrant community in New York City.  They seem to find his

16    interactions with immigrant communities of every possible type

17    to be suspicious to them.  I don't know why that's so

18    suspicious to them.

19         Second, nobody told them when to bring this case, they

20    decided when to bring this case.  They wanted to do the sort of

21    fake raid of Gracie Mansion when they asked for a cellphone

22    again — that was their call.  They don't get to delay discovery

23    because they decided to do that the day of.  They decided when

24    to bring this case.

25         And in terms of the full copy of his cellphone, we'll

OA2CadaC

1    get that, there's not going to be anything on that, but that

2    shouldn't be any delay either.

3         So I didn't really hear much in the way of reasons why

4    that can't be full compliance on December 4th, and it sounds

5    like that's what it will be.

6         THE COURT:  I just wanted to hear, Mr. Spiro, if you

7    thought that there was a different production timeline that is

8    appropriate here.

9         MR. SPIRO:  If they're going to have all of the

10    discovery to us by December 4th, I don't know whether they plan

11    to drift and make it undigestible, but if they do it in the

12    right way and provide us the *Brady* and *Giglio* material that

13    they have now that I know they have now, with all due speed, I

14    don't have a problem with completion of discovery on

15    December 4th.

16         THE COURT:  So I'll order that discovery be produced

17    by December 4th.  I think everyone understands, and it sounds

18    like this is going to happen, it needs to be produced on a

19    rolling basis as soon as practicable.  If there are issues with

20    discovery, I'm sure that you will all raise them with me.  I'm

21    just going to remind you all of your duty under local Rule 16.1

22    to meet and confer, if there are any disputes about discovery,

23    to do that in good faith before raising those issues with the

24    Court.

25         MR. SCOTTEN:  Your Honor, if I could, just one issue

OA2CadaC

```
1   before the Court moves off that.  I should have mentioned it, I
2   was going from an outline of something that the defendant just
3   said.  We don't know what he's referring to when he says he has
4   made a particular demand.  We'd like to have it so we can
5   engage with him as Rule 16.1 requires.  I don't know if -- the
6   defendant obviously has a very large team of lawyers working
7   for him.  I'm not sure if his lead counsel believes they sent a
8   letter and they didn't.  But if there's a letter asking for any
9   particular things, we'd love to have it.
10          THE COURT:  I thought I heard Mr. Spiro say that the
11   letter was given today.  Maybe I'm --
12          MR. SCOTTEN:  Unless it was filed on our way into
13   court and we don't have it.
14          MR. SPIRO:  I made the oral statements, which are the
15   same as a written specific *Brady* demand, that they have
16   information, all four of them, that their key witness in this
17   case lied to them and is lying about this case and that there
18   was his statement that they are in possession of where she says
19   the opposite of what they claim in the indictment.  They're
20   aware of that, all four of them.  They haven't turned it over
21   to me and I'm sitting here waiting for it.  So there is I think
22   the fourth or fifth time I've made that specific *Brady* demand.
23          THE COURT:  I'm sorry.  Did you make it in writing?
24   I'm just trying to clarify the record because I don't think I
25   understood what you were representing earlier to me.
```

OA2CadaC

1          MR. SPIRO:  It hasn't been, nor is it required to be

2     made in writing.  I've made it.  It's a specific *Brady* demand.

3          THE COURT:  I wasn't saying that it was required to be

4     made in writing, I was just trying to clarify the record as to

5     whether or not one had been submitted to them in some kind of

6     formal way.

7          I think the government, you're aware of your

8     obligations under *Brady* pursuant to the written order that

9     Judge Parker issued earlier today, so I'll leave it to you all

10     to work all of this out.

11          MR. SCOTTEN:  Thank you, your Honor.

12          THE COURT:  So I want to talk about a motions schedule

13     related to materials that are produced in discovery.

14          Mr. Spiro, if everything is produced on December 4th,

15     you're obviously going to need — and it will come on a rolling

16     basis — some time to review and then to prepare motions.  How

17     much time do you think you'll need for that?

18          MR. SPIRO:  I have no reason to think there will be

19     need for additional motions in this case outside of when they

20     give us their exhibits.  If this case survives our motion to

21     dismiss and our additional motions or any part of this case

22     survives, at that point, they turn over their exhibit list,

23     there'll be motions in limine.  I don't have any reason to

24     think that there are going to be additional motions.  I have to

25     see the discovery, but we want to get to trial.

OA2CadaC

```
1           THE COURT:  I understand that.  I think it's standard
2   practice typically to set a motion schedule for anything that
3   comes up in discovery.  I know as of right now you're not
4   anticipating filing any, but you haven't seen the material yet.
5   So, after seeing it, you might want to file something in which
6   case I think it's important to have a placeholder.  If you
7   don't need it, then you don't need it.  I'd like to put
8   something on the docket that we have at least as a control date
9   for any such motions.  We'll have an opportunity to talk before
10  then, I'm sure, to see whether or not that schedule remains
11  necessary.  Just assuming that there might be something that
12  comes up in discovery that you want to file a motion on, how
13  much time do you think you might need to prepare that after
14  December 4?
15          MR. SPIRO:  Two weeks.
16          THE COURT:  Any objection from the government on that?
17          MR. SCOTTEN:  We have no objection to -- the defendant
18  can take as little or as much time as we want.  We'd love to
19  have a schedule that doesn't require us to file on January 1st,
20  which I think is what he just proposed, but no objection to the
21  defendant filing as fast as he wants.
22          THE COURT:  Defendant's motions are due on
23  December 18th.  Obviously we have to take the holidays into
24  account here.
25          When would the government want to oppose by?  If you
```

OA2CadaC

```
1   need a few moments to confer, please, feel free.

2              MR. SCOTTEN:  Just need to look at a calendar, your

3   Honor.  Thanks.

4              January 6th, your Honor.

5              THE COURT:  Mr. Spiro.

6              MR. SPIRO:  That's fine, your Honor.

7              THE COURT:  Again, I know you might not need these

8   deadlines, but assuming we do, the government files on

9   January 6th.  How much time would you need for reply?

10             MR. SPIRO:  Standard one week, your Honor.

11             THE COURT:  1/13.

12             Government, any objection?

13             MR. SCOTTEN:  None, your Honor.

14             THE COURT:  Any motions related to discovery, opening

15  by defendant December 18th, opposition by the government

16  January 6th, reply from defendant January 13th.  I'll set a

17  control date for a hearing on any such motions, if filed, let's

18  say January 27th.

19             Given the schedule that we've laid out here with a

20  hearing on the pending motions at the end of this month and a

21  control date for a hearing on any further motions of January

22  27th, I think it would make sense to set an interim status

23  conference around the time of the discovery deadline of

24  December 4th just to check in to see how discovery is going and

25  also whether or not we in fact need those motions dates.  If
```

OA2CadaC

1  discovery is due on December 4th, I'm going to propose, if this

2  works with your schedules, December 5th.

3          Any conflicts?  Mr. Spiro, I see you're about to

4  speak.

5          MR. SPIRO:  That date may be tricky.  I also think

6  that if the Court is setting this, just partially inquire

7  whether or not we're going to make additional motions, we

8  probably want the next week, at least from the defense's

9  perspective.

10          THE COURT:  Okay.  Let's say December 13th.  Friday

11  the 13th work for everyone?  Mr. Spiro.

12          MR. SPIRO:  That's fine, your Honor.

13          MR. SCOTTEN:  That works for us, your Honor.  We did

14  want to make sure that any reciprocal defense discovery under

15  Rule 26.1 that they have in their possession would also be in

16  our possession by the 4th so that -- much less likely we'll

17  have motions, but you never know, and I understand the Court

18  wants to be comprehensive.

19          THE COURT:  Fair enough.

20          Mr. Spiro.

21          MR. SPIRO:  Until I see the government's discovery, I

22  won't know exactly what our discovery is, but I will provide it

23  under the applicable rules.

24          THE COURT:  Anything else on discovery?

25          MR. SCOTTEN:  I'm not sure, your Honor.  So there's an

OA2CadaC

1    issue with the Classified Information Procedures Act we'd like

2    to discuss, which is in great part a discovery issue.  Happy to

3    do that now or on the Court's timing.

4                THE COURT:  Why don't we address it now.  That's fine.

5                MR. SCOTTEN:  So the short of it, your Honor, is we do

6    anticipate litigation under the Classified Information

7    Procedures Act, often called CIPA.  It's my understanding, and

8    we've been in touch with court personnel, that the process is

9    already underway to appoint a classified information security

10   officer who works for the Court and help the Court handle

11   classified information, help court staff get clearances and

12   help any defense counsel even get clearances.  I think we'll

13   file very shortly, next day or two, on the public docket a

14   letter outlining generally CIPA procedures we expect in this

15   case.  But, obviously, I can't discuss in this forum any

16   specifics about whether there is or is not classified

17   information in this case.  So we will also request shortly a

18   Section 2 conference under CIPA held in a secure area where if

19   the Court -- we can tell the Court something about what may be

20   at issue, and if the Court has questions, it can ask us.

21               And I'll just say in advance, since I see the

22   defendant is prepared to rise in this, that is a approved

23   practice in this circuit, particularly under a wrap.  I think

24   it's in every circuit, but the precedent here is a wrap.

25               THE COURT:  Let me ask you, that filing you're going

OA2CadaC

```
 1   to put on the docket in the next day or two you said,

 2   definitely designate a point person to be the CIPA officer.

 3   Are you going to ask the Court to or are you identifying a

 4   person?

 5           MR. SCOTTEN:  No, your Honor.  To be clear, there's a

 6   sort of senior court officer who appoints these people.  I

 7   don't know if he wants his name on the record, but he'll make

 8   himself known to the Court.  And then he'll choose one of his

 9   subordinates to be the Court's officer.  We don't pick -- I

10   think the Court picks.  I mean, I -- usually, they defer to

11   whoever the officer puts in charge, but it's really somebody

12   who works for the Court, not for us.

13           THE COURT:  Thank you, Mr. Scotten.

14       Mr. Spiro.

15           MR. SPIRO:  I anticipated a lot of the comments today

16   that would come.  Whether or not the intention is to delay the

17   trial or not, I don't know everything going on at this table,

18   but I will tell the Court that we don't need to challenge that,

19   that if it's going to be used as an attempt to delay this,

20   we'll simply ask them what their exhibits are if it's an

21   exhibit, do they actually have any evidence that they're

22   planning to use at the trial if it's admissible evidence.  And

23   that's that.  We don't have to have motion practice.

24           THE COURT:  I thought we already addressed the issue

25   of motion practice, Mr. Spiro.  I'm asking if you had any
```

OA2CadaC

1  response about what Mr. Scotten said about CIPA.

2          MR. SPIRO:  Well, the reason I'm raising it in the way

3  I'm raising it is because if there are *ex parte* communications

4  or this suggestion under this rubric that there's something

5  classified and confidential and people are going to have to get

6  clearances, and maybe it's a delay tactic, I'm not interested

7  in challenging it, meaning I'm telling the Court that whatever

8  happens, not all that I'm going to be privy to, the defense

9  effectively does not care.  We don't believe they have any

10  evidence in this case at all to prove these charges, let alone

11  this.  And so we're not going to be -- the intention is not to

12  even challenge any of this.  I want the Court to be aware of

13  that.

14          THE COURT:  Thank you.

15          So there's no -- go ahead, Mr. Scotten.

16          MR. SCOTTEN:  With all respect to my adversary, I'm

17  not entirely clear he understands CIPA.  It's mostly about

18  discovery obligations.  So it's seldom, although sometimes,

19  subject to adversary challenging, it's really more about making

20  sure that the defendant -- any discoverable information that

21  the defendant may be entitled to, you know, he gets or the

22  Court sees it and says that's not discoverable.

23          I don't even know if he can waive, you know, having

24  the Court review this stuff.  If he wants to look into whether

25  he can just waive everything here, we're happy to look into

OA2CadaC

1    whether it's a waivable right.  But it's not really about our

2    evidence so much as about what he might be entitled to in

3    discovery.

4            THE COURT:  I appreciate you flagging this.  There's

5    no action you're asking the Court to take at this time, you're

6    just flagging this as an issue that's going to come down the

7    road?

8            MR. SCOTTEN:  That's right.

9            THE COURT:  Anything else on discovery?

10           MR. SCOTTEN:  Not on discovery, your Honor.

11           THE COURT:  Mr. Spiro, anything else on discovery?

12           MR. SPIRO:  No, your Honor.

13           THE COURT:  I just want to talk about trial.

14           As a preview for me, if there's a trial, is there an

15   estimate as to how long the government's case will take?

16           MR. SCOTTEN:  Just the government's case in chief,

17   your Honor?

18           THE COURT:  Yes, and then trial altogether.

19           MR. SCOTTEN:  Sure.  So we would propose tentatively

20   four weeks.  Obviously we don't know the length of the defense

21   case, if any, but we think four weeks at this juncture seems

22   reasonable for the Court to budget.

23           THE COURT:  For the entire trial or government's case

24   in chief?

25           MR. SCOTTEN:  For the entire trial.  Obviously that's

OA2CadaC

```
1    making assumptions as with the usual length of the defense

2    case.

3            THE COURT:  Mr. Spiro, do you have any assessment as

4    to how long you think the trial will take?

5            MR. SPIRO:  I don't think it will take nearly that

6    long.

7            THE COURT:  Do you have a sense what you think the

8    proper length of trial is?

9            MR. SPIRO:  Most of the allegations in the indictment

10   are regarding the bribery count, which we don't expect to

11   survive.  The second half of the case is the donations that

12   were made at a couple of fundraisers.  Frankly, I don't see the

13   government's case taking more than a week, other than the

14   simple evidence and the defense a couple of days.  So I think

15   this is a two-week trial, but that's my view.

16           THE COURT:  And of the four weeks that you estimated

17   Mr. Scotten, how much of that was the government's case in

18   chief?

19           MR. SCOTTEN:  About three weeks, your Honor, and then

20   a week for defense case, arguments, obviously not predicting

21   deliberations.  That's historic -- usually that's about the

22   right ratio, can't say that it will be the case here.

23           THE COURT:  Practices vary in this district as to when

24   a trial date is set.  Sometimes it's at the initial conference,

25   sometimes at a subsequent one.  I have typically been doing it
```

OA2CadaC

```
 1   at a subsequent conference after we see how the case unfolds a
 2   little bit, that's in part because I'm reluctant to set a trial
 3   date that's just a control date.  If we set a trial date, I
 4   want it to be something that the parties can realistically meet
 5   and won't seek to move absent compelling cause.  Obviously
 6   things can change, so if it becomes necessary, that's fine, but
 7   I'm generally reluctant to set a trial date at the initial
 8   conference, but I'll hear from you all if there are different
 9   views as to how we should proceed here.
10            Mr. Spiro.
11            MR. SPIRO:  We're asking for a trial date.  They
12   indicted the city mayor of New York.  There is a primary
13   election.  There's no reason not to set it today and there is
14   Second Circuit precedent that says that -- I think it says
15   "ought to be set."  I understand that there's varying practices
16   in this district, but we're asking the Court to set it today.
17   There's no reason not to.  The defense, absent something that I
18   cannot imagine -- it has never happened in my career.  We're
19   not going to ask for a delay.  The government, as they always
20   say, is always ready.  So they decided when to bring this case,
21   we should set a trial date.  We're not waiving the Speedy Trial
22   Act one day for any reason.
23            THE COURT:  Mr. Spiro, what would you propose for a
24   trial date then?
25            MR. SPIRO:  Given when the primary ballots and things
```

OA2CadaC

1    have to be done, this case should conclude in March.

2              THE COURT:  You made a reference to the primary

3    ballots.  What dates do you think are relevant that I should be

4    taking into consideration and setting a trial date?

5              MR. SPIRO:  We're going to expose a little bit of my

6    lack of precise election law.  I knew what I was saying and I

7    meant to make that record on CIPA.  The process in New York is

8    a bit archaic, but, effectively, the ballots have a

9    certification process where nominees go on and that process

10   takes place in March, and so we want this case to be done in

11   March.  Precise dates change year to year and the precise

12   mechanisms change slightly and the election board has to

13   certify, but, effectively, we want this trial to be in March.

14             THE COURT:  The reason I was looking up to the ceiling

15   is because I was trying to think about what the elections

16   calendar looks like here, Mr. Spiro, because I agree that, as a

17   general matter, first of all, the public and Mayor Adams have

18   an interest in a speedy trial here.  I also agree that interest

19   is heightened in the context of the elections calendar.  What

20   I'm not clear about are the precise dates of the elections

21   calendar that matter with respect to that.  It's not obvious to

22   me sitting here, although I could be wrong, that certification

23   deadline matters.  I think the public should obviously know

24   about the results of proceedings here sooner rather than later.

25   So I agree with that, but I'm not sure why the ballot

OA2CadaC

1    certification precisely should matter in that assessment.

2         MR. SPIRO:  Let me help explain a little bit because I

3    needed to learn a little bit about this, too, which is even

4    being placed on the ballot and being allowed to be on the

5    ballot before the actual primary election is a process that

6    happens in March.  And so I think the certification next year,

7    the calendar changes every year, but next year is the first

8    week of April.  So at that time, they certify who gets to be on

9    the ballot, right, you have to have a certain amount of

10   signatures, then there's a whole process, city counsel, that I

11   frankly don't fully understand.  But I do understand that in

12   order to be on the ballot, you have to go through a process.

13   Even an incumbent effectively does not just get to be on the

14   ballot.  And so the people of the State of New York and the

15   Mayor want to have this case done in March, and he has every,

16   in my view, every right under the Sixth Amendment and the

17   Speedy Trial Act to have it done by March.

18        THE COURT:  What I don't understand is why having a

19   trial before this certification process matters for the

20   certification process.  I understand why it matters for

21   Election Day, I think that's pretty obvious, June 24th, I

22   believe, and then there's an early voting period before that.

23   What I'm failing to grasp, and please enlighten me, is why the

24   proceedings here matter for the certification process.

25        MR. SPIRO:  Sure.  At the trial, we expect the Mayor

1    to be acquitted swiftly.  So when he's acquitted, there's not

2    going to be any objections to his placement on the ballot and

3    there's not going to be any issue of making sure that he's on

4    the ballot, and that he has the requisite votes and that

5    everything happens the way it ought to have happened had the

6    government not decided to bring this case.  If he is not

7    acquitted by that point, there are issues in politics that have

8    to do with people saying, well, isn't it possible, as flimsy as

9    it may be, that they get a conviction?  Then we've used our

10   ballots and our nomination and our certification of him on a

11   candidate that is not going to win the election because he was

12   convicted.

13          So the idea of going out and getting the votes,

14   getting the process happening, getting through certification,

15   that entire process, which occurs in March, is quite different

16   being an acquitted innocent man versus a man under the weight

17   of this case.  And so, those more expert in election law and

18   the processes in New York than me have said, and I think

19   they've said publicly, frankly, that the people of the State of

20   New York ought to get an answer then.

21          THE COURT:  Again, tell me if I've got this wrong, but

22   my understanding of the certification process is it's merely

23   the collection and verification of petition signatures; is that

24   not right?  You made a reference to objections based on these

25   proceedings?  I'm not sure I follow.

OA2CadaC

1          MR. SPIRO:  Well, it's not going to be an objection

2    per se based on these proceedings.  He can't be disqualified in

3    any way, shape, or form because of these proceedings.  But the

4    Court, even in its response, the getting of the signatures

5    even, right, so you go to meet with members of the community as

6    an innocent man versus a man with this hanging over them is a

7    different process, it just is.  It's a different process for

8    the voters.  Each voter who is giving their signature is

9    deciding in that moment, I am going to endorse this person to

10   be on the ballot versus that person.  And they decided to pick,

11   of all the politicians in this town, getting their iced teas

12   filled up and having extra legroom, they pick this guy.  So

13   he's at a huge disadvantage and so are the people of New York

14   who elected him.

15          So what we're asking for is to have this case resolved

16   prior to effectively when the election process meaningfully

17   begins, which is of course also supported by the Sixth

18   Amendment, the public interests, Speedy Trial Act, et cetera.

19   But I don't even think -- so I don't know that you need get to

20   this point that has been made publicly, and to me, and that

21   I've made to the Court to even have to get there, your Honor.

22   To have this trial in March, I can't imagine that the

23   government is going to object to having this trial in March.

24          THE COURT:  Let me ask you this:  When does the period

25   for gathering petition signatures begin?

1        MR. SPIRO:  February is my understanding.  Everything

2   I said today was deliberate until this moment, which is that

3   I'm going to give the Court my best understanding of this.

4        THE COURT:  Fair enough.  I'm not going to hold you to

5   that if we figure out the actual dates are something slightly

6   different.  It seems to me, Mr. Spiro, what you're asking for

7   is a resolution of the case before the petition signature

8   period begins, which will be February, not March.

9        MR. SPIRO:  So that, I have evaluated that in my own

10  mind and spoken to the folks that understand the election

11  process.  As long as it's concluded in March, the people of the

12  State of New York are going to get an opportunity, right.  That

13  gives sufficient time.  You're right, I could come in and I

14  could say, no, you know, the verdict must come down before the

15  first signature could go to anybody, I could take that

16  position.  I think the Court would rightfully push back and

17  say, well, since it's a several-week process, you don't need to

18  actually be good to go day one.

19       So that's why I'm putting some give in with my

20  request, because it seems to me, and it seems to me by actually

21  consulting with folks that would know this on all sides, that

22  the case being tried and concluded in March is sufficient and

23  the trial is not going to take nearly as long as the government

24  has predicted, I can assure the Court.  And so I doubt the

25  government, frankly, has an objection to this trial date in

OA2CadaC

1    March.  It would surprise me if they did.

2              THE COURT:  Thank you, Mr. Spiro.

3              Mr. Scotten, it's two questions here:

4              Should I set a trial date today or hold off until we

5    know a little bit more about the case?

6              If I were to set a trial date today, what would the

7    government's position be as to when roughly that trial date

8    should be?

9              MR. SCOTTEN:  Yes, your Honor.

10             So, for the first question, I really think that is

11   entirely in the Court's discretion.  As the Court noted, both

12   practices are common here, that is to say whether or not to set

13   the date today.  I don't think there's really anything about

14   setting a date today that is actually going to expedite the

15   date.  Waiting to set the date until December doesn't mean the

16   Court has to push back whatever date it would set until then.

17   So I don't think there's any advantage one way or the other in

18   terms of speedy resolution in setting a date today verses

19   another day.  It is sometimes nice to set a date early because

20   we make sure that everybody's calendar is clear, but I think at

21   this point everyone is going to clear their calendar for

22   whatever date the Court sets.  So I don't think that's a

23   significant concern.

24             Some things -- in terms of what date the Court should

25   set, whenever it set it, we were again using the Menendez case

OA2CadaC

1    as a model because much like the defendant here, Senator

2    Menendez then was facing the beginning of a reelection cycle in

3    the following year.  As far as we can tell, it looks broadly

4    similar.  And I certainly share with Mr. Spiro the willingness

5    to disclaim my knowledge of election law.  And so we were

6    looking at the May date set by Judge Stein, which, as the Court

7    may know, he really moved heaven and earth to get it done that

8    early.

9          We're going to be comfortable with any date, that's

10   100-percent correct.  But I would be surprised if the defendant

11   is going to, right now, waive all his appellate rights should

12   he be convicted, and there's a lot of things that have to be

13   done before a trial to make sure the defendant's rights are

14   observed.  And so I don't want to be in a position where the

15   Court sets a date that is a rush.  But I understand the

16   defendant, as every defendant does, is going to say, well, I'll

17   be acquitted.  But he's got rights if he's not and I want to

18   make sure we do this in a sufficiently deliberate fashion that

19   all those rights are observed.

20         MR. SPIRO:  If I could respond briefly.

21         THE COURT:  Sure.

22         MR. SPIRO:  I'll be ready to try the case in March.  I

23   didn't hear an objection to March.  I'm not going to be asking

24   for a further delay.  I do know how to try cases and I know

25   when I can be ready for this trial.  This idea, there are no

OA2CadaC

1    appellate rights that are triggered by a lawyer coming in and

2    saying, this is the date we want and the people of the State of

3    New York want this date.  That's my response to that.

4        I understand that they have one example of one

5    politician who had a much, much different case, and defense

6    lawyers have also needed more time and there were lots of

7    different circumstances in that case, including the superseding

8    indictment, completely different evidence, nothing like this

9    case, and they had a slightly later date.  So there's a reason

10   why the Attorney General issues that directive, that cases

11   should not be brought before elections to interfere with

12   elections.  And I think that those words should ring out even

13   now, that this case was brought a month before the national

14   election, and any delay that the government is seeking, we're

15   objecting to.  But I didn't hear that.  I heard, sure, we can

16   be ready, like they always say, at any time.  So that's what we

17   would ask.  We're not waiving Speedy Trial Act and/or anything

18   regarding the Sixth Amendment right to a speedy trial.

19       THE COURT:  Thank you, Mr. Spiro.

20       I didn't hear a lot of daylight, actually, between

21   what you each identified as potential trial dates.  You want

22   March, Mr. Spiro, the government was suggesting we follow

23   something like the schedule in the Menendez case, which got to

24   trial I think in the first or second week of May.  Now that

25   difference of two months may matter a lot to you, but in terms

OA2CadaC

1    of total calendar time, it's not a tremendous amount.  I'm

2    going to take it under advisement today.  We have a few touches

3    in the near future, including for argument on the pending

4    motions.  I think there'll be other opportunities for us to set

5    a trial date soon, but I want to consider your respective

6    positions on this before I do so.

7              Is there anything else with respect to scheduling that

8    you all want to raise with me?

9              MR. SCOTTEN:  Other than returning the speedy trial

10   clock, no, your Honor.

11             THE COURT:  Mr. Spiro.

12             MR. SPIRO:  No, your Honor.

13             THE COURT:  There are a few other issues I want to

14   raise with you before we turn to the speedy trial clock.  The

15   first is guidelines with respect to scheduling and requests for

16   scheduling going forward.  I want to reiterate my belief that

17   the public has a strong interest here in a speedy trial.

18   Obviously Mayor Adams also has a strong interest in a speedy

19   trial.  So I'm going to do my best to keep the case moving

20   forward.  I do have to balance those interests against giving

21   the parties adequate time to litigate this case appropriately

22   to serve the ends of justice.  I'm also aware that changes in

23   the schedule are going to be necessary from time to time, but I

24   want to be clear that any requests to change the schedule

25   should be first made with clarity as early as possible; second,

1   it should be on ECF in a single submission; and third, should

2   have an explanation as to why there's good cause for a change.

3              I highlight all of this because we had some requests

4   around the schedule last week, including around the date of the

5   arraignment, and I just want to clarify why I denied that

6   request to adjourn the arraignment until this week.  On

7   September 26th, I received a request to schedule the

8   arraignment from defense for either September 27th or

9   September 30th.  Later that day, in accordance with that

10  request, I scheduled it for September 27th, which triggered a

11  significant amount of work by the staff of the clerk's office

12  and the district executive's office on pretty short notice

13  because it would have been the following day.  Now at the same

14  time I scheduled this conference for this week, as is common

15  practice in this district to have the arraignment on one day

16  and the initial conference on another.  After that order, I

17  received a succession of communications, a letter on ECF and

18  then two emails to chambers asking for a change in the date of

19  the arraignment and to combine it with this conference due to

20  logistical problems, which were unspecified and confusing

21  language as to what date defense counsel now preferred.  Given

22  the amount of machinery that had already been set in motion to

23  accommodate the initial request for a quick arraignment and the

24  absence of a clear explanation as to why defense wanted a

25  change, I denied the request to change the date of the

OA2CadaC

```
 1    arraignment and to combine it with this conference.

 2              I want to be clear that in the future, if there are

 3    requests to change a certain date, or to have a certain date, I

 4    should say, you'll stick to what you request.  If you need a

 5    change, you'll file it on ECF, not via email to chambers.  I'll

 6    only consider it if you explain why there's good cause in a

 7    single submission for a change in the date.  If you don't, I'll

 8    deny it on that basis alone.  I just want to make sure that

 9    counsel understands that and see if there are any questions

10    from counsel as to those instructions.

11              Mr. Scotten.

12              MR. SCOTTEN:  Not from the government, your Honor.

13              THE COURT:  Mr. Spiro.

14              MR. SPIRO:  Not from the defense.

15              THE COURT:  One other guideline that I want to hit,

16    which is with respect to the presumption of public access to

17    documents.  Now I understand there may be CIPA issues involved

18    in this case and we'll take those as they come, but I just want

19    to remind counsel that there's a presumption of public access

20    to judicial documents, and this is obviously a case of

21    significant public interest.  Other than what you can, without

22    court approval, file in redacted or sealed form under the local

23    rules, things like personal identifying information, financial

24    account numbers and the like, I expect requests for redaction

25    of documents to be narrowly tapered.
```

1          And just to go over the rules here for the procedures,

2     I should say, if it's necessary to file a sealed or redacted

3     document, you have to file a letter motion seeking to redact or

4     seal that document specifying the reasons for such sealing or

5     redaction and citing authority that those reasons can justify

6     overcoming the presumption of public access and then file their

7     own redacted documents under seal, which will remain

8     temporarily sealed until the Court resolves the motion to

9     redact or seal the documents, and if it's appropriate, file a

10    redacted version of those documents on the public docket.

11          Are there any questions about any of that?

12          Mr. Scotten.

13          MR. SCOTTEN:  No.  Thank you, your Honor.

14          THE COURT:  Mr. Spiro.

15          MR. SPIRO:  No, your Honor.

16          THE COURT:  Two other quick items that I want to

17    address before the speedy trial clock.  These are two items

18    that I do not believe rise to the level of a conflict, but

19    which I want to disclose in an abundance of caution.

20          The first is that it's recently come to my attention

21    that Mayor Adams has, at times, been represented by the law

22    firm WilmerHale, including in connection with this

23    investigation.  From 2009 to 2013, I worked at the NAACP Legal

24    Defense Fund, and one of my colleagues during that time, Debo

25    Adegbile, is a partner at WilmerHale.  As far as I know, he has

OA2CadaC

1    not worked on this case or anything related to it, and I don't

2    believe my prior work with Mr. Adegbile over a decade ago is a

3    basis for recusal, but I'm disclosing it to the parties in an

4    abundance of caution.

5        The second item is that this case, as has been

6    revealed by this conference, touches upon New York City's

7    campaign finance laws, and in 2018, I served on the New York

8    City Charter Revision Commission.  That commission recommended,

9    among other things, a proposal to reduce the city's campaign

10    contribution limits.  That proposal was submitted to and

11    ultimately ratified by the voters of New York City and I

12    believe provides for current campaign contribution limits in

13    New York City.  It did not alter existing prohibitions that are

14    based on the identity of a contributor.  I've reviewed the

15    various applicable codes of conduct and the indictment, and

16    sitting here today, I don't believe my prior work on the prior

17    commission constitutes a basis for recusal, but, obviously, if

18    either parties disagrees with me on either front, you can file

19    a motion, and I want to set a deadline for any such motions.

20        We set a deadline of Friday, October 18th, for the

21    government's opposition to the pending motions to dismiss.  We

22    may as well roll everything up there and if anyone wants to

23    file a motion to recuse me, you can file a motion by

24    October 18th.

25        Understood, Mr. Spiro?

OA2CadaC

```
1              MR. SPIRO:  Yes, your Honor.

2              THE COURT:  Mr. Scotten.

3              MR. SCOTTEN:  Yes, your Honor.

4              THE COURT:  Any other matters you want to raise with

5    me before I turn to the speedy trial clock?

6              MR. SCOTTEN:  No, your Honor.  Thanks.

7              MR. SPIRO:  No, your Honor.

8              THE COURT:  Thank you.

9              I'm reminded we need to set times for the hearings

10   that we've put on the calendar.  For the October 31st hearing,

11   I'm actually going to propose we hold that hearing on

12   November 1st, if there's no conflict on either side.

13             Mr. Spiro.

14             MR. SPIRO:  That's fine, your Honor.

15             THE COURT:  Mr. Scotten.

16             MR. SCOTTEN:  Fine with the government, your Honor.

17             THE COURT:  Let's say 2:00 p.m. on Friday,

18   November 1st.

19             MR. SCOTTEN:  Yes, your Honor.

20             THE COURT:  And then the interim discovery conference,

21   which I seat for December 5th.

22             MR. SCOTTEN:  We think it was December 13th, your

23   Honor.

24             THE COURT:  I'm sorry.  December 13th.  Let's also say

25   2:00 p.m.
```

OA2CadaC

1          Let's turn to the speedy trial clock.  Any motion from

2     the government?

3          MR. SCOTTEN:  Yes, your Honor.  Since there's actually

4     probably going to be argument on this, I'll take a little bit

5     more time.

6          Your Honor is correct.  Time is obviously excluded

7     under 3161(h)(7).  We had a chance to look up *Moreno*, the case

8     cited by the defendant.  It's about a different provision.  It

9     was a case in which the government sought continuances based on

10    needing to find a witness and the Court determined the search

11    for the witness hadn't been diligent.  Really, it's no

12    authority at all.

13         But, that said, I think the Court is going to resolve

14    the motions fairly quickly.  And it's obviously we're not --

15    obviously not going to trial until after the December 13th

16    conference.  And I think the Court, implicit in setting that

17    schedule and the like, has already sort of made the requisite

18    factual determinations that excluding time under the speedy

19    trial clock, at least until December 13th, to allow the

20    defendant to receive and review discovery and to determine

21    whether any motions are necessary would be in the interest of

22    justice such that it would, as courts do typically find,

23    outweigh the public's right for a speedy trial at this time.

24    So we'd move to exclude until December 13th, understanding that

25    most of that time is automatically excluded anyway.

OA2CadaC

1        THE COURT:  Mr. Scotten, one of the factors that I can

2   consider, setting aside the mandatory exclusion, I know

3   Mr. Spiro disagrees about whether or not the exclusion is

4   mandatory based on the filing of the motions and we'll address

5   that, but setting aside that and addressing exclusions of time

6   under (h)(7)(A), one of the factors that I can consider is

7   whether or not there is a complex case under (h)(7)(B).  What's

8   the government's position as to whether or not this case is

9   "complex within the meaning of the Speedy Trial Act"?

10       MR. SCOTTEN:  It is complex, your Honor.  Within the

11   meaning of the Speedy Trial Act, I think the allegations are

12   simple and straightforward, but given the volume of discovery,

13   the fact that the defense already wishes to litigate the

14   constitutionality of at least one -- I think it's

15   constitutional in part motion to dismiss, or at least the

16   lawfulness of one of the charges, and just the really

17   tremendous volume of evidence that will be submitted in this

18   case, we certainly think it qualifies under the Speedy Trial

19   Act.

20       THE COURT:  Okay.  I'll hear from Mr. Spiro.

21       MR. SPIRO:  The case I cited stands for the

22   proposition that if the government intentionally commits

23   misconduct to get an advantage in the case by being dishonest

24   with the Court to take more time to find a witness or by

25   leaking grand jury information in order to taint the jury pool

OA2CadaC

1   and do other things that are discussed in the motion, that they

2   don't get an advantage from that, that that's what that case

3   stands for.  And so that is our position as to the first block

4   of time all the way until the second block of time.  Once the

5   Court renders a decision on those motions, I don't see why the

6   government, having brought this case, having prepared this

7   case, having indicted the sitting Mayor can't get us the

8   discovery faster.  They get discovery when they want and the

9   Court set the schedule, but I don't see that next period of

10  time to December 13th as being a period of time now taking that

11  second block that should be excluded.

12        This is not a complex case.  I think the prosecutor

13  just said that the charges in the case are simple and

14  straightforward.  We're talking about one allegation of bribery

15  that we don't think is likely to survive and some $10,000 of

16  donor funds that are then matched.  The act says a case so

17  unusual, so complex.  And it talks about different factors.

18  Lots of defendants — there aren't.  Lots of counts — there

19  aren't.  And so they're producing the discovery in a couple of

20  months.

21        We're not going to be seeking any delays.  The public

22  has a strong interest.  And we don't see any basis, frankly,

23  nor did I hear one for this Court to rule this is a complex

24  case.  If this was a complex case, then every federal case

25  would be a complex case and it's not.  And the Sixth Amendment

OA2CadaC

1   and the Speedy Trial Act says so.

2          We're going to be ready for trial.  And I want to

3   clarify that, which is just simply we asked the Court for the

4   case to be done in March, was my request.  It doesn't mean that

5   if the Court were to give me April or February, we'd ask to go

6   to trial in February.  And so I don't want that March to sort

7   of become a -- one of the bookends that the Court is

8   considering versus their, well, in one other case, we did it

9   May, right.  I heard them say they could do March, and I also

10  heard them sort of just give some analogous comment.  We want

11  this case to be done with by March.  We will not be waiving

12  speedy trial.  We will be ready, if the Court required, to go

13  to trial in February.  And so I wanted to say that.

14         And then the case I referenced before, which is

15  *Gambino* — it's a Second Circuit case — just talks about that no

16  matter what a Court rules on speedy trial exclusion, that the

17  Second Circuit at least suggests that courts should set the

18  trial date regardless, even if things change, because it allows

19  the parties to prepare and everything else.

20         I'll finally say to the Court, and I did my best as we

21  were here to accommodate scheduling, but obviously -- I could

22  just say, my practice is reported to other judges and other

23  districts all over the country, and the sooner that the date is

24  set, I want to make sure I am 100-percent available because

25  there are other people that are going to ask.  And so I just

OA2CadaC

1    wanted to go back and touch on that.  So, thanks.

2              THE COURT:  Thank you, Mr. Spiro.

3              Here are my findings with respect to the Speedy Trial

4    Act.  My reading of 3161(h)(1)(D) and (H) is that when there's

5    a pending motion to dismiss, time is automatically excluded

6    from the Speedy Trial Act calculation.  So with the filing of

7    the motion to dismiss on Monday, I don't think I have any

8    discretion one way or the other, time is automatically excluded

9    through the full submission hearing and prompt resolution of

10   the motions.  So that's automatic.

11             As for the government's request to exclude time

12   through December 13th:  First, I find that this case is

13   complex.  There is not only voluminous discovery, but the

14   nature of the discovery itself supports a finding of complexity

15   as set forth in this hearing, that includes the nature of the

16   electronic records here, which include cellphone records, text

17   messages, GPS location material, the fact that many of these

18   documents or at least some of them are foreign and are going to

19   have to require translation from another language.  The fact

20   that we have potential classified information, issues that will

21   have to be addressed.  There are also significant legal

22   questions in this case as demonstrated by the two pending

23   motions.

24             I find this case is a complex case under

25   3161(h)(7)(B).  That supports a finding that it's appropriate

OA2CadaC

1    to exclude time through December 13th under 3161(h)(7)(A).  I

2    find that the ends of justice served by excluding such time

3    outweigh the interests of the public and the defendant in a

4    speedy trial because it will provide time for production of

5    discovery and review by defendant.  The discovery schedule,

6    which the government has outlined through the beginning of

7    December, is consistent with other cases of a similar nature

8    that have been tried in this district.  It will give time for

9    the defendant to review those materials and report back to the

10   Court as to whether or not he intends to file any motions and

11   will also serve to ensure effective assistance of counsel and

12   prevent any miscarriage of justice.

13          Is there anything else that the parties would like to

14   raise with me today?

15          Mr. Scotten.

16          MR. SCOTTEN:  Not from the government, your Honor.

17   Thank you.

18          THE COURT:  Mr. Spiro.

19          MR. SPIRO:  No, your Honor.  Thank you.

20          THE COURT:  Thank you, all, for your time today.

21   We're adjourned.

22                              *  *  *

23

24

25