quinn emanuel trial lawyers | new york

295 5th Avenue, New York, New York 10016 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7364**

WRITER'S EMAIL ADDRESS
**alexspiro@quinnemanuel.com**

December 23, 2024

**VIA ECF**
The Honorable Dale E. Ho
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 905
New York, New York 10007

Re:    *United States v. Adams*, 24 Cr. 556 (DEH)

Dear Judge Ho:

I write in response to the government's letter regarding alleged violations of S.D.N.Y. Local Criminal Rule 23.1. ECF No. 76. Since the beginning of this case the government has made false and unethical comments calculated to mislead the public—this letter being the latest example. Those comments have raised a substantial likelihood of prejudice to a fair trial by poisoning the public narrative and undermining Mayor Adams's presumption of innocence. That includes statements at a televised press conference from the U.S. Attorney, Assistant FBI Director, and other government officials that Mayor Adams is "perverted by greed and dishonesty"; "abused his power and position for nearly a decade"; "put the interests of his benefactors, including a foreign official, above those of his constituents"; "year after year after year . . . kept the public in the dark" while being "showered with" improper gifts; engaged in "a grave breach of the public's trust"; "abused" the privilege of public office; and crossed "bright red lines" "again and again for years."[1] And all of that does not even begin to account for the government's repeated pre-indictment press leaks and disinformation suggesting Mayor Adams was involved in criminal conduct.

While the government now feigns concern for a fair trial, every public statement by defense counsel was made *after* the government's extensive PR campaign and sought only to correct the false narrative that has already irreparably prejudiced Mayor Adams. From the beginning, Mayor Adams advised the government that he did not want to interfere with the investigation by engaging

---

[1] *See* ABC7NY, U.S. Attorney holds news conference on indictment of NYC Mayor Eric Adams, YOUTUBE, at 5:10-27; 13:53-14:34 (Sep. 26, 2024), https://www.youtube.com/live/z5Oo7BGgqh4; Exhibit A (press release quoting comments).

quinn emanuel urquhart & sullivan, llp

ATLANTA | AUSTIN | BOSTON | BRUSSELS | CHICAGO | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | ZURICH

with the media. And neither Mayor Adams nor his defense counsel did so despite nearly a year of leaks widely circulated to major news outlets or the militaristic investigatory methods the government deployed, including seizing the Mayor's devices on a public street and sending the FBI into Gracie Mansion (both highly publicized) when a simple phone call to defense counsel would have achieved the same result. Only when the indictment was unsealed and the government continued its media barrage was defense counsel finally forced to speak publicly to counteract the government's one-sided and prejudicial commentary it has been unwilling or unable to stop. Indeed, even now, the government spends pages once again showcasing the supposed strengths of its case for public consumption. That false narrative, too, requires correcting.

As a threshold matter, the government's letter fails to establish a violation of Local Rule 23.1. That rule prohibits public statement where there is a "***substantial likelihood*** that [such] dissemination will interfere with a fair trial or prejudice the due administration of justice." L. Crim. R. 23.1(a) (emphasis added). None of the statements the government complains of meet that standard under the circumstances here. Defense counsel's statements were made in response to the government's and law enforcement's extensive leaks and press conference, as well as generally in response to the pre- and post-indictment media reporting—much of it patently inaccurate and prejudicial—that has been dominating New York news cycles for more than a year.

That is precisely why Mayor Adams moved for an evidentiary hearing and sanctions days after the indictment was filed. One need only look at the steady stream of articles from a single reporter—William Rashbaum at the New York Times—for a year before the indictment to understand the scope and severity of law enforcement's leaks of confidential grand jury material.[2] Those articles revealed the identities of expected witnesses, described specific grand jury subpoenas, subpoena targets, a description of the information subpoenaed, and even the contents of the then-sealed indictment against Mayor Adams. The articles, all from a single reporter—who

---

[2] *See, e.g.,* William K. Rashbaum et al., U.S. Investigating Whether Adams Received Illegal Donations from Turkey, N.Y. Times (Nov. 2, 2023) (stating NY Times received a copy of the government's search warrant of Brianna Suggs's home and devices the same day it was executed); William K. Rashbaum et al., F.B.I. Examining Free Airfare Upgrades Received by Adams, N.Y. Times (Apr. 5, 2024) (crediting people with knowledge of the matter); William K. Rashbaum et al., City Hall Aide Is Cooperating with Corruption Investigation into Adams, N.Y. Times (May 20, 2024) (discussing cooperation of government witness); William K. Rashbaum et al., Eric Adams and His Campaign Receive Subpoenas in Federal Investigation, N.Y. Times (Aug. 15, 2024) (discussing contents of grand jury subpoenas); William K. Rashbaum et al., Mayor Eric Adams Faces Crisis as U.S. Investigations Reach Inner Circle, N.Y. Times (Sept. 5, 2024) (crediting people with knowledge of the investigation); William K. Rashbaum et al., Firm Run by Brother of Top N.Y.C. Officials Is Focus of Bribery Inquiry, N.Y. Times (September 10, 2024) (same); William K. Rashbaum et al., U.S. Inquiry Into N.Y. Mayor's Foreign Ties Said to Include 6 Countries, N.Y. Times (Sept. 23, 2024) (same); William K. Rashbaum, et al., Eric Adams Is Indicted After Federal Corruption Investigation, N.Y. Times (September 25, 2024) (discussing sealed indictment against Mayor Adams); William K. Rashbaum, et al., Investigators Search N.Y.P.D. School Safety Offices in Bribery Inquiry, N.Y. Times (Oct. 10, 2024) (crediting sources with knowledge of the matter).

tellingly was accused of receiving confidential grand jury material in at least two other high-profile corruption cases in this District[3]—do not even scratch the surface of the numerous other articles that credited law enforcement sources in their reporting.[4] While the government has disclaimed responsibility for these numerous leaks, the articles and their reported sources speak volumes. Indeed, discovery has revealed dozens of government attorneys and law enforcement personnel involved in this investigation who have not independently denied being the source of the leaks.[5]

The real risk to a fair trial here accordingly would have been if Mayor Adams had remained silent while the government peddled wide-ranging and false accusations of criminal wrongdoing. Rather than issue a standard press release, the government instead initiated a media blitz and conducted a lengthy televised press conference that went far beyond the face of the indictment. During that press conference, the U.S. Attorney stated he "want[ed] to make . . . things crystal clear" that Mayor Adams engaged in "a grave breach of the public's trust," "abused" the privilege of public office, "broke the law," and crossed "bright red lines . . . again and again for years."[6] At that same press conference, FBI Assistant Director James Dennehy smeared Mayor Adams as "perverted by greed and dishonesty." *Id.*; *see* Exhibit A (SDNY press release quoting comments). While *these* statements certainly raised a "substantial likelihood" of interfering with Mayor Adams's right to a fair trial, defense counsel's statements broadly denying the government's charges or reiterating statements made in court filings or at hearings did not. L. Crim. R. 23.1(a); *see, e.g.*, *United States v. Watson*, 2023 WL 7300618, at *14 (E.D.N.Y. Nov. 6, 2023) (government press release referencing "corrupt executives who flagrantly violate the law" and stating defendant ran a "criminal organization" "presumptively involve[d] a substantial likelihood" of prejudice); *United States v. Silver*, 103 F. Supp. 3d 370, 378–79 (S.D.N.Y. 2015) ("In particular, the Court is troubled by remarks by the U.S. Attorney that appeared to bundle together unproven allegations

---

[3] *See, e.g.*, *United States v. Skelos*, 2015 WL 6159326, at *11 (S.D.N.Y. Oct. 20, 2015); *United States v. Silver*, 103 F. Supp. 3d 370, 373 & n.3 (S.D.N.Y. 2015).

[4] *See, e.g.*, Greg Norman et al., FBI raids home of NYC Mayor Eric Adams' chief fundraiser Brianna Suggs, Fox News (Nov. 2, 2023) (crediting "a law enforcement source"); Gloria Pazmino et al., FBI Investigation of NYC Mayor Eric Adams Fundraiser Centers on Illegal Contributions from Foreign Nationals, CNN (Nov. 4, 2023) (crediting "[l]aw enforcement officials"); Craig McCarthy et al., NYC Mayor Eric Adams hit with first subpoena over 2021 campaign, N.Y. Post (Aug. 15, 2024) (crediting "law enforcement sources").

[5] Defense counsel acknowledges the Court previously denied an evidentiary hearing after finding—in part based on the government's limited declaration—that Mayor Adams had not made out a prima facie violation of Rule 6(e). ECF No. 46, at 19. But as the Court acknowledged, that single declaration was "based on interviews with the relevant Government officials, rather than on statements from each of them individually." *Id*. As Mayor Adams previously stated (ECF No. 40, at 7), that hearsay declaration does not refute that other government attorneys and agents leaked information, including to non-press middlemen, nor has the government ever articulated any plausible alternative explanation for the leaks. In any case, the government's continued leaks will be addressed by the defense in due course.

[6] ABC7NY, U.S. Attorney holds news conference on indictment of NYC Mayor Eric Adams, YOUTUBE, at 13:53-14:34 (Sep. 26, 2024), https://www.youtube.com/live/z5Oo7BGgqh4.

3

regarding the Defendant with broader commentary on corruption and a lack of transparency in certain aspects of New York State politics."); Abigail H. Lipman, *Extrajudicial Comments and the Special Responsibilities of Prosecutors: Failings of the Model Rules in Today's Media Age*, 47 Am. Crim. L. Rev. 1513, 1533 (2010) ("Statements by prosecuting attorneys, in particular, have increased likelihood to influence the public because the attorneys speak with 'the inherent authority of the government.'").

At bottom, the allegations in the government's letter are simply an attempt to penalize defense counsel for statements that pose no risk to a fair trial, including statements the government itself admits are accurate—unlike the government's prejudicial misstatements it never addresses in its letter. The government claims (at 3), for instance, that the defense prejudicially "attacked" its key witness in this case, the Adams Staffer, and claimed the government had "concealed from the defense exculpatory information from" that witness. Yet, in the same breath, the government acknowledges that defense counsel's statement was true. This exculpatory information is "alleged in the indictment" (*id.*) and has been in the government's possession for more than a year. However, it was only provided to the defense on December 4, 2024—an obvious violation of the Rule 5(f) Order requiring *Brady* material to be disclosed "promptly after its existence becomes known to the Government."[7] ECF No. 25, at 1. More generally, the government's claim that defense counsel's statements made several months before trial might "taint the jury pool," Ltr. at 3, is misguided considering the handful of statements and their substance, particularly in this District with millions of potential jurors of diverse backgrounds. *See, e.g.*, *Skilling v. United States*, 561 U.S. 358, 382 (2010) ("Given this large, diverse pool of potential jurors, the suggestion that 12 impartial individuals could not be empaneled is hard to sustain."). The reality is that the government is carping about a few sentences as an opportunity to get more headlines in this meritless case, and continues to use its press machine to ensure its narrative stays in the news.[8]

The rest of the letter is another government press release designed to circumvent Rule 23.1 by arguing that this prosecution has merit—albeit through a recitation of the supposed evidence the government perhaps wished it had, but does not. The government's baseless charge that defense counsel made "false public statements," Ltr. at 1, ignores the reality of this case and the evidence. The discovery record consists of millions of pages of materials, including, as the government notes, "electronic communications and other data obtained from over 50 cellphones and other electronic devices and accounts." *Id*. at 2. But what the government omits is that ***none*** of that material implicates Mayor Adams in any criminal wrongdoing. To the contrary, both the documentary record and witness statements disclosed to date exculpate Mayor Adams and reveal that he neither knew about, nor participated in, any *quid pro quo* bribery or straw donor schemes. Indeed, Mayor Adams will show at trial ample evidence that he repeatedly instructed his staff that the campaign could not accept any improper donations.

---

[7] *Compare* video cited in Ltr. at 3 n.3 ("When that staffer was first interviewed, that staffer said that Mayor Adams knew nothing about this, he was not involved in this, and that he is innocent. They have that information."), *with* Indictment ¶ 48(c) ("The Adams Staffer also agreed to speak with FBI agents and falsely denied the criminal conduct of herself and ADAMS, among others.").

[8] *See, e.g.*, William K. Rashbaum et al., U.S. Investigating Political Action Committee Tied to Mayor Adams, N.Y. Times (Nov. 26, 2024) (crediting sources with knowledge of the inquiry).

      The government also recently turned over statements from 25 witnesses, all containing information that exculpates Mayor Adams. At the same time, the government continues to withhold—and evidently seeks to withhold until the eve of trial—further witness statements and other indisputable *Brady* material that no doubt will only further undermine the government's narrative. *See* ECF 64, at 3; *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001) ("Favorable evidence [under *Brady*] includes not only evidence that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a government witness." (citing *Giglio*)). That is why the government has tellingly not superseded its indictment despite indicating months ago at the first conference it was "quite likely" and "moving quickly" to do so—the incriminating evidence the government hoped to obtain ***does not exist***. 10/2/24 Conf Tr. at 4:2–20.

      The government's "evidence" thus reveals what defense counsel knew all along: this case is an egregious overreach by prosecutors with no interest in a search for the truth. Straw donations are a common occurrence in campaigns at all levels of government; but that does not mean the candidate is responsible for, or even aware of, any illegal activity. And while airline upgrades might in some circumstances be the subject of local administrative campaign rules, they hardly support federal criminal charges of any stripe. Any responsible prosecutor would acknowledge that reality and decline to bring federal charges where the evidence was lacking.[9] The prosecutors who secured this indictment have instead forged ahead in the face of overwhelming evidence of Mayor Adams's innocence. On these facts, defense counsel should not be silenced by government attorneys with every interest in generating a false public narrative in the run up to trial.

*  *  *

      Mayor Adams has every interest in a fair and impartial trial. While none of defense counsel's statements was intended to, or did, raise a substantial likelihood of prejudicing these proceedings, the government's own statements, and the repeated leaks to the media long before this case was even filed, have. To the extent the Court is inclined to issue an order, it should remind the government and all local and federal law enforcement agents assigned to or assisting with this case or the related investigation that they are bound by Local Rule 23.1. Mayor Adams in any case reaffirms his obligations under Rule 23.1, and respectfully submits that the government should be required to do the same.

Respectfully submitted,

*/s/ Alex Spiro*

Alex Spiro

---

[9] *See, e.g.*, S.D.N.Y., Acting U.S. Attorney Joon H. Kim Statement On The Investigation Into City Hall Fundraising (March 16, 2017), https://www.justice.gov/usao-sdny/pr/acting-us-attorney-joon-h-kim-statement-investigation-city-hall-fundraising (stating "we do not intend to bring federal criminal charges against the Mayor or those acting on his behalf relating to the fundraising efforts in question").