<u>Exhibit 4</u>
Letter from Acting Deputy Attorney General
Emil Bove to the Acting United States
Attorney Danielle Sassoon (Feb. 13, 2025)

**U.S. Department of Justice**

Office of the Deputy Attorney General

*Washington, D.C. 20530*

February 13, 2025

<u>Via Email & Hand Delivery</u>
Danielle Sassoon
Acting U.S. Attorney
U.S. Attorney's Office, SDNY

**Re: United States v. Adams, No. 24 Cr. 556 (S.D.N.Y.)**

Ms. Sassoon:

In response to your refusal to comply with my instruction to dismiss the prosecution of Mayor Eric Adams, I write to notify you of the following:

*First*, your resignation is accepted. This decision is based on your choice to continue pursuing a politically motivated prosecution despite an express instruction to dismiss the case. You lost sight of the oath that you took when you started at the Department of Justice by suggesting that you retain discretion to interpret the Constitution in a manner inconsistent with the policies of a democratically elected President and a Senate-confirmed Attorney General.

*Second*, you indicated that the prosecution team is aware of your communications with the Justice Department, is supportive of your approach, and is unwilling to comply with the order to dismiss the case. Accordingly, the AUSAs principally responsible for this case are being placed on off-duty, administrative leave[1] pending investigations by the Office of the Attorney General[2] and the Office of Professional Responsibility, both of which will also evaluate your conduct. At

---

[1] This leave status will remain in effect until further notice. This is not a disciplinary or adverse action, and the AUSAs will continue to receive full salary and benefits during administrative leave. While the AUSAs are in an off-duty status, they are not to use their government-issued laptop, phone, and ID badge/PIV card to access duty stations or any other Federal facility unless explicitly directed to do so. While on administrative leave, if contacted by management, the AUSAs must respond by phone or email no later than the close of business the following business day.

[2] The investigation by the Office of the Attorney General will be conducted pursuant to, *inter alia*, Executive Order 14147, entitled *Ending the Weaponization of the Federal Government*, and on the basis of the Attorney General's February 5, 2025 memorandum regarding *Restoring the Integrity and Credibility of the Department of Justice*.

the conclusion of these investigations, the Attorney General will determine whether termination or some other action is appropriate.

Based on attendance at our recent meetings, I understand the relevant AUSAs to be Hagan Scotten and Derek Wikstrom. If either of these AUSAs wished to comply with my directive but was prohibited from doing so by you or the management of your office, or if these AUSAs wish to make me aware of other mitigating considerations they believe are relevant, they can contact my office directly. The Justice Management Division and EOUSA have taken steps to remove access to electronic devices, and I ask that you and the AUSAs cooperate with those efforts and preserve all electronic and hard copy records relating to this matter whether they are stored on official or personal devices.

*Third*, under your leadership, the office has demonstrated itself to be incapable of fairly and impartially reviewing the circumstances of this prosecution. Therefore, the prosecution of Mayor Adams is transferred to the Justice Department, which will file a motion to dismiss the charges pursuant to Rule 48 of the Federal Rules of Criminal Procedure. My prior directive regarding no further targeting of Mayor Adams or additional investigative steps related to this matter remains in place.

## I.    Background

On January 20, 2025, in Executive Order 14147, President Trump established the following policy: "It is the policy of the United States to identify and take appropriate action to correct past misconduct by the Federal Government related to the weaponization of law enforcement." In a February 5, 2025 memorandum setting forth the Department's general policy regarding zealous advocacy on behalf of the United States, the Attorney General stated:

> [A]ny attorney who because of their personal political views or judgments declines to sign a brief or appear in court, refuses to advance good-faith arguments on behalf of the Administration, or otherwise delays or impedes the Department's mission will be subject to discipline and potentially termination, consistent with applicable law.

Your Office was not exempted from the President's policy or the Attorney General's memorandum.

On February 10, 2025, I directed you to dismiss the prosecution of Mayor Adams based on well-founded concerns regarding weaponization, election interference, and the impediments that the case has imposed on Mayor Adams' ability to govern and cooperate with federal law enforcement to keep New York City safe. My February 10, 2025 memorandum indicated that I acted pursuant to the authorization of the Attorney General. The mechanism for seeking dismissal is Rule 48 of the Federal Rules of Criminal Procedure. Note 2 to Rule 48 explains that "[t]he rule confers *the power to file a dismissal by leave of court on the Attorney General*, as well as on the United States attorney, since under existing law the Attorney General exercises 'general superintendence and direction' over the United States attorneys." *See* 28 U.S.C. § 509 ("All

Danielle Sassoon                                                                                      Page 3
Acting U.S. Attorney
U.S. Attorney's Office, SDNY

functions of other officers of the Department of Justice and all functions of agencies and employees of the Department of Justice are vested in the Attorney General . . . ."); *see also* 28 C.F.R. § 0.15(b).

Prior to issuing the February 10, 2025 memorandum, I reviewed public filings in this matter, and your office's prosecution memoranda and classified submissions. I met with you and the prosecution team, held a separate meeting that involved you, the prosecution team, and defense counsel, and then met with you privately in my office.[3] During those meetings, I invited written submissions from both sides, and I carefully reviewed those submissions. Thus, your recent suggestions about a lack of process around the Justice Department's decision are not grounded in reality.

You have not complied with the clear directives in my February 10, 2025 memorandum. Further, you made clear that you did not intend to do so during telephone calls with myself and Chad Mizelle, the Attorney General's Chief of Staff, on February 11, 2025, as well as in a written submission to the Attorney General that day. You also stated that the prosecution team had reviewed your letter to the Attorney General, and that they would not file a motion to dismiss the case.

At approximately 1:50 p.m. today, you tendered your resignation via email.

## II.    Discussion

The weaponization finding in my February 10, 2025 memorandum was made pursuant to a policy set forth by President Trump, who is the only elected official in the Executive Branch, in connection with a decision that was authorized by the Senate-confirmed Attorney General of the United States, and entirely consistent with guidance issued by the Attorney General shortly after that confirmation. Your Office has no authority to contest the weaponization finding, or the second independent basis requiring dismissal set forth in my memorandum. The Justice Department will not tolerate the insubordination and apparent misconduct reflected in the approach that you and your office have taken in this matter.

### A.    Improper Weaponization

You are well aware of the Department's weaponization concerns regarding the handling of the investigation and prosecution of Mayor Adams. Those concerns include behavior that supports, at minimum, unacceptable appearances of impropriety and the politicization of your office. The investigation was accelerated after Mayor Adams publicly criticized President Biden's failed immigration policies, and led by a former U.S. Attorney with deep connections to the former

---

[3] You correctly noted in your letter to the Attorney General that during the second meeting I questioned why a member of the prosecution team appeared to have been brought for the sole purpose of transcribing our discussion. You failed to note, however, that I made those comments in the context of a conversation about leaks relating to our deliberations.

Danielle Sassoon                                                                                    Page 4
Acting U.S. Attorney
U.S. Attorney's Office, SDNY

Attorney General who oversaw the weaponization of the Justice Department. Based on my review and our meetings, the charging decision was rushed as the 2024 Presidential election approached, and as the former U.S. Attorney appears to have been pursuing potential political appointments in the event Kamala Harris won that election.

After President Trump won the election, in late-December 2024, the former U.S. Attorney launched a personal website—which closely resembles a campaign website—that touts articles about the ongoing prosecution of Mayor Adams with titles such as "U.S. Attorney Damian Williams has come for the kings," "A mayor, a rapper, a senator, a billionaire: Meet the man who has prosecuted them all," and "Federal Prosecutor Damian Williams Flexes SDNY Power Against Eric Adams and Sean Combs." The former U.S. Attorney increased the appearances of impropriety by releasing an op-ed on January 16, 2025 entitled, "An indictment of the sad state of New York government." In that piece, he disparaged Mayor Adams with the following comment: "America's most vital city is being led with a broken ethical compass." The former U.S. Attorney also made what I reasonably interpreted as a reference to himself in that piece when he suggested that there was a need for "elected officials" willing to "disrupt the status quo."

You did not directly defend the former U.S. Attorney's behavior in response to a recent defense motion. Nor could you. His actions inappropriately politicized and tainted your office's prosecution, potentially permanently. Instead of addressing these concerns with the district court, you simply claimed that these actions were "beside the point." ECF No. 102 at 1. Not true. The actions by the former U.S. Attorney implicate the concerns that President Trump raised in Executive Order 14147, in connection with the prosecution of an elected official "who voiced opposition to the prior administration's policies." *Id.* The fact that the district court denied the defense motion does not establish that continuing the prosecution of Mayor Adams reflects an appropriate exercise of prosecutorial discretion. Similarly, the fact that AUSAs convinced a grand jury to return an indictment based on a one-sided and inherently partial presentation of the evidence does not establish that the case was appropriate at the time, much less that it would be appropriate to continue to pursue the case based on events that occurred after the True Bill was returned.

The Justice Department will not ignore the fact that the timing of charges authorized by a former U.S. Attorney with apparent political aspirations interferes with Mayor Adams' ability to run a campaign in the 2025 election. Your reference to the schedule underlying the prosecution of Senator Robert Menendez is not in any way persuasive in light of the evidence-handling issues that arose in connection with that trial. If anything, that experience counsels in favor of more caution in these matters, not less. But the record does not reflect such caution. In October 2024, an AUSA responsible for the prosecution of Mayor Adams represented that the "first batch" of discovery in the case included "about 560 gigabytes" of data. ECF No. 31 at 18. Thus, as a trial date was negotiated, Mayor Adams was faced with an impossible choice between seeking to defend himself at a pre-election trial in the hopes that he could campaign based on exoneration, and taking

Danielle Sassoon
Acting U.S. Attorney
U.S. Attorney's Office, SDNY

Page 5

a reasonable amount of time to review the discovery and prepare his defense at a post-election trial. His acquiescence in the former option does not justify your office's decision.

In your letter to the Attorney General, you made the dubious choice to invoke Justice Scalia. As you are likely aware from your professional experience, Justice Scalia fully understood the risks of weaponization and lawfare:

> Nothing is so politically effective as the ability to charge that one's opponent and his associates are not merely wrongheaded, naive, ineffective, but, in all probability, "crooks." And nothing so effectively gives an appearance of validity to such charges as a Justice Department investigation and, even better, prosecution.

*Morrison v. Olson*, 487 U.S. 654, 713 (1988) (Scalia, J., dissenting). While the former U.S. Attorney is not a special counsel, Justice Scalia's *Morrison* dissent aptly summarized the Department's weaponization concerns here.

There is also great irony in your invocation of the famous speech by former Attorney General Robert Jackson. His remarks are unquestionably relevant here, but not in the way you have suggested. Jackson warned that "some measure of centralized control" over federal prosecutors was "necessary." Robert H. Jackson, *The Federal Prosecutor*, 24 J. Am. Jud. Soc'y 18, 18 (1940). The senior leadership of the Justice Department exercises that control. Moreover, one of Jackson's concerns was that "the most dangerous power of the prosecutor" arises from the risk that the prosecutor would "pick people that he thinks he should get, rather than pick cases that need to be prosecuted." *Id.* at 19.

> It is in this realm—in which the prosecutor picks some person whom he dislikes or desires to embarrass . . . that the greatest danger of abuse of prosecuting power lies. It is here that law enforcement becomes personal, and the real crime becomes that of being unpopular with the predominant or governing group, being attached to the wrong political views, or being personally obnoxious to or in the way of the prosecutor himself.

*Id.* Regardless of how the investigation of Mayor Adams was initiated, by 2024 your office's work on the case was extremely problematic in that regard.

Finally, your suggestion that President Trump should issue a pardon to Mayor Adams reveals that your office's insubordination is little more than a preference to avoid a duty that you regard as unpleasant and politically inconvenient. Your oath to uphold the Constitution does not permit you to substitute your policy judgment for that of the President or senior leadership of the Justice Department, and you are in no position to suggest that the President exercise his exclusive Article II authority to make your job easier.

Danielle Sassoon                                                                                      Page 6
Acting U.S. Attorney
U.S. Attorney's Office, SDNY

For all of these reasons, dismissal is necessary in the interests of justice. Your refusal to recognize that fact and comply with my directive has only exacerbated the concerns I raised initially.

### B. Interference With Mayor Adams' Ability To Govern

Your objections to the second basis for my February 10, 2025 directive—that the "pending prosecution has unduly restricted Mayor Adams' ability to devote full attention and resources to illegal immigration and violence crime"—are based on exaggerated claims that further illustrate your office's inability to grapple with the problems that this case actually presents.

As a result of the pending prosecution, Mayor Adams is unable to communicate directly and candidly with City officials he is responsible for managing, as well as federal agencies trying to protect the public from national security threats and violent crime. Mayor Adams has been denied a security clearance that limits his access to details of national security issues in the City he was elected to govern and protect. He cannot speak to federal officials regarding imminent security threats to the City. And he cannot fully cooperate with the federal government in the manner he deems appropriate to keep the City and its residents safe. This situation is unacceptable and directly endangers the lives of millions of New Yorkers. My directive to you reflected a determination by the Justice Department that these public safety risks greatly outweigh any interest you have identified. It is not for local federal officials such as yourself, who lack access to all relevant information, to question these judgments within the Justice Department's chain of command.

You claim to find my reference to Viktor Bout to be "alarming," but you have missed the fundamental point. Presidents frequently make policy decisions that the Justice Department is charged with implementing. In connection with the case against Bout, President Biden made a questionable decision to release the "Merchant of Death" from prison. Once the decision was made, it was the responsibility of the Department and your office to execute it. Regardless of anyone's personal views of the policy choice, an AUSA from your office filed a motion to assist in effectuating the decision. *See* ECF No. 130, *United States v. Bout*, No. 08 Cr. 365 (S.D.N.Y. Nov. 29, 2022). That was your job here, and the job of the AUSAs assigned to the case. You have all violated your oaths by failing to do it. In no valid sense do you uphold the Constitution by disobeying direct orders implementing the policy of a duly elected President, and anyone romanticizing that behavior does a disservice to the nature of this work and the public's perception of our efforts.

You have also strained, unsuccessfully, to suggest that some kind of *quid pro quo* arises from my directive. This is false, as you acknowledged previously in writing. The Justice Department is charged with keeping people safe across the country. Your office's job is to help keep the City safe. But your actions have endangered it.

Danielle Sassoon                                                                            Page 7
Acting U.S. Attorney
U.S. Attorney's Office, SDNY

## C.  Rule 48 Dismissal

More broadly, you are simply incorrect to contend that there is no "valid" basis to seek dismissal.  The contention is a dereliction of your duty to advocate zealously on behalf of the United States.

The main citation you have offered, *United States v. N.V. Nederlandsche Combinatie Voor Chemische Industrie*, 428 F. Supp. 114 (S.D.N.Y. 1977), involved a motion based on "expense and inconvenience."  *Id.* at 117.  Those issues are not the drivers of this decision, as you know.  Moreover, as you and your team undoubtedly learned during the research that led you to rely on a 57-year-old district court case:

> The government may elect to eschew or discontinue prosecutions for any number of reasons.  Rarely will the judiciary overrule the Executive Branch's exercise of these prosecutorial decisions.

*United States v. Blaszczak*, 56 F.4th 230, 238 (2d Cir. 2022).  In other words, the Attorney General has "a virtually absolute right" to dismiss this case.  *United States v. Salim*, 2020 WL 2420517, at *1 (S.D.N.Y. 2020).  Any judicial discretion conferred by Rule 48(a) is "severely cabined" and likely limited to instances of "bad faith."  *United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 141 (2d Cir. 2017) (cleaned up); *see also In re Richards,* 213 F.3d 773, 786 (2000) ("[T]he substantive reach of . . . [R]ule [48] appears to be effectively curtailed by the fact that even if the judge denies the motion to dismiss, there seems to be no way to compel the prosecutor to proceed.").  Accordingly, any concerns that you and your office had about the prospects of a Rule 48 motion were not a valid basis for insubordination.

## D.  Additional Issues To Be Addressed

Finally, and to be clear, while I elected to address two particular dispositive concerns in my February 10, 2025 memorandum, I have many other concerns about this case.

The case turns on factual and legal theories that are, at best, extremely aggressive.  For example, the district court explained that "[i]t is not inconceivable that the Second Circuit or the Supreme Court might, at some point in the future, hold that an 'official act' as defined in *McDonnell* is necessary under § 666, at least as to government actors."  ECF No. 68 at 18-19.  The district court also acknowledged that there is "some force" to Mayor Adams' challenges to the office's *quo* theories in the case.  The "thing[s] of value" in this case are campaign contributions, which require heightened proof under *McCormick*, as the office knows from the challenges you encountered in connection with the decision to dismiss the *Benjamin* case.

There is also questionable behavior reflected in certain of the prosecution team's decisions, which will be addressed in the forthcoming investigations.  Witnesses in the case do not appear to have been treated in a manner that is consistent with your claims about the seriousness of your

Danielle Sassoon                                                                    Page 8
Acting U.S. Attorney
U.S. Attorney's Office, SDNY

allegations against Mayor Adams. It is my understanding that, around the time the charges were filed, the prosecution team made representations to defense counsel regarding Mayor Adams' status in the investigation that are inconsistent with the Justice Manual's definitions of "target" and "subject." Justice Manual § 9-11.151. In the same period, despite having already started to draft a prosecution memo proposing to charge Mayor Adams, the prosecution team invited Mayor Adams to a proffer—in effect, baiting him to make unprotected statements after the line prosecutors had already decided to try to move forward with the case.

*     *     *

I take no pleasure in imposing these measures, initiating investigations, and requiring personnel from the Justice Department to come to your District to do work that your team should have done and was required to do. In this instance, however, that is what is necessary to continue the process of reconciliation and restoration of the Department of Justice's core values, as the Attorney General explained on February 5, 2025.

Respectfully,

/s/ *Emil Bove*

Emil Bove
Acting Deputy Attorney General

Cc:    Matthew Podolsky
       (Via Email)

       Hagan Scotten
       Derek Wikstrom
       (By Hand Delivery)