

David E. McCraw
Senior Vice President
& Deputy General Counsel

T 212 556 4031
mccraw@nytimes.com

620 8th Avenue
New York, NY 10018
nytimes.com

February 18, 2025

**VIA ECF**

The Hon. Dale E. Ho
Southern District of New York
United States Courthouse
40 Foley Square
New York, NY 10007

      Re: <u>U.S. v. Adams</u>, 24-cr-00556-DEH, Application to Unseal Materials

Dear Judge Ho:

I write on behalf of The New York Times Company ("The Times") to seek an order unsealing materials (the "Materials") related to some of the searches conducted in the above-referenced action. Specifically, The Times seeks copies of certain search warrants and search warrant applications, an application for a 2703(d) order, and the document indexes compiled by the Government in submitting evidentiary items to the defense, as set forth in the Government's January 6, 2025 Opposition to the Defense Motion for a Bill of Particulars (the "Opposition," Dkt. 89). The Materials are more particularly described below.

We make this motion pursuant to the public's right of access to judicial records, grounded in both the federal common law and the First Amendment.[1] As Your Honor well knows, this is an extraordinary case, where some officials with the Department of Justice ("DOJ") have alleged that the prosecution was improper and politically motivated, and the prosecutors most directly involved in the case have forcefully argued that the prosecution was

---

[1] The right of access is an affirmative public right, and the press's standing to enforce it is well settled. *See, e.g., Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 609 n.25 (1982); *United States v. All Funds on Deposit at Wells Fargo Bank*, 643 F. Supp. 2d 577, 580 (S.D.N.Y. 2009) ("A motion to intervene to assert the public's First Amendment right of access to criminal proceedings is proper." (quoting *United States v. Aref*, 533 F.3d 72, 81 (2d Cir. 2008))).

undertaken and pursued because of compelling evidence of criminality. By releasing the Materials, the Court can help the public understand more fully why this prosecution was brought, and the evidence that supported it, so that the public can better judge whether justice was serviced by DOJ's recent decision to dismiss the indictment without prejudice.

We have asked the parties for their positions on this application but have yet to hear back.

I.  **BACKGROUND**

On September 26, 2024, the Indictment against Mayor Adams was unsealed. The 57-page Indictment charges him with five related counts. (*See* Dkt. 1.) The Materials sought here relate primarily to some of the searches conducted by the Government in the investigation that led to the Indictment.

The investigation has been extensive. In a hearing on November 1, 2024, AUSA Andrew Rohrbach described the scope of the materials that had been turned over in discovery as of that date:

> So we have produced -- we've made four productions, the most recent one today. They total about 1.6 terabytes of data so far; more than 300,000 pages of subpoena returns, which is the bulk of subpoena returns; another 4,000 records of City Hall; the case file from department of investigation, which is one of the two investigative agencies in this case; our 38 search warrants and 21 initial responsive sets from devices or accounts. And there are about between 60 and 70 devices and accounts so far, so we're between a third and a quarter of the way through that production."

(Conference Transcript, Nov. 1, 2024, at 57.)

In the interest of judicial economy, The Times seeks at this point only a limited set of those materials. On January 6, 2025, in the Opposition, the prosecutors disclosed that they had provided to the defense, among other things, the following:

(a) "Search warrants and detailed 100+ page affidavits identifying and describing evidence";

  (b) All discovery indexes created by the Government, as referenced in the Opposition. As of December 4, 2024 the Government had made nine productions, each with an index;
  (c) A December 2021 application for a 2703(d) order; and
  (d) An August 2024 application for a warrant for location data for Mayor Adams's cell phone.

(*See* Opposition, Dkt. 89, at 2-3, 13.)

This is the universe of Materials sought by this application. We believe that by limiting this initial application to these discrete items, we have made more manageable the review process that will be required of the parties and the Court. In particular, if we are able to access the indexes, we can be better informed as to whether there are other materials to which the public should have access pursuant to a further motion.

## II. ARGUMENT

Both federal common law and the First Amendment endow the public with a right of access to judicial documents, including search warrant materials. While that right can be overcome by countervailing interests in some circumstances, the parties face a particularly heavy burden in trying to shield judicial documents from public view where, as here, the Government has moved to withdraw the case, and the legitimacy of the prosecution has become a matter of public dispute within the DOJ. Although the DOJ has reserved its right to bring the prosecution again in the future after the November elections, the public has a right to know now – before the New York City elections and while the conduct of DOJ lawyers is a front-line matter of public interest – whether this prosecution was brought in good faith based on the evidence or whether it was a politicized prosecution, as some senior DOJ officials now say.

 A. <u>The Common-Law Right of Access Requires that the Materials Be Unsealed</u>

Second Circuit law governing the public's common-law right of access to judicial records is well established. Every "judicial document" is subject to a presumption of access. *Lugosch v. Pyramid Co.*, 435 F.3d 110, 119 (2d Cir. 2006). The Second Circuit, among other federal appellate courts, has squarely held that search warrant materials are judicial documents to which the common-law right of access attaches. *See In re Application of Newsday, Inc.*, 895 F.2d 74, 79 (2d Cir. 1990) (affirming order releasing search warrant

affidavit based on common-law access right); *see also, e.g.*, *In re Boston Herald, Inc.*, 321 F.3d 174, 194 n.9 (1st Cir. 2003); *United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1194 (9th Cir. 2011). "Search warrants are unquestionably judicial documents because they themselves embody the performance of judicial functions." *United States v. Cohen*, 366 F. Supp. 3d 612, 620 (S.D.N.Y. 2019). Court orders issued under 18 U.S.C. § 2703(d) – as well as applications for such orders – are likewise subject to a common-law right of access. *Leopold v. United States*, 964 F.3d 1121, 1128 (D.C. Cir. 2020); *In re Application of U.S. for Order Pursuant to 18 U.S.C. Section 2703(d)*, 707 F.3d 283, 290 (4th Cir. 2013).

While the First Amendment right will also attach to many types of judicial documents, including these (see below), the Second Circuit has counseled that the courts first look to the common law, which can make resort to the Constitution unnecessary. *See Newsday*, 895 F.2d at 78. Under *Lugosch*'s common-law analysis, a presumption of access attaches to all judicial documents. 435 F.3d at 119. The weight of that presumption of access turns on the nature of the specific document at issue, taking into account "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)) (internal marks omitted). When the documents are central to the exercise of the Court's Article III powers, as is the case here, the presumption is at its strongest. *Id.* In contrast, when a document is filed simply to illuminate a civil discovery dispute, the presumption is lessened. *Id.* It then falls to the Court to weigh the presumption of access against any countervailing interests posed by the parties. *Id.* at 120; *see also Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 143 (2d Cir. 2016). This analytic framework is the same in criminal cases as in civil cases and is used to decide motions brought by news media intervenors. *See Gannett Media Corp. v. United States*, No. 22-2160, 2022 WL 17818626, at *2-3 (2d Cir. 2022) (finding justifications for redactions of court filings insufficient under common-law presumption of access).

> 1. *The presumption of access to the Materials is particularly weighty*

Courts within the circuit have recognized that the presumption of access to materials related to search warrants should not be lightly set aside. Indeed, search warrant materials "go to the heart of the judicial function" because they inform the judicial determination to grant a search warrant, which in turn affects the rights of individuals to be free from unreasonable searches and seizures of their property. *In re Search Warrant*, No. 16-mc-464, 2016 U.S.

Dist. LEXIS 178313, at *10 (S.D.N.Y. Dec. 19, 2016); *see also Wells Fargo*, 643 F. Supp. 2d at 584. As one court in this circuit explained, documents "filed in connection with the two search warrants adjudicated the right of individuals under the Fourth Amendment not to be subjected to government intrusion absent a judicial determination of sufficient cause," a right "held among this country's highest values." *In re Sealed Search Warrants Issued June 4 & 5, 2008*, No. 08-M-208, 2008 WL 5667021, at *3 (N.D.N.Y. July 14, 2008). The result is that the presumption of access to search warrant materials carries "the maximum possible weight." *Id.*; *see also Search Warrant*, 2016 U.S. Dist. LEXIS 178313, at *10; *Wells Fargo*, 643 F. Supp. 2d at 584.

Put simply, even if this prosecution were not the subject of a consequential and highly public controversy within the DOJ, the presumption of access would still be at its apex because search warrant adjudications play a crucial role in setting the relationship between individual liberty and state power.

> 2. *No countervailing factors overcome the presumption of access to the Materials*

The burden rests on the parties who seek continued sealing to establish that the public's right of access should be set aside by countervailing factors. We know of none in the record as it stands. Typically, the countervailing factors that can overcome the presumption of access to a judicial document are "the danger of impairing law enforcement or judicial efficiency" or "the privacy interests of those resisting disclosure." *Bernstein*, 814 F.3d at 143. None of those factors carries significant weight here.

*First*, any risk of impairing law enforcement interests is minimal because the Government's investigation of Mayor Adams appears to be at an end. *See id.* (interests favoring secrecy were "weak" because disclosure would not "reveal details of an ongoing investigation"). As a court in this district recently held, disclosure of warrant materials is appropriate when an investigation has concluded, and the prosecution brings charges or decides not to do so. *In re Search Warrant Dated November 5, 2021*, No. 21-mc-813, 2024 U.S. Dist. LEXIS 68998, at *13 (S.D.N.Y. Apr. 16, 2024) (citing cases). Although in *Newsday*, 895 F.2d at 79, the Second Circuit noted that the case for access was strongest when a proceeding had concluded, courts have regularly entertained and granted access motions for warrant materials at earlier stages when the need for transparency outweighs other considerations. *See In re Search Warrant Dated November 5, 2021*, 2024 U.S. Dist. LEXIS 68998, at *13 (granting unsealing when government makes charging decision); *In re*

*Search Warrant Dated October 13, 2023*, No. 23-mc-389, 2023 U.S. Dist. LEXIS 188837 (S.D.N.Y. Oct. 20, 2023) (granting access while grand jury investigation is ongoing); *In re Sealed Search Warrants Issued June 4 & 5, 2008*, 2008 WL 5667021, at *11 (granting access to certain warrants while investigation was ongoing). Here, the Materials have already been shared with Mayor Adams and his lawyers, and neither side would be advantaged or disadvantaged by disclosure. To the extent there are any ongoing investigations related to this case and some risk arising from disclosure, any sensitive law enforcement information can be redacted to avoid that risk. *See United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995).

*Second*, possible fair trial concerns do not justify the continued sealing. At this point, any claim that Mayor Adams may be tried at some point in the future is speculative at best. Such a prosecution, were it to happen, would be nearly a year away, at a minimum. There has already been extensive coverage of the prosecution and of the decision to dismiss the case without prejudice. While release of the Materials would likely prompt some additional coverage, a searching voir dire will be necessary irrespective of whether these documents are made public. The fact that there could be a trial in the future (but well might not be) and that some prospective jurors might become aware of news articles based on the Materials does not provide an adequate justification to keep the public in the dark today when the controversy over the prosecution is front of mind for the public. *See, e.g.*, *United States v. Graham*, 257 F.3d 143, 154 (2d Cir. 2001) ("speculative" risk to fair trial cannot overcome "strong" presumption of access to judicial records, and "voir dire and change of venue are sufficient to address any potentially prejudicial effects" of unsealing); *In re Application & Affidavit for Search Warrant*, 923 F.2d 324, 330 (4th Cir. 1991) (unsealing search warrant affidavit after indictment and finding that "a properly conducted *voir dire* should guarantee a fair trial for the defendant").

*Third*, any privacy interests in the Materials do not provide a basis for continued sealing. We do not know what is contained in the records. But the Materials apparently are largely financial records and communications pertaining to the exchange of money or gifts and government consideration as part of a highly publicized prosecution where many details are already public – not records of a personal or intimate nature. Before sealing is granted, there must be some legitimate and specific privacy interest to protect. *See, e.g.*, *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 170 (S.D.N.Y. 2018) (assertion of "generalized 'privacy interests'" insufficient to overcome right of access); *In re N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987) (extent of public knowledge of sealed material factors into a court's decision to grant access to

judicial documents). To the extent any information *is* genuinely private about Mayor Adams or third parties, it can be protected through targeted redactions, and The Times does not oppose such redactions. *See Search Warrant*, 2016 U.S. Dist. LEXIS 178313, at *12 (redaction employed to protect privacy in disclosed warrant materials).

B.  <u>The First Amendment Right of Access Equally Compels Unsealing the Materials</u>

The legal principles governing the First Amendment right of access to judicial records are equally well settled and provide a second, independent basis for unsealing. The right attaches to a large array of judicial records and gives the public a constitutional basis to inspect those records, absent a showing of an overriding public interest that justifies sealing. *See, e.g.*, *Lugosch*, 435 F.3d at 124 (common-law and constitutional right to judicial documents in civil case); *Pellegrino*, 380 F.3d at 92-93 (unsealing of court dockets under the First Amendment); *United States v. Suarez*, 880 F.2d 626, 630 (2d Cir. 1989) (First Amendment right to documents in a criminal case).

The Supreme Court has developed a two-part test, based on "experience" and "logic," for determining whether the First Amendment right attaches to particular documents. *See Press-Enter. Co. v. Super. Ct.*, 478 U.S. 1, 8 (1986); *see also Pellegrino*, 380 F.3d at 92. Under the experience prong, the court considers whether the document has historically been open to the public. *Press-Enter.*, 478 U.S. at 8. The logic prong concerns "whether public access plays a significant positive role in the functioning of the particular process in question." *Id.*

While the right of access is presumptive, the presumption can be overcome only if the Government or another party demonstrates that:

1. There exists a "substantial probability" that unsealing will cause harm to a compelling governmental interest;
2. There exists no reasonable alternative to adequately protect the threatened interest;
3. Any denial of access is narrowly tailored to serve that interest; and
4. A denial of access would prevent the harm sought to be avoided.

*Id.* at 13-14; *see also United States v. Doe*, 629 F. App'x 69, 72 (2d Cir. 2015). Further, the court must make "specific, on the record findings" supporting the denial of access. *Press-Enter.*, 478 U.S. at 13; *accord Lugosch*, 435 F.3d at 120.

The Second Circuit has not decided whether a First Amendment right of access applies to search warrant materials, *Newsday*, 895 F.2d at 78, although some district court decisions have declined to recognize the right in respect to warrant materials. *See Cohen*, 366 F. Supp. 3d at 628. And some courts of appeal have come to the same conclusion. *See, e.g.*, *In re Search of Fair Fin.*, 692 F.3d 424, 427 (6th Cir. 2012).

But more compelling is the Eighth Circuit's analysis in *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988). There, the court reasoned that while "the process of issuing search warrants has traditionally not been conducted in an open fashion, search warrant applications and receipts are routinely filed with the clerk of court without seal." *Id.* That public process, with its long history, sufficiently meets the experience test. As for the logic prong, as set forth above, access to search warrant materials aids the public in monitoring the Government's use of its extraordinary search and seizure powers. That facilitation of public monitoring is the very crux of the logic prong. Unsurprisingly, multiple courts have embraced *Gunn*'s analysis and concluded that a First Amendment right of access attaches to search warrant materials. *See id.* ("[T]he qualified first amendment right of public access extends to the documents filed in support of search warrants."); *United States v. Loughner*, 769 F. Supp. 2d 1188, 1193 (D. Ariz. 2011) (finding a First Amendment right of access to search warrant documents at the "post-investigation, post-indictment" stage of a criminal proceeding); *In re Application of N.Y. Times Co. for Access to Certain Sealed Ct. Recs.*, 585 F. Supp. 2d 83, 94 (D.D.C. 2008) (granting access to sealed search warrants, warrant applications, and supporting materials under the First Amendment).

For the same reasons discussed in respect to the common-law right, the First Amendment right of access to the Materials is not overcome by any countervailing interest. Importantly, the Constitution imposes a heavier burden on those seeking sealing than the one imposed by the common law. *Lugosch*, 435 F.3d at 126. Where the First Amendment applies, it can be "overcome only by an overriding interest based on findings that [sealing] is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enter.*, 478 U.S. at 9; *see also Lugosch*, 435 F.3d at 124. And the parties must show under *Press-Enterprise* that there is a "substantial probability" that the harms they proffer to justify sealing will come to pass if disclosure is granted. *Press-Enter.*, 478 U.S. at 14.

### III.   CONCLUSION

For the foregoing reasons, The Times respectfully requests that the Materials be made public, or, alternatively, that the Government and Mayor Adams be required to demonstrate why the records should remain under seal. If they seek to do so, The Times respectfully requests an opportunity to reply and otherwise be heard.

We thank the Court for its consideration of this matter.

Respectfully submitted,

*David McCraw*

David E. McCraw


cc: Counsel of Record (via ECF)