UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    - against -

ERIC ADAMS,

     Defendant.

No. 24-CR-556 (DEH)

**MAYOR ERIC ADAMS'S MEMORANDUM OF LAW IN SUPPORT OF HIS
MOTION TO DISMISS FOR PROSECUTORIAL MISCONDUCT**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND ....................................................................................................................3

ARGUMENT.........................................................................................................................7

I.    THE GOVERNMENT'S LEAK OF THE FEBRUARY 12 LETTER
CONSTITUTES PROSECUTORIAL MISCONDUCT ......................................................7

II.    THE LEAK HAS CAUSED MAYOR ADAMS IRREPARABLE PREJUDICE ............11

III.    THIS CASE CAN NO LONGER PROCEED...................................................................14

CONCLUSION....................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Barry v. United States*,
   865 F.2d 1317 (D.C. Cir. 1989)................................................................................................11

*In re Grand Jury Investigation (Lance)*,
   610 F.2d 202 (5th Cir. 1980) ..........................................................................................9, 10, 11

*In re Grand Jury Matter (Catania)*,
   682 F.2d 61 (3d Cir. 1982)...........................................................................................................9

*United States v. Estepa*,
   471 F.2d 1132 (2d Cir. 1972).......................................................................................................7

*United States v. Fields*,
   592 F.2d 638 (2d Cir. 1978).........................................................................................................7

*United States v. Flemmi*,
   233 F. Supp. 2d 75 (D. Mass. 2000) ..........................................................................................11

*United States v. Gross*,
   165 F. Supp. 2d 372 (E.D.N.Y. 2001) .........................................................................................7

*United States v. Kilpatrick*,
   821 F.2d 1456 (10th Cir. 1987) ...................................................................................................7

*United States v. Leeper*,
   2006 WL 1455485 (W.D.N.Y. May 22, 2006)............................................................................7

*United States v. Rosen*,
   471 F. Supp. 2d 651 (E.D. Va. 2007) ..........................................................................................9

*United States v. Silver*,
   103 F. Supp. 3d 370 (S.D.N.Y. 2015)........................................................................................12

*United States v. Skelos*,
   2015 WL 6159326 (S.D.N.Y. Oct. 20, 2015).............................................................................9

*United States v. Smith*,
   985 F. Supp. 2d 506 (S.D.N.Y. 2013)........................................................................................11

*United States v. Stein*,
   541 F.3d 130 (2d Cir. 2008).........................................................................................................7

*United States v. Walters*,
  910 F.3d 11 (2d Cir. 2018)..................................................................................9, 12

*United States v. Watson*,
  2023 WL 7300618 (E.D.N.Y. Nov. 6, 2023).................................................................11

## Other Authorities

28 C.F.R. § 50.2(b) .......................................................................................................8

Federal Rule of Criminal Procedure 6(e).............................................................9, 10, 11

Federal Rule of Criminal Procedure 48(a) .................................................................14

Local Criminal Rule 23.1..............................................................................................8, 9

## Other Authorities

Adrienne Adams, *Statement from Speaker Adrienne Adams on the Resignation of
  4 Deputy Mayors and Calling on Mayor Adams to Resign*, N.Y.C. Council
  (Feb. 17, 2025), https://council.nyc.gov/press/2025/02/17/2800/ ......................................6, 12

Michael Barbaro & Nicholas Fandos, *The Sordid Saga of President Trump and
  Mayor Adams*, N.Y. Times Daily (Feb. 20, 2025), https://www.nytimes.com
  /2025/02/20/podcasts/the-daily/mayor-eric-adams-donald-trump.html .............................6, 12

Devlin Barrett, *The U.S. Attorney General Derides the Merits of the Adams Case
  in New York*, N.Y. Times (Feb. 20, 2025), https://www.nytimes.com
  /2025/02/20/us/politics/trump-eric-adams-pam-bondi.html .....................................................14

Editorial Board, *A Prosecutor Stands to Defend Justice*, Wash. Post (Feb. 14,
  2025), https://www.washingtonpost.com/opinions/2025/02/14/sassoon-adams-
  resign-justice-independence/......................................................................................................6

Nicholas Fandos, *Ocasio-Cortez Says Adams Should Resign 'for the Good of the
  City,'* N.Y. Times (Sept. 27, 2024), https://www.nytimes.com/2024/09
  /25/nyregion/aoc-eric-adams-resign.html ..................................................................................3

James Fanelli, *Dropped Eric Adams Case Exacts Toll on NYC Mayor and DOJ*,
  Wall St. J. (Feb. 15, 2025, 12:51 PM), https://www.wsj.com/politics
  /policy/trump-eric-adams-alliance-struggle-c6b82dc0 ................................................................6

Gov. Kathy Hochul, *Governor Hochul Announces Actions to Restore Public Trust
  in New York City's Municipal Government Leadership*, N.Y. State (Feb. 20,
  2025), http://governor.ny.gov/news/video-audio-photos-rush-transcript-
  governor-hochul-announces-actions-restore-public-trust-new ...........................................6, 12

Justice Robert H. Jackson, *The Federal Prosecutor*,
   24 J. Am. Jud. Soc'y 18 (1940). ................................................................................11

Anna Kutz, *Scott Stringer: I Hope Hochul Suspends NYC Mayor Eric Adams*,
   NewsNation (Feb. 18, 2025), https://www.newsnationnow.com/us-
   news/northeast/kathy-hochul-eric-adams-charges-case/..........................................6

Brad Lander, *NYC Comptroller Lander Sends Letter to Mayor Adams Demanding
   a City Contingency Plan Following the News of Deputy Mayor Resignations*,
   N.Y.C. Comptroller (Feb. 17, 2025), https://comptroller.nyc.gov/newsroom
   /nyc-comptroller-lander-sends-letter-to-mayor-adams-demanding-a-city-
   contingency-plan-following-the-news-of-deputy-mayor-resignations/;..................6

Rich Mendez et al., *Eric Adams Has Been Indicted. Who Is Calling on Him to
   Resign?*, City & State (Sept. 25, 2024), https://www.cityandstateny.com
   /politics/2024/09/who-calling-eric-adams-resign/399570/ ......................................3

Chad Mizelle, @ChadMizelle47, X (Feb. 19, 2025, 12:42 PM)
   https://x.com/chadmizelle47/status/1892268416267911251?s=46 .......................14

William K. Rashbaum et al., *4 Top Officials to Resign Over Adams's Cooperation
   with Trump*, N.Y. Times (Feb. 17, 2025), https://www.nytimes.com/2025
   /02/17/nyregion/adams-deputy-mayors-resign-trump-immigration.html...........6, 12

William K. Rashbaum et al., *Order to Drop Adams Case Prompts Resignations in
   New York and Washington*, N.Y. Times (Feb. 13, 2025, 2:13 PM),
   https://www.nytimes.com/2025/02/13/nyregion/danielle-sassoon-quit-eric-
   adams.html ...............................................................................................................6

Michael Rothfeld, *Danielle Sassoon's Letter to Attorney General Pam Bondi,
   Annotated*, N.Y. Times (Feb. 13, 2025), https://www.nytimes.com/interactive
   /2025/02/13/us/doc-annotation-letter-to-bondi.html.................................................7

Ethan Stark-Miller, *Mayor Adams Indictment: Federal Judge to Deliberate After
   Hearing Arguments over Trump's DOJ's Motion to Dismiss Case*, AMNY
   (Feb. 19, 2025), https://www.amny.com/news/mayor-adams-indictment-
   hearing-motion-dismiss-02192025/ ..........................................................................7

Jumaane D. Williams, *Public Memo to NYC Commissioners and Agency Heads*,
   N.Y.C. Pub. Advoc. (Feb. 13, 2025), https://advocate.nyc.gov/press/public-
   memo-to-nyc-commissioners-and-agency-heads .......................................................6

Nicholas Wu, *Jeffries Says Eric Adams Should Not Resign*, Politico (Oct. 4,
   2024), https://www.politico.com/news/2024/10/04/jeffries-says-eric-adams-
   should-not-resign-00182570 ....................................................................................12

**PRELIMINARY STATEMENT**

Following the Department of Justice's long-overdue decision to dismiss the case against Mayor Adams, someone within the government leaked a February 12, 2025 letter from the former interim U.S. Attorney for the Southern District of New York to the Attorney General. The leaked letter disclosed, among other things, the former interim U.S. Attorney's self-proclaimed confidence in Mayor Adams's guilt; the fact that Southern District prosecutors were planning to re-indict Mayor Adams, including on a new and equally baseless obstruction charge; and the wildly inflammatory and false accusation that Mayor Adams and his counsel had, in essence, offered a *quid* to the Department of Justice in exchange for the *quo* of dismissal. The disclosure of this letter to the press was part of an extraordinary flurry of leaked internal Justice Department correspondence that included memoranda from the Acting Deputy Attorney General to the Southern District and an unhinged resignation letter by one of the former line prosecutors on this case. In addition to violating Mayor Adams's fundamental constitutional rights and ability to receive a fair trial, the government's leaks violated numerous statutory and court rules, including the Justice Department's own longstanding policies aimed at curbing prosecutorial misconduct.

To be sure, the February 12 letter, and the decision to leak it, were last acts of desperation in defense of a meritless case that never should have been pursued in the first place. The former interim U.S. Attorney all but conceded that the initial charging decision was compromised when she wrote in her letter that "[c]onfidence in the Department would best be ***restored by***" a new indictment, which would be "more than enough to address any perception of impropriety created by [her predecessor's] personal conduct."

More important, however, is the extreme prejudice that the latest leaks have caused to Mayor Adams. The February 12 letter was plastered across local and national news outlets and has dominated headlines. Influential leaders and politicians who initially championed the Mayor

1

are now insisting that he resign or that the governor remove him.  As *The New York Times* noted, the letter's disclosure of the proposed new superseding indictment "***drops a bit of a bomb here, at least to anyone outside the Justice Department***."  Indeed, media outlets, commentators, self-proclaimed "friends of the court," and Mayor Adams's political opponents, both old and new, have all seized on the February 12 letter as evidence both that Mayor Adams is guilty and that the Justice Department's correct decision to dismiss this case was somehow wrongful.  The leaked resignation letter of the former line prosecutor, which received just as much public attention as the February 12 letter, turbocharged the prejudice to Mayor Adams by proclaiming that only a "fool" or a "coward" would sign the Justice Department's motion to dismiss.  Simply put, the government's conduct has destroyed whatever presumption of innocence Mayor Adams had left.

The most appropriate recourse is to dismiss this case now and do so ***with prejudice***.  That is true based on this latest leak alone and independent of the fact that the government itself wants nothing to do with these meritless charges and has moved to dismiss them.  For the avoidance of doubt, Mayor Adams knowingly consented to the government's motion to dismiss this case without prejudice.  *See* Feb. 19 Hr'g Tr. at 9:22-11:12.  But the recent government leaks provide this Court with an independent and more-than-sufficient basis to dismiss this prosecution due to the irreparable prejudice to Mayor Adams's rights.

Mayor Adams is not, however, seeking any delay in the Court's resolution of the government's pending motion to dismiss without prejudice.  Nonetheless, because resolution of that motion, if granted, could allow the government to later argue—if it chooses to reindict the Mayor—that he failed to timely raise, and thus waived, the independent grounds for dismissal with prejudice set forth in the instant motion, and given the significant harm that this case causes every day that it remains on the docket, Mayor Adams has no choice but to make this motion now based

2

on the most recent prosecutorial misconduct.  The Court should act swiftly and dismiss this case **with prejudice** to prevent further irrevocable harm to Mayor Adams.

## BACKGROUND

Mayor Adams has raised numerous instances of prosecutorial misconduct and resulting prejudice since this case was filed.  Leaks regarding the government's investigation, the evidence and witness testimony sought by the grand jury, and the prosecution's working theories of Mayor Adams's wrongdoing began nearly a year before the grand jury returned an indictment and have dominated news cycles since.  *See generally* ECF Nos. 19, 40.  Many were sourced directly to law enforcement, and in the defense's view, the rest realistically could only have come from the government or its agents given the insider information and the fact that only the government benefitted from the leaks.

The result was that prominent politicians, the media, and the public all branded Mayor Adams a criminal and were calling for his resignation before there was ever a criminal charge against him.  *See, e.g.*, Nicholas Fandos, *Ocasio-Cortez Says Adams Should Resign 'for the Good of the City,'* N.Y. Times (Sept. 27, 2024);[1] Rich Mendez et al., *Eric Adams Has Been Indicted. Who Is Calling on Him to Resign?*, City & State (Sept. 25, 2024) (listing "[m]ore than 40 elected officials who called for Adams to step down after he was indicted on federal criminal charges").[2] The Court recently noted at the February 19 hearing that "any criminal defendant, and Mayor Adams, is presumed innocent in the eyes of the law and this court."  Feb. 19 Hrg. Tr. at 3.  Yet it is beyond dispute that, for a large segment of the jury pool in this District and beyond, Mayor

---

[1]  https://www.nytimes.com/2024/09/25/nyregion/aoc-eric-adams-resign.html.

[2]  https://www.cityandstateny.com/politics/2024/09/who-calling-eric-adams-resign
/399570/.

Adams began this case with a heavy presumption of guilt—entirely attributable to the pervasive, pre-indictment media leaks.

Mayor Adams was compelled to vindicate his rights by asking the Court to, at a minimum, hold an evidentiary hearing regarding the leaks. He made multiple motions for relief, especially as the leaks continued after the filing of the indictment, and after the former U.S. Attorney began touting his prosecution of Mayor Adams in an obvious bid for political office. *See* ECF Nos. 19, 40, 83, 96, 99. The Court denied Mayor Adams's motions in each instance, while cautioning the parties that "this case is to be tried in the courtroom and not in the press," ECF No. 46, at 21, and reminding government attorneys (both current and former) to "respect both the power of their words and their office, and ensure that their public comments are carefully tailored solely to further valid law enforcement interests and to steer far clear of violating a defendant's fundamental right to a fair trial," ECF No. 103, at 6 n.5 (quotations and citations omitted).

Now it's déjà vu all over again. The day after the February 12 letter from the former interim U.S. Attorney to the Attorney General was sent, someone in the government leaked that letter to the media—continuing the trend that has plagued this investigation and now prosecution for over a year. The letter contained a number of false and inflammatory statements that have irreparably prejudiced Mayor Adams.

*First*, the February 12 letter made repeated accusations against Mayor Adams concerning his purported guilt and the evidence against him. ECF No. 124-1, at 1, 7. Those included the former interim U.S. Attorney's claim that she personally was "confident that Adams has committed the crimes with which he is charged," *id.* at 7—despite the fact that she had been on the job for only a matter of days and, upon information and belief, had never spoken to a single witness in the case.

4

*Second*, the February 12 letter disclosed that Southern District prosecutors were seeking to reindict the Mayor, including on new charges:

> As you know, our office is prepared to seek a superseding indictment from a new grand jury under my leadership. We have proposed a superseding indictment that would add an obstruction conspiracy count based on evidence that Adams destroyed and instructed others to destroy evidence and provide false information to the FBI, and that would add further factual allegations regarding his participation in a fraudulent straw donor scheme.

*Id.* at 5. In late December, Mayor Adams's counsel had learned from a credible source that the government indeed had convened a grand jury, which was actively hearing witness testimony. *See* ECF No. 83, at 2-3. The government never denied this. In the February 12 letter, the former interim U.S. Attorney also suggested that a new indictment could cure existing problems with the pending prosecution. She reasoned that "[c]onfidence in the Department would best be ***restored by*** means well short of a dismissal," and that a new indictment would be "more than enough to address any perception of impropriety created by [her predecessor's] personal conduct." ECF No. 124-1, at 5 (emphasis added).[3]

*Third*, and perhaps most troublingly, the February 12 letter contained defamatory accusations that Mayor Adams and his counsel had offered the Justice Department an illicit bargain to drop the charges against him. The former interim U.S. Attorney claimed to have attended a meeting where Mayor Adams's attorneys "repeatedly urged what amounted to a *quid pro quo*, indicating that Adams would be in a position to assist with the Department's enforcement priorities only if the indictment were dismissed." *Id.* at 3 n.1. She dubbed Mayor Adams's efforts to comply

---

[3]  While Ms. Sassoon proclaimed in the letter that the government "proposed a superseding indictment that would add an obstruction conspiracy count," the facts surrounding this purported charge were already alleged in the existing indictment. ECF No. 124-1, at 5. That of course means Southern District prosecutors previously considered them and decided—correctly, for once—that there was no basis to charge the Mayor for obstruction or any related conspiracy.

with federal initiatives "an improper offer of immigration enforcement assistance in exchange for a dismissal of his case." *Id.* at 3.

Notwithstanding there was no *quid pro quo*, *see* ECF No. 130, news outlets across the country zeroed in on that inflammatory rhetoric, and the February 12 letter has dominated front-page news ever since.[4] Its contents have led to a litany of public condemnations of Mayor Adams and calls for his resignation.[5] Mayor Adams's political opponents have capitalized on the letter's false allegations, using it to promote their own campaigns.[6] The *New York Times* reported that the leak of a planned new indictment "drop[ped] a bit of a bomb here, at least to anyone outside

---

[4] William K. Rashbaum et al., *Order to Drop Adams Case Prompts Resignations in New York and Washington*, N.Y. Times (Feb. 13, 2025, 2:13 PM), https://www.nytimes.com /2025/02/13/nyregion/danielle-sassoon-quit-eric-adams.html; Editorial Board, *A Prosecutor Stands to Defend Justice*, Wash. Post (Feb. 14, 2025), https://www.washingtonpost.com /opinions/2025/02/14/sassoon-adams-resign-justice-independence/; James Fanelli, *Dropped Eric Adams Case Exacts Toll on NYC Mayor and DOJ*, Wall St. J. (Feb. 15, 2025, 12:51 PM), https://www.wsj.com/politics/policy/trump-eric-adams-alliance-struggle-c6b82dc0.

[5] *See* Gov. Kathy Hochul, *Governor Hochul Announces Actions to Restore Public Trust in New York City's Municipal Government Leadership*, N.Y. State (Feb. 20, 2025), http://governor.ny.gov/news/video-audio-photos-rush-transcript-governor-hochul-announces-actions-restore-public-trust-new; James Fanelli, *supra* note 4; Michael Barbaro & Nicholas Fandos, *The Sordid Saga of President Trump and Mayor Adams*, N.Y. Times: The Daily (Feb. 20, 2025), https://www.nytimes.com/2025/02/20/podcasts/the-daily/mayor-eric-adams-donald-trump.html; Jumaane D. Williams, *Public Memo to NYC Commissioners and Agency Heads*, N.Y.C. Pub. Advoc. (Feb. 13, 2025), https://advocate.nyc.gov/press/public-memo-to-nyc-commissioners-and-agency-heads; Adrienne Adams, *Statement from Speaker Adrienne Adams on the Resignation of 4 Deputy Mayors and Calling on Mayor Adams to Resign*, N.Y.C. Council (Feb. 17, 2025), https://council.nyc.gov/press/2025/02/17/2800/; William K. Rashbaum et al., *4 Top Officials to Resign Over Adams's Cooperation with Trump*, N.Y. Times (Feb. 17, 2025), https://www.nytimes.com/2025/02/17/nyregion/adams-deputy-mayors-resign-trump-immigration.html.

[6] Brad Lander, *NYC Comptroller Lander Sends Letter to Mayor Adams Demanding a City Contingency Plan Following the News of Deputy Mayor Resignations*, N.Y.C. Comptroller (Feb. 17, 2025), https://comptroller.nyc.gov/newsroom/nyc-comptroller-lander-sends-letter-to-mayor-adams-demanding-a-city-contingency-plan-following-the-news-of-deputy-mayor-resignations/; Anna Kutz, *Scott Stringer: I Hope Hochul Suspends NYC Mayor Eric Adams*, NewsNation (Feb. 18, 2025, 6:43 PM), https://www.newsnationnow.com/us-news/northeast/kathy-hochul-eric-adams-charges-case/.

the Justice Department."[7]  And the carnival continued on February 19, as protestors heckled Mayor

Adams outside the courthouse when he arrived for his hearing.[8]

**ARGUMENT**

**I.      THE GOVERNMENT'S LEAK OF THE FEBRUARY 12 LETTER CONSTITUTES PROSECUTORIAL MISCONDUCT**

District courts have authority to dismiss an indictment on "grounds of eliminating prejudice

to the defendants . . . or of deterring widespread or continuous official misconduct." *United States*

*v. Fields*, 592 F.2d 638, 648 (2d Cir. 1978).  Courts have repeatedly invoked their supervisory

power to dismiss indictments where appropriate.  *See, e.g.*, *United States v. Gross*, 165 F. Supp.

2d 372, 385 (E.D.N.Y. 2001) (dismissing indictment because "a fair trial in this case is nearly

impossible, and criminal prosecution of Defendants would violate fundamental notions of fair play

and decency"); *United States v. Leeper*, 2006 WL 1455485, at *4 (W.D.N.Y. May 22, 2006)

(dismissing indictment where "prosecutorial misconduct has undermined the grand jury's ability

to make an informed and objective evaluation of the evidence presented to it"); *United States v.*

*Stein*, 541 F.3d 130, 158 (2d Cir. 2008) (affirming dismissal for Sixth Amendment violation);

*United States v. Estepa*, 471 F.2d 1132, 1137 (2d Cir. 1972) (ordering dismissal for misconduct

before the grand jury); *United States v. Kilpatrick*, 821 F.2d 1456, 1465 (10th Cir. 1987)

(supporting dismissal for "prosecutorial misconduct which is flagrant to the point that there is some

significant infringement on the grand jury's ability to exercise independent judgment").

---

[7]  Michael Rothfeld, *Danielle Sassoon's Letter to Attorney General Pam Bondi, Annotated*, N.Y. Times (Feb. 13, 2025), https://www.nytimes.com/interactive/2025/02/13/us/doc-annotation-letter-to-bondi.html.

[8]  Ethan Stark-Miller, *Mayor Adams Indictment: Federal Judge to Deliberate After Hearing Arguments over Trump DOJ's Motion to Dismiss Case*, AMNY (Feb. 19, 2025), https://www.amny.com/news/mayor-adams-indictment-hearing-motion-dismiss-02192025/.

The leak of the February 12 letter constitutes grave prosecutorial misconduct and could only have originated from within the government. Only the government actors who wish to see Mayor Adams prosecuted have benefitted from the leak, and only those same bad actors would have had access to the leaked material. The leak has compromised Mayor Adams's right to a fair trial and violated multiple clear rules governing what prosecutors can and cannot disclose to the media. Justice Department regulations, for example, prohibit prosecutors from making public statements that "may reasonably be expected to influence the outcome of a pending or future trial." 28 C.F.R. § 50.2(b)(2). The regulations state that "[t]he release of certain types of information," including "[s]tatements concerning evidence or argument in the case, whether or not it is anticipated that such evidence or argument will be used at trial," and "[a]ny opinion as to the accused's guilt," "generally tend[] to create dangers of prejudice without serving a significant law enforcement function." *Id.* § 50.2(b)(6)(v)-(vi). The former interim U.S. Attorney's statements that the "evidence against Adams … proves beyond a reasonable doubt that he committed federal crimes," and that she is "confident that Adams has committed the crimes with which he is charged" do not facilitate any significant law enforcement function. Rather, they are "subjective observations" that serve only to manipulate public perception and undermine Mayor Adams's right to a fair trial. *See id.* § 50.2(b)(3) ("Disclosures should include only incontrovertible, factual matters, and should not include subjective observations.").

Local Criminal Rule 23.1 similarly cautions that "any opinion[s] as to the accused's guilt or innocence or as to the merits of the case or the evidence in the case" "presumptively involve a substantial likelihood that their public dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice." Local Crim. Rule 23.1(d). The former interim U.S. Attorney's statements are the exact kind of presumptively prejudicial remarks that Local Criminal

8

Rule 23.1 was designed to prevent. And these statements are bookended by those at a televised press conference at the inception of this case from the former U.S. Attorney and Assistant FBI Director that Mayor Adams had been "perverted by greed and dishonesty"; "abused his power and position for nearly a decade"; "put the interests of his benefactors, including a foreign official, above those of his constituents"; "year after year after year . . . kept the public in the dark" while being "showered with" improper gifts; engaged in "a grave breach of the public's trust"; "abused" the privilege of public office; and crossed "bright red lines" "again and again for years." ECF No. 80 at 1. None of these prejudicial statements had any truth to them.

The leak of the February 12 letter also violates Federal Rule of Criminal Procedure 6(e), which prohibits "an attorney for the government" or "government personnel" from disclosing matters occurring before a grand jury. *See* Fed. R. Crim. P. 6(e)(2)-(3). "[I]nformation that reveals the strategy or direction of a grand jury investigation" implicates matters occurring before a grand jury and thus violates Rule 6(e). *United States v. Skelos*, 2015 WL 6159326, at *10 (S.D.N.Y. Oct. 20, 2015); *United States v. Rosen*, 471 F. Supp. 2d 651, 655 (E.D. Va. 2007); *In re Grand Jury Matter (Catania)*, 682 F.2d 61, 63 (3d Cir. 1982) (recognizing that "anything which may reveal what occurred before the grand jury" qualifies as a prohibited disclosure). The rule protects not just information actually presented to the grand jury, but also information likely to be presented, including "expected witnesses," "expected testimony," or that an indictment will be sought. *Skelos*, 2015 WL 6159326, at *10; *In re Grand Jury Investigation (Lance)*, 610 F.2d 202, 210, 218 (5th Cir. 1980). And where an abuse of grand jury secrecy has caused prejudice or bias, dismissal of the indictment is an appropriate remedy. *United States v. Walters*, 910 F.3d 11, 22-23 (2d Cir. 2018).

Here, the leaked information regarding a superseding indictment was contained in internal correspondence between "attorney[s] for the government."  Fed. R. Crim. P. 6(e)(2)(B)(vi).[9] Consequently, there can be no question that the leak is attributable to an actor covered by Rule 6(e), as opposed to random witnesses or their acquaintances, Mayor Adams or his counsel, court staff, or anyone else the government has previously sought to blame for leaks of insider investigative and grand jury information.  In addition, the leak of prosecutors' proposed superseding indictment on an obstruction charge following the grand jury's hearing of additional evidence and testimony is irrefutably a leak of information that Rule 6(e) protects.  *See Lance*, 610 F.2d at 218 (noting that the disclosure of "when an indictment would be presented to the grand jury, the nature of the crimes which would be charged, and the number of persons who would be charged run afoul of the secrecy requirements codified in Rule 6(e)"); *see also id.* at 217-18 ("[I]f an article reports that following the presentation of specified evidence at a future time, the grand jury plans to return an indictment against named persons, the attribution of such information to 'sources close to the investigation' might, without more, suffice to establish a prima facie case of a Rule 6(e) violation by the attorneys conducting the investigation.").

The leak of the February 12 letter not only provides the Court with a sufficient basis to dismiss the indictment, it also justifies a re-examination of prior findings that the pervasive leaks that occurred throughout this case did not necessarily come from the government.  ECF No. 46, at 4, 12-15 (assuming arguendo that Rule 6(e) material includes the issuance of, and identities of individuals allegedly served with, subpoenas to produce documents to or testify before the grand jury as well as the timing of the unsealing of the indictment); ECF No. 103 (deciding motion for

---

[9]  Ms. Sassoon's letter was written prior to her resignation and in her capacity as the United States Attorney for the Southern District of New York.

sanctions based on whether the government was the source of the leaks but not whether a grand

jury witness's identity and substance of that witness's testimony constituted Rule 6(e) material).

Mayor Adams respectfully contends that, when the leaks are viewed in their totality and

alongside this latest disclosure, there can be no question that the government is and always has

been the source. *See, e.g.*, *Lance*, 510 F.2d at 219 ("While each article must be parsed individually,

the testing for a prima facie case must also include a review which considers the whole spectrum

of news articles."); *Barry v. United States*, 865 F.2d 1317, 1326 (D.C. Cir. 1989); *United States v.*

*Flemmi*, 233 F. Supp. 2d 75, 83 (D. Mass. 2000).

## II.    THE LEAK HAS CAUSED MAYOR ADAMS IRREPARABLE PREJUDICE

As Justice Robert H. Jackson aptly warned, "[t]he prosecutor has more control over life,

liberty, and reputation than any other person in America. . . .  He can have citizens investigated

and, if he is that kind of person, he can have this done to the tune of public statements and veiled

or unveiled intimations."[10]  Courts in this district are cognizant of the prejudice that may be caused

by a prosecutor's extrajudicial statements.  *See* ECF No. 103, at 6 n.5 ("[I]t is essential that

prosecutors respect both the power of their words and their office, and ensure that their public

comments are carefully tailored solely to further valid law enforcement interests and to steer far

clear of violating a defendant's fundamental right to a fair trial." (quoting *United States v. Smith*,

985 F. Supp. 2d 506, 541 (S.D.N.Y. 2013)).  That is why safeguards exist to protect against

prejudice from extrajudicial comments and serve as an important check on prosecutors.  *See, e.g.*,

*United States v. Watson*, 2023 WL 7300618, at *14 (E.D.N.Y. Nov. 6, 2023) (government press

release referencing "corrupt executives who flagrantly violate the law" and stating defendant ran

a "criminal organization" "presumptively involve[d] a substantial likelihood" of prejudice); *United*

---

[10]    *The Federal Prosecutor*, 24 J. Am. Jud. Soc'y 18 (1940).

*States v. Silver*, 103 F. Supp. 3d 370, 378-79 (S.D.N.Y. 2015) ("In particular, the Court is troubled by remarks by the U.S. Attorney that appeared to bundle together unproven allegations regarding the Defendant with broader commentary on corruption and a lack of transparency in certain aspects of New York State politics."); *see also Walters*, 910 F.3d at 23 ("The leaking of confidential grand jury information to members of the press, whether to satisfy public interest in high profile criminal prosecutions or to generate evidentiary leads, is serious misconduct and, indeed, likely criminal.").

The government's decision not to heed that guidance predictably further eroded any presumption of innocence Mayor Adams had left in this ill-fated prosecution. It is impossible to understate the prejudice inflicted by the February 12 letter. Four deputy mayors have resigned, citing "the alleged conduct at City Hall that has been reported over the past two weeks."[11] Governor Hochul announced "the implementation of certain guardrails" that will limit Mayor Adams's ability to govern.[12] New York City Council Speaker Adrienne Adams, among many other influential leaders and politicians who once supported Mayor Adams, has called for his resignation.[13] House Minority Leader Hakeem Jeffries—who previously maintained that the Mayor "is entitled to the presumption of innocence and entitled to a trial by a jury of his peers who will ultimately determine his fate within the legal system"[14]—has now pronounced "[i]t is the intention of the Trump administration to keep the current mayor on a short leash."[15] This not only slanders Mayor Adams and his reputation, it also eliminates the possibility that he could receive a

---

[11]    Rashbaum et al., *supra* note 5.

[12]    Hochul, *supra* note 5.

[13]    Adams, *supra* note 5.

[14]    Nicholas Wu, *Jeffries Says Eric Adams Should Not Resign*, Politico (Oct. 4, 2024), https://www.politico.com/news/2024/10/04/jeffries-says-eric-adams-should-not-resign-00182570.

[15]    Barbaro & Fandos, *supra* note 5.

fair trial focused only on the evidence (and in particular here, the lack thereof). While this is incredibly problematic in any case, it is especially so in this case, which never had an ounce of merit to begin with.

All this was caused by the government's decision to leak the February 12 letter and its falsehoods. As reported by *The New York Times*, "in this extraordinary letter to the attorney general, [the former interim U.S. Attorney] says, I was sitting in the room when the mayor's lawyers and the Justice Department were working out this deal. And basically, the mayor was offering assistance for something in exchange for these charges being dropped."[16] ***To be clear: Mayor Adams and the Justice Department never made or even discussed any deal.*** *See* ECF No. 130. Indeed, it is a ludicrous notion that the Mayor's lawyers walked into the Department of Justice and proceeded to try to "bribe" the highest ranking officials in the Department to drop a bribery case, all right in front of the Southern District prosecutors who were pursuing the case. But the letter's disregard for the truth only fueled the fire that an illicit *quid pro quo* had occurred— all to Mayor Adams's severe detriment. As *The New York Times* put it: "[New York City leaders] are reading these letters coming out from the Justice Department. And their conclusion is that [Mayor Adams is] no longer the mayor of New York City's 8 million residents. [Mayor Adams] appear[s] to be the mayor of Donald Trump's agenda, or at least his immigration agenda."[17]

In fact, the former interim U.S. Attorney seemed to concede the extensive pre-existing prejudice to Mayor Adams's rights by suggesting that any improprieties can be washed away if she is allowed to re-indict Mayor Adams and tack on some more charges. ECF No. 124-1 at 5 (suggesting a new indictment is "more than enough to address any perception of impropriety

---

[16]    *Id.*

[17]    *Id.*

created by Mr. Williams's personal conduct"). You do not need to be a federal prosecutor to understand that the solution to improperly motivated and baseless criminal charges is never **more charges**. Astonishingly, the former interim U.S. Attorney's plan amounted to a cover up of her prior boss's weaponization of the justice system to further a baseless prosecution and save face now that the house of cards has predictably crumbled.

## III.    THIS CASE CAN NO LONGER PROCEED

Mayor Adams's right to a fair and impartial trial by an unbiased jury has been obliterated. The fallout from the government's leak of the February 12 letter makes that clear, standing alone. But so, too, does the fact that Mayor Adams was prosecuted in the media long before there was ever an indictment. The Court should take a moment to consider this inescapable reality. This case, which was once just a farce, has now become a cancer, and its pendency continues to cause real and irrevocable harm each and every day. Dismissal with prejudice accordingly is the just outcome here. That is true independent of the Justice Department's pending, unopposed motion to dismiss the case under Rule 48(a).

But the need for dismissal is even more apparent given the full circumstances. In addition to the pending motion to dismiss, ECF No. 122, public statements from Justice Department leaders have confirmed what Mayor Adams has been saying all along: there never was and never will be a legal or factual basis for this prosecution. *See* Devlin Barrett, *The U.S. Attorney General Derides the Merits of the Adams Case in New York*, N.Y. Times (Feb. 20, 2025) (quoting Attorney General Bondi as describing the indictment as "incredibly weak");[18] Attorney General Chief of Staff Chad Mizelle, @ChadMizelle47, X (Feb. 19, 2025, 12:42 PM) ("The case against Mayor Adams was just one in a long history of past DOJ actions that represent grave errors of judgement. . . . I want

---

[18]    https://www.nytimes.com/2025/02/20/us/politics/trump-eric-adams-pam-bondi.html.

to focus on one aspect: The legal theories underpinning SDNY's case and the particularly expansive reading of public corruption law adopted by the prosecutors in this action.");[19] ECF No. 125-2, at 7 (Letter from Acting Deputy Attorney General Emil Bove stating, "[t]he case turns on factual and legal theories that are, at best, extremely aggressive"). As explained in Mayor Adams's recent letter, ECF No. 137, these admissions doom any further prosecution of these charges. Given all of this, there is no need to prolong the inevitable, and the Court should enter an immediate dismissal with prejudice.

## CONCLUSION

For the foregoing reasons, this Court should exercise its supervisory authority to dismiss this case with prejudice.

Dated:  February 26, 2025                    Respectfully submitted,

                                             QUINN EMANUEL URQUHART
                                             & SULLIVAN, LLP

                                             By: */s/ Alex Spiro*

                                             Alex Spiro
                                             295 Fifth Ave.
                                             New York, NY 10016
                                             (212) 849-7000

                                             William A. Burck
                                             John F. Bash (admitted *pro hac vice*)
                                             Avi Perry
                                             1300 I Street NW, 9th Floor
                                             Washington, D.C. 20005
                                             (202) 538-8000

                                             *Attorneys for Mayor Eric Adams*

---

[19]  https://x.com/chadmizelle47/status/1892268416267911251?s=46.