UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No.: 24 Cr. 556 (DEH) |
| -against- | |
| ERIC ADAMS, | |
| Defendant. | |

**BRIEF *AMICUS CURIAE* OF STATE DEMOCRACY DEFENDERS FUND,
LAWYERS DEFENDING AMERICAN DEMOCRACY, AND
<u>INDIVIDUAL EXPERTS IN LEGAL ETHICS</u>**

Ilene Jaroslaw
Elliott Kwok Levine Jaroslaw Neils LLP
One Grand Central Place
60 East 42nd Street, Suite 1570
New York, NY 10165
(212) 321-0510

*Attorney for Amicus Curiae*

TABLE OF CONTENTS

INTEREST OF AMICI IN THIS CASE ........................................................................ 1

INTRODUCTION ..................................................................................................... 2

FACTS RELEVANT TO BOVE'S POSSIBLE ETHICAL VIOLATIONS ................................ 2

ARGUMENT ............................................................................................................ 6

I.      BOVE'S CONDUCT IS RELEVANT TO THE COURT'S DECISION ON THE
        MOTION.................................................................................................... 6

II.     POSSIBLE RULE VIOLATIONS ..................................................................... 8

        A.      Pressuring Lawyers to Sign a Pleading Against Their Professional Judgment
                Would Violate the Rules of Professional Conduct and Taint the Motion to
                Dismiss.......................................................................................... 8

        B.      Misrepresentations to the Court Would Violate the Duty of Candor and Provide
                Grounds to Deny the Motion. ............................................................ 10

        C.      Rule 1.11(f)(3) Prohibits Accepting Anything of Value to Influence Official
                Actions. ........................................................................................ 10

        D.      Rule 8.4(d) Forbids Conduct Prejudicial to the Administration of Justice........... 12

III.    PRINCIPLES OF FEDERAL PROSECUTION ................................................... 15

CONCLUSION........................................................................................................ 19

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Matter of Kurtzrock*,
   138 N.Y.S.3d 649 (N.Y. App. Div. 2d Dept. 2020) .................................................... 13

*Miano v. AC & R Advert., Inc.*,
   148 F.R.D. 68 (S.D.N.Y. 1993) ................................................................................... 12

*Morrissey v. Virginia State B.*,
   448 S.E.2d 615 (Va. 1994) .......................................................................................... 11

*United States v. Adams*,
   Case No.: 24 Cr. 556 (DEH) (Hearing Transcript) ..................................... 17, 7, 10, 18

**Rules**

Federal Rule of Criminal Procedure 48(a) ............................................................. 1, 4

New York Rule of Professional Conduct 3.3 .......................................................... passim

New York Rule of Professional Conduct 5.1 .......................................................... 2, 8, 9

New York Rule of Professional Conduct 8.4 .......................................................... passim

New York Rule of Professional Conduct 1.11 ..................................................... 2, 8, 10, 11

**Other Authorities**

Canon 3(B)(6) of the Code of Conduct for United States Judges ............................... 19

Executive Order 14147 ............................................................................................... 18

NYSBA Ethics Opinion No. 1098 (June 10, 2016) .................................................... 12

NYSBA Ethics Opinion No. 1170 (July 9, 2019) ...................................................... 12

Simon's NY Rules of Prof. Conduct § 1.11:50 ...................................................... 11, 12

## INTEREST OF AMICI IN THIS CASE

State Democracy Defenders Fund, Inc. ("SDDF"), Lawyers Defending American Democracy, Inc. ("LDAD"), distinguished ethics professors, and individual experts in legal ethics (collectively "Amici") submit this brief as *amicus curiae* in this matter. Individual amici are listed on the signature page.

LDAD and SDDF are nonpartisan, nonprofit organizations devoted to defending the rule of law. In pursuit of their missions, LDAD and SDDF seek to ensure that lawyers involved in matters bearing on our democratic institutions and processes conduct themselves in accordance with the applicable rules of professional responsibility.  LDAD and SDDF and other Amici believe that lawyers who engage in conduct inimical to the rule of law must be held accountable both to enforce professional standards and to maintain public confidence that the conduct of lawyers conforms to the ethical standards set forth the Rules of Professional Responsibility.

The Court has raised a series of questions regarding the application of Federal Rule of Criminal Procedure 48(a) to the pending motion to dismiss the indictment against Mayor Eric Adams, dated February 14, 2025 ("Motion").  Amici submit that the inquiry should include whether Acting Deputy Attorney General Emil Bove violated the Rules of Professional Responsibility and applicable Department of Justice guidelines in his conduct of this matter. Amici's brief reviews the relevant ethical rules and publicly available information that implicates those rules and concludes that Mr. Bove may have violated his ethical duties. Those potential ethical violations bear on the Court's analysis of the Rule 48(a)'s public interest factor and ultimately on public confidence in the Department of Justice and this Court.

## INTRODUCTION

This brief summarizes facts in the public record that raise serious questions about whether Mr. Bove violated several of his ethical duties under the New York State Rules of Professional Conduct ("RPC").

The ethical duties Mr. Bove may have violated include the following:

- **RPC 5.1(b)(2)**. This Rule requires that Mr. Bove, as a supervising lawyer in the Department of Justice, ensures that the lawyers he supervises comply with the Rules of Professional Conduct, including Acting U.S. Attorney for the Southern District of New York Danielle Sassoon, and lawyers in the Department of Justice's Public Integrity Section, whom Mr. Bove directed to sign the Motion;

- **RPC 1.11(f)(3)**. This Rule prohibits a lawyer who is a public official from accepting an offer of anything of value in exchange for influencing official action. If, in fact, Mr. Bove accepted an offer from Mayor Adams as a *quid pro quo* in the form of cooperating in the enforcement of the Administration's immigration policies, he may have violated this ethical duty;

- **RPC 3.3(a)(1)**. This Rule prohibits Mr. Bove from knowingly making a false statement of fact or law to a tribunal. If the reasons given by Mr. Bove in support of his Motion and his statement that there was no *quid pro quo* are false, he may have violated this ethical duty; and

- **RPC 8.4(d)**. This Rule prohibits a lawyer from engaging in conduct that is prejudicial to the administration of justice. If Mr. Bove's justifications for the Motion are pretextual and an abuse of his prosecutorial power, granting the Motion may be prejudicial to the administration of justice.

As we discuss below, Mr. Bove's conduct also calls into question whether he complied with the requirements of the U.S. Department of Justice Principles of Federal Prosecution.

## FACTS RELEVANT TO BOVE'S POSSIBLE ETHICAL VIOLATIONS

On January 31, 2025, Ms. Sassoon and members of her legal team met with Mr. Bove and counsel for Mayor Eric Adams to discuss the indictment in this case. Letter from D. Sassoon, Acting U.S. Att'y, S.D.N.Y, to P. Bondi, Att'y Gen. at 3 n.1 (Feb. 12, 2025), Ex. 1. According to

Ms. Sassoon, at the meeting, Adams's lawyers proposed a *quid pro quo* in which the indictment against Adams would be dismissed.  In her letter to Mr. Bove, Ms. Sassoon states:

> "Adams's attorneys repeatedly urged what amounted to a *quid pro quo,* indicating that Adams would be in a position to assist with the Department's enforcement priorities only if the indictment were dismissed."

*Id.* at 3 n.1.[1]

　Ten days after Mr. Bove and the Mayor's attorneys met with Ms. Sassoon and her staff, Mr. Bove sent Ms. Sassoon a letter directing her to dismiss the indictment against Mayor Adams without prejudice and subject to certain conditions.  Memorandum from E. Bove, Acting Dep. Att'y Gen., to Acting U.S. Att'y, S.D.N.Y. at 1 (Feb. 10, 2025), Ex. 2. In his letter, Mr. Bove gave the following reasons for his directive: First, the timing of the proceedings and recent public actions of Damian Williams, the former U.S. Attorney who initiated the case, "threatened the integrity of the proceedings, including by increasing prejudicial pretrial publicity that risks impacting potential witnesses and the jury pool" and improperly interfering with Mayor Adams's campaign in the 2025 election.  *Id.* at 1-2.  And second, the prosecution had "unduly restricted Mayor Adams's ability to devote full attention and resources to the illegal immigration and violent crime that escalated under the policies of the prior Administration."  *Id.* at 2.

On February 12, 2025, Ms. Sassoon sent a forceful response to Pamela Jo Bondi, United States Attorney General.  Ms. Sassoon requested a meeting with the Attorney General to discuss

---

[1]  In an interview on "Fox and Friends" on February 14, 2025, with Mayor Adams and Tom Homan, President Trump's "Border Czar," Mr. Homan implicitly acknowledged there was a *quid pro quo* agreement with Mayor Adams when he stated without objection from Mayor Adams:

> If he doesn't come through, I'll be back in New York City and we won't be sitting on a couch, I'll be in his office, up his butt saying "Where the hell is the agreement we came too?"

https://www.foxnews.com/video/6368821459112 at 19:35.

her concerns with Mr. Bove's dismissal directive stating that she could not "fulfill [her] obligations, effectively lead [her] office in carrying out the Department's priorities, or credibly represent the Government before the courts, if [she sought] to dismiss the Adams case on this record." Exh. 1 at 1-2 (Sassoon Letter).

Ms. Sassoon's response provides an extensive refutation of the two grounds alleged by Mr. Bove in support of dismissing the indictment and suggests there **was** a *quid pro quo* between Mr. Bove and Mayor Adams. *Id*. at 2-6. In her response, Ms. Sassoon stated that because she was confident that "Adams ha[d] committed the crimes with which he is charged, [she could not] agree to seek a dismissal driven by improper considerations." *Id*. at 7. Ms. Sassoon further stated:

> For the reasons explained above, I do not believe there are reasonable arguments in support of a Rule 48(a) motion to dismiss a case that is well supported by the evidence and the law. . . [B]ecause I do not see any good-faith basis for the proposed position, I cannot make such arguments consistent with my duty of candor. N.Y.R.P.C. 3.3; *id.* cmt. 2

Ms. Sassoon concluded her letter by offering to resign if the Attorney General declined to meet her to discuss the letter or reconsider Mr. Bove's directive to dismiss the indictment. *Id*. at 8.

On February 13, 2025, Mr. Bove responded to Ms. Sassoon's letter, but instead of arranging a meeting with the Attorney General, he "accepted" her resignation. Letter from E. Bove, Acting Dep. Att'y Gen., to D. Sassoon, Acting U.S. Att'y, S.D.N.Y. at 1 (Feb. 13, 2025), Ex. 3 ("Bove Letter"). Mr. Bove's response also stated that because Ms. Sassoon's prosecution team "is unwilling to comply with the order to dismiss the case," they would be placed on off-duty administrative leave pending investigation by the Office of the Attorney General and the Office of Professional Responsibility, both of which would also evaluate Ms. Sassoon's conduct. *Id.*

After Ms. Sassoon's resignation, the Adams case was transferred from the U.S. Attorney's Office in the Southern District of New York to the Department of Justice's Public Integrity Section

in Washington, DC, triggering the resignation of five Public Integrity Section lawyers.  W.K. Rashbaum et al., *Order to Drop Adams Case Prompts Resignations in New York and Washington*, N.Y. Times (Feb. 13, 2025), https://www.nytimes.com/2025/02/13/nyregion/danielle-sassoon-quit-eric-adams.html). The New York Times article also reported that hours after Ms. Sassoon's resignation on February 13th, Mayor Adams stated he would issue an executive order allowing federal immigration authorities into the Rikers Island jail complex, "a clear shift in the city's sanctuary policies" and that "[t]he move followed a meeting earlier in the day between Mr. Adams and Mr. Trump's border czar, Thomas Homan."  *Id.*  The following morning, the lead S.D.N.Y. prosecutor in the Adams case resigned.  Letter from H. Scotten, Assistant U.S. Att'y, S.D.N.Y., to E. Bove, Acting Dep. Att'y Gen (Feb. 14, 2025), Ex. 4.

According to a report in the New York Times, on Friday, February 14, 2025, "based on interviews with people with knowledge of the events," Mr. Bove summoned the staff of the Department of Justice's Public Integrity Section to participate in a videoconference call in which Mr. Bove stated that two lawyers in the Section needed to sign a motion to dismiss the case against Mayor Adams.  D. Barrett al., *In Moving to Stop Adams Case, Career Lawyer Sought to Stave Off Deeper Crisis*, N.Y. Times (Feb. 16, 2025), https://www.nytimes.com/2025/02/16/us/politics/justice-department-trump-eric-adams.htm.

Mr. Bove gave the lawyers an hour to make up their minds.  According to the New York Times report, "[t]he threat of a mass firing was unspoken but loomed over the videoconference call." *Id.*  During the discussion among the lawyers, Ed Sullivan, a longtime prosecutor, said he would sign the Motion to "protect the other lawyers."  *Id.*  Sullivan and Antoinette Bacon, who headed the Department of Justice Criminal Division, signed the Motion.  *Id.*  Mr. Bove also signed

the Motion. Nolle Prosequi, *United States v. Adams,* 1;24-cr-00556 (S.D.N.Y. Feb. 14, 2025), Ex. 5 ("Motion").

The Motion gives the same reasons for dismissing the indictment that Mr. Bove gave in his February 10, 2025 letter to Ms. Sassoon. The Motion states that "the Acting Deputy Attorney General" has "concluded" that dismissal is necessary because of "appearance[] of impropriety", "risks of interference with the 2025 elections in New York City" and because "continuing these proceedings would interfere with the defendant's ability to govern in New York City." Motion at ¶¶ 5 6. Mr. Bove gave the same reasons in his argument to this Court during its hearing on February 19, 2025. Tr. of Hr'g, *United States v. Adams*, 1:24-cr-00556 at 23-24, 26 (S.D.N.Y. Feb. 14, 2025), Ex. 6 ("Hearing Transcript"). At the hearing, Mr. Bove also denied there was a *quid pro quo* agreement between the Department of Justice and Mayor Adams, stating that "you have a record undisputed that there is no *quid pro quo*." *Id.* at 49.

## ARGUMENT

## I. BOVE'S CONDUCT IS RELEVANT TO THE COURT'S DECISION ON THE MOTION

As stated in this Court's Order of February 18, 2025, "[i]n granting a motion under Rule 48(a), the Court 'should be satisfied that the reasons advanced for the proposed dismissal are substantial'" and should not disturb the prosecutor's decision to terminate the prosecution "'unless clearly contrary to manifest public interest.'" Order, *United States v. Adams*, 1:24-cr-00556 at 1-2 (S.D.N.Y. Feb. 18, 2025) (citations omitted), Ex. 7.

In his Motion and statements in Court, Mr. Bove contends that the indictment against Mayor Adams should be dismissed because of the appearance of impropriety, interference with the 2025 New York City elections, and to prevent interference in the Mayor's ability to govern New York City. Motion at ¶¶ 5-6. However, Mr. Bove's conduct is relevant to the Court's exercise

of its discretion in deciding the Motion not only with respect to his representations to the Court

but also with respect to his conduct before the Motion was filed.  Mr. Bove's role with respect to

the Motion goes far beyond his role as an advocate for the Department of Justice in filing and

arguing the Motion.  He was a major force in the events leading up to filing the Motion:

- He participated in the January 31, 2025 meeting at which Adams's counsel "urged what amounted to a *quid pro quo*". Sassoon Letter at 3 n.1;

- He decided on the purported factual grounds for the Motion.  *See* Transcript at 23 (Hearing transcript) ("And basically what is set forth here is my conclusion that this case, as a matter of prosecutorial discretion, should not proceed because it reflects, at minimum, appearances of impropriety that give cause for concern about the abuse of the criminal justice process.") and 23-24 ("Specifically, paragraph six sets forth my concerns that the continuation of this prosecution is interfering with both national security and immigration enforcement initiatives being run and conducted by the Executive Branch.");

- He directed Ms. Sassoon to file the Motion. Memorandum from E. Bove, Acting Dep. Att'y Gen., to Acting U.S. Att'y, S.D.N.Y. at 1 (Feb. 10, 2025), Ex. 1.  When Sassoon refused to do so because she believed the dismissal was "driven by improper considerations," he responded to her request to meet with the U.S. Attorney General to address her concerns by "accept[ing]" her offer to resign, advising her that Assistant U.S. Attorneys on the Adams prosecution team would be placed on off-duty administrative leave and that she and the team would be investigated by the Office of the Attorney General and the Office of Professional Responsibility.  Sassoon Letter at 7; Bove Letter at 1;

- After transferring the case to the Justice Department's Public Integrity Office, Mr. Bove gave almost 20 lawyers in the office one hour for two of them to decide which one of them would sign the Motion, with what the New York Times described as an "unspoken threat of a mass firing" looming over the discussion.  D. Barrett et al., *In Moving to Stop Adams Case, Career Lawyer Sought to Stave Off Deeper Crisis*, N.Y. Times (Feb. 16, 2025), https://www.nytimes.com/2025/02/16/us/politics/justice-department-trump-eric-adams.html

Because Mr. Bove's potentially unethical conduct was so deeply connected with events leading up

to filing the Motion, it calls into question whether the "reasons advanced for the proposal dismissal

are substantial."  Order, *United States v. Adams*, 1:25-cr-00556 at 2 (S.D.N.Y. Feb. 18, 2025)

(citations omitted), Ex. 7.  at 2.

As discussed in more detail in the following Section, if Mr. Bove violated Rule 5.1(b)(2) by insisting that Ms. Sassoon and the lawyers in the Public Integrity Section file the Motion, he sought to deprive them of their professional duty to exercise their independent judgment, under Rule 2.1, to determine whether the grounds for the Motion were valid. Mr. Bove's instructions to the lawyers under his supervision to file the Motion immediately further suggests that the stated basis of the Motion was pretextual.

If Mr. Bove violated Rule 3.3(a)(1) by making false statements in his Motion or in Court, that too would cast doubt on the merits of the Motion. If Mr. Bove violated Rule 1.11(f)(3) because he accepted an offer from Mayor Adams's lawyer to aid in the enforcement of federal immigration laws and President Trump's immigration policies in exchange for a dismissal of the indictment, the Court should consider whether dismissal of the indictment based on a *quid pro quo* is compatible with the "public interest" and "substantial reasons" factors that the Court considers in deciding the Motion. And if Mr. Bove's conduct runs counter to the fair administration of justice in violation of Rule 8.4(d), that is yet another reason that militates in favor of denying the motion.

## II.     POSSIBLE RULE VIOLATIONS

### A.     Pressuring Lawyers to Sign a Pleading Against Their Professional Judgment Would Violate the Rules of Professional Conduct and Taint the Motion to Dismiss.

Mr. Bove's refusal to acknowledge Ms. Sassoon's ethical concerns and his reported pressuring of other Justice Department lawyers, if true, may violate core Rules of Professional Conduct. Rule 2.1 mandates that lawyers "exercise independent professional judgment and render candid advice." As the comment to the Rule makes clear, "a lawyer should not be deterred by the prospect that the advice will be unpalatable to the client." Rule 2.1 cmt. 1. Under Rule 5.2(a), Rule 2.1's requirements extend to subordinate lawyers: "A lawyer is bound by these rules notwithstanding that the lawyer acted at the direction of another person."

As the Acting Deputy Attorney General, Mr. Bove stood in a supervisory position with respect to Ms. Sassoon and the lawyers in the Criminal Division, including the Public Integrity Section.  All these lawyers were entitled and indeed required to exercise their independent professional judgment with respect to whether the motion could be filed in good faith and whether it was otherwise consistent with their professional duties. Ethically, they could put aside any misgivings only if they regarded Mr. Bove's position as the "reasonable resolution of an arguable question of professional duty" (Rule 5.2(b)).

Rather than acknowledging and accommodating their concerns and professional obligations, Mr. Bove accepted  Ms. Sassoon's resignation, moved the case to the Public Integrity Section, and called a meeting with attorneys in the unit  in which he told them two attorneys needed to come forward and sign a motion to dismiss, giving them  an hour to sign as the threat of dismissal from the Department hung over the conversation (*see* page 5, *supra*). These actions, if established, could violate his own ethical duty under Rule 5.1(b)(2) to make reasonable efforts to ensure that the lawyers he supervises adhere to the rules – in fact, Mr. Bove's actions would represent an attempt to pressure other lawyers to violate the rules rather than comply with them. *See* Rule 5.2(b).

If either or both of the lawyers who signed the Motion were pressured into doing so, as has been reported, this would irrevocably taint the Motion. By signing the Motion, under Rule 3.3(a)(1), Mr. Bove represented to this Court that the Motion did not contain a false statement of fact or law.  There is a substantial basis here to inquire whether Mr. Bove made representations knowing at the time that they were false. The Court should not be placed in the position of granting a Motion lacking in honesty and integrity.

An evidentiary hearing is the appropriate procedure for further inquiry into whether there were ethical violations leading up to the signing and filing of the Motion.

### B.    Misrepresentations to the Court Would Violate the Duty of Candor and Provide Grounds to Deny the Motion.

There is a factual dispute whether the Motion was part of a *quid pro quo* arrangement.

Mr. Bove denied that one existed:

> [Y]ou have a record undisputed that there is no *quid pro quo*. . . . .    [A] *quid pro quo* . . . doesn't exist . . . . .

 Hearing Transcript at 49.

These unequivocal denials go to the heart of the Motion and to whether Mr. Bove was truthful. If he was not, his false statements would violate the lawyers' duty of candor to the courts established in Rule 3.3(a)(1) and would be attorney misconduct. Importantly, Mr. Bove put his own credibility at issue when he stated the following: "Based on my representations as the decision maker, that's why I'm here today, is to make very clear and so you can look me in the eye and see how I came to these conclusions and we can talk about them." *Id.* at 51. As the comment to Rule 3.3 makes clear, Mr. Bove's assertions about the facts may be made to the Court only if he "knows the assertion to be true or believes it to be true on the basis of a reasonably diligent inquiry." Rule 3.3 cmt. 3.

There is reason to doubt the government's denial of a *quid pro quo* in view of Ms. Sassoon's letter and Mr. Homan's reference to "the agreement" during his appearance with the Mayor Adams on Fox and Friends (*see* page 3 n.1, *supra*). Any hearing ordered in this case should therefore include an inquiry into whether the government violated its duty of candor in its Motion and in Your Honor's courtroom.

### C.    Rule 1.11(f)(3) Prohibits Accepting Anything of Value to Influence Official Actions.

Based on public information and the court record, there is reason to question whether  Mr. Bove violated  Rule 1.11(f)(3), which prohibits a government lawyer from "accept[ing] anything

of value from any person when the lawyer knows or it is obvious that the offer is for the purpose of influencing the lawyer's action as a public official."[2] The publicly available information indicates that Mr. Bove agreed to drop the criminal charges against Mayor Adams in exchange for the Mayor's cooperation on federal immigration enforcement, a policy priority of the current Administration. See, e.g., Sassoon Letter at 3 n.1; *'Game changer': Homan and Adams Collaborate on NYC Immigration Enforcement* at 19:35, Fox and Friends (Feb. 14, 2025) https://www.foxnews.com/video/6368821459112.

Having the mayor of the City of New York direct city officials to effectuate the immigration policy objectives of the current administration undoubtedly constitutes a thing of value to the government. And it was this thing that Mr. Adams offered, and which appears to have led the Department of Justice to file the pending Motion. If the Court determines that this was precisely what occurred, then Mr. Bove may have violated the plain language and purpose of Rule 1.11(f)(3). The prohibition in Rule 1.11(f)(3) serves to prevent precisely this type of improper quid pro quo arrangement, where official prosecutorial acts are traded for things of value, including policy concessions.[3]

---

[2] Rule 1.11(f) was added to the New York rules at the behest of the judiciary, and it is based on the former DR 8-101. *See* Simon's NY Rules of Prof. Conduct § 1.11:50 ("Rule 1.11(f) was not recommended by COSAC or the State Bar but was instead added by the Courts *sua sponte* by borrowing verbatim from former DR 8-101(A)(1)-(3)."). Although misconduct under this provision is thankfully rare, a prosecutor in Virginia was found to violate DR 8-101 by agreeing to reduce charges against a defendant in partial exchange for a $25,000 contribution to various charities hand-picked by the prosecutor. *Morrissey v. Virginia State B.*, 448 S.E.2d 615 (Va. 1994). When the defendant's attorney expressed concern that the prosecutor "was planning to use the checks for political purposes," the prosecutor responded "[w]e've got a deal and you better live up to it,"—a statement that the defense attorney took "as a threat that [the prosecutor] might have [his client] re-indicted on the abduction charge that had been nol-prossed pursuant to the plea agreement."

[3] NYSBA Ethics Opinion No. 1170 (July 9, 2019); *see also* Miano v. AC & R Advert., Inc., 148 F.R.D. 68, 83 (S.D.N.Y. 1993), as amended (Mar. 4, 1993), adopted, 834 F. Supp. 632 (S.D.N.Y. 1993) ("Although bar opinions are not binding on this Court, they are instructive in applying

An evidentiary hearing is necessary to determine what benefit of the bargain Mr. Bove received from Mr. Adams and how this exchange influenced the Department's decision to seek dismissal of the indictment. If the facts are as indicated in the public record, Mr. Bove's conduct may represent a violation of the ethical rules governing lawyers in public office.

### D.    Rule 8.4(d) Forbids Conduct Prejudicial to the Administration of Justice.

Finally, Mr. Bove's conduct appears to implicate New York Rule of Professional Conduct 8.4(d), which prohibits attorneys from engaging in "conduct that is prejudicial to the administration of justice." According to the Committee on Professional Ethics of the New York State Bar Association, Rule 8.4(d) applies "if the conduct in question is likely to cause substantial individual or systemic harm to the administration of justice, regardless of the motivation of the party." N.Y. State Bar Assoc., *Ethics Opinion No. 1098* (June 10, 2016).[4] Thus, for example, the Committee has concluded that "[a] prosecutor may not ethically require, as a routine condition of a plea bargain, that a defendant waive ineffective assistance of counsel claims," in part because such waivers prejudice the administration of justice by creating systemic conflicts of interest. *Id.* In particular, the Committee explained that such waivers both create "enormous pressure for courts and defense lawyers to ignore the potential conflicts created by IAC waiver demands," and also "create an incentive for prosecutors to employ them to conceal IAC claims that are known to prosecutors but unknown to defendants and their lawyers." *Id.*

---

ethical rules to attorney conduct in litigation and provide guidance to attorneys themselves in conforming their conduct to ethical proscriptions.").For example, in NYSBA Opinion 1170, the Committee on Professional Ethics considered whether a Village Attorney could also represent private clients in defense of traffic violations and other proceedings; the Committee wrote that "[i]It goes without saying that the Village Attorney may not accept anything of value to influence the lawyer's exercise of that role."

[4] NYSBA Ethics Opinion No. 1098 (June 10, 2016).

Similar systemic conflict risks appear in this case. The current record raises troubling questions about Mr. Bove's adherence to Department of Justice policies and procedures in his handling of this case, ultimately leading to his decision to move to dismiss an indictment returned by a duly authorized grand jury and which Ms. Sassoon stated in her letter was "well supported by the evidence and the law." Sassoon Letter at 7. The information available indicates that Mr. Bove personally negotiated with Mayor Adams's defense counsel, agreed to move to dismiss the indictment before any substantive review of the merits, and then directed career prosecutors to file a motion advancing rationales that they considered so baseless as to be "pretextual." Memorandum from E. Bove, Acting Dep. Att'y Gen., to Acting U.S. Att'y, S.D.N.Y. at 1 (Feb. 10, 2025), Ex. 2; Letter from H. Scotten, Assistant U.S. Att'y, S.D.N.Y., to E. Bove, Acting Dep. Att'y Gen (Feb. 14, 2025), Ex. 4. When the prosecutors on the team prosecuting Mayor Adams expressed concerns about the legal and ethical propriety of the dismissal, Mr. Bove responded with a campaign of retaliation — placing them on administrative leave and initiating investigations. Bove Letter at 1. These actions are inconsistent with Mr. Bove's duty to seek justice.[5]

This course of conduct, if established, evinces a disregard for the Department's own policies, discussed more fully in Section III below, and a willingness to abuse prosecutorial authority to achieve a predetermined outcome—that is, a systemic conflict of interest that creates an incentive for lawyers to ignore their ethical duties in the interest of political expediency and job protection. *See, e.g., Matter of Kurtzrock*, 138 N.Y.S.3d 649, 665 (N.Y. App. Div. 2d Dept. 2020) (upholding discipline under Rule 8.4(d) and (h) of a prosecutor who failed to properly disclose exculpatory evidence, and explaining that the prosecutor "abdicated his duty as a public officer to

---

[5] Comment 1 to Rule 3.8 states that "[a] prosecutor has the responsibility of a minister of justice and not simply that of an advocate."

13

ensure that justice shall be done and allowed his advocacy role to eclipse and supplant his role as a public officer"). As Assistant U.S. Attorney Hagan Scotten stated in his letter of resignation: "No system of ordered liberty can allow the Government to use the carrot of dismissing charges, or the stick of threatening to bring them again, to induce an elected official to support its policy objectives. . .  [A]ny assistant U.S. attorney would know that our laws and traditions do not allow using the prosecutorial power to influence other citizens, much less elected officials, in this way." Letter from H. Scotten, Assistant U.S. Att'y, S.D.N.Y., to E. Bove, Acting Deputy Att'y Gen (Feb. 14, 2025), Ex. 4.

Mr. Scotten's decision to resign rather than support dismissal of the case demonstrates how far the Department deviated from the norms and traditions that safeguard the fair and evenhanded administration of justice. Punishment of career prosecutors for adhering to their oaths and ethical obligations, if proven, would certainly constitute conduct prejudicial to the administration of justice. A hearing is required to determine whether Mr. Bove in fact engaged in the coercive and retaliatory conduct suggested by the public record.

The Court should not countenance the misuse of prosecutorial power to extract policy concessions or the punishment of career public servants who refuse to go along. The questions surrounding Mr. Bove's conduct go to the heart of the integrity of the prosecutorial function and the Department of Justice itself. This Court should direct further inquiry to ensure that the laws are faithfully executed and justice is properly administered.

As with the other Rules in play, the issues under Rule 8.4(d) are inescapably intertwined with the merits of the Motion: there are substantial grounds for believing that the Motion is tainted by unethical conduct inconsistent with the administration of justice, and under these

circumstances, the Court should not indulge the prosecution with a presumption of good faith in bringing the Motion before the Court, or grant it in the face of such ethical doubts.

For all of the above reasons, the Court should evaluate whether Mr. Bove violated his ethical duties in ordering his subordinates to sign the Motion, signing the Motion himself, and his representations in arguing the Motion. This evaluation should include an evidentiary hearing at which Mr. Bove is called to testify as a witness to these events.

## III.  PRINCIPLES OF FEDERAL PROSECUTION

As Acting Deputy Attorney General, Mr. Bove is bound by Department of Justice policies, outlined in the Department of Justice Manual. The manual seeks to promote the "evenhanded administration of justice" and to ensure that the Department's actions are "impartial" and "free from even the appearance of political influence." U.S. Dep't of Just., Just. Manual § 1-8.100, https://www.justice.gov/jm/jm-1-8000-congressional-relations#1-8.100. The principles of prosecution, part of the DOJ manual, exist to ensure "fair and effective exercise of prosecutorial discretion" and to promote confidence that "prosecutorial decisions will be made rationally and objectively based on an individualized assessment of the facts and circumstances of the merits of each case." *Id.* at §9-27.001.

In determining whether to commence or recommend prosecution or take other action against a person, Department attorneys may not be influenced by the person's political association, activities, or beliefs. *Id.* at § 9-27.260. In addition, federal prosecutors and agents may never make a decision regarding an investigation or prosecution or select the timing of investigative steps or criminal charges, for the purpose of affecting any election, or for the purpose of giving an advantage or disadvantage to any candidate or political party. *Id.* Because the Department's ethical principles serve to promote public confidence in the fair administration of justice, any actions

taken or directed by Mr. Bove that are not in conformity with the Department's ethical principles would be contrary to the public interest.

Since the nature of any agreement between counsel for Mayor Adams and Bove is in dispute, a hearing would allow the Court to examine factual evidence relevant to this matter so it can be assured that the Motion to dismiss without prejudice put forth by Mr. Bove is based on a rational and objective analysis of the facts and circumstances of the merits of the case rather than political considerations. While Mr. Bove has represented that "there is no quid pro quo," Exh. 6 at 49 (Hearing Transcript), Ms. Sassoon reported she attended a meeting with Mr. Bove and counsel for Mayor Adams in which counsel sought dismissal of the case in exchange for Adams's agreement to enforce federal immigration laws. Ms. Sassoon described the nature of the proposed exchange as follows:

> I attended a meeting on January 31, 2025, with Mr. Bove, Adams's counsel, and members of my office. Adams's attorneys repeatedly urged what amounted to a *quid pro quo*, indicating that Adams would be in a position to assist with the Department's enforcement priorities only if the indictment were dismissed. Mr. Bove admonished a member of my team who took notes during that meeting and directed the collection of those notes at the meeting's conclusion.

Sassoon Letter at 3 n.1. A hearing would allow the Court to determine if Mayor Adams is obtaining favorable treatment beyond what other elected officials and criminal defendants receive. As Ms. Sassoon has pointed out, the proposed deal makes no sense from a law enforcement perspective since "it does not grapple with the differential treatment Adams would receive compared to other elected officials, much less other criminal defendants." *Id.*

An evidentiary hearing would help the Court determine whether the alleged interference in national security and immigration enforcement initiatives are a legitimate basis for Mr. Bove to seek dismissal. In raising concerns that the prosecution is interfering with both national security

and immigration enforcement initiatives being run and conducted by the Executive Branch, he appeared to be relying on Mayor Adams's lack of a security clearance. Hearing Transcript at 27. Mr. Bove has now admitted to the Court that the issuance of Mayor Adams's security clearance was a matter within the discretion of the Executive Branch. However, Mr. Bove undermined the credibility of his own argument when he acknowledged to the Court in last week's hearing that Mayor Adams's security clearance could be restored independently of how the Motion is resolved. *Id.* at 30.

An evidentiary hearing is also necessary to ascertain whether the dismissal sought by Mr. Bove is politically motivated and intended to influence the outcome of the upcoming primary election in violation of his ethical obligations. By arguing to the Court that the prosecution should be dismissed because it is interfering with Mayor Adams's ability to run for re-election, Mr. Bove has raised the specter that dismissal is being sought with the purpose of affecting the upcoming June 24 primary election—now just a few months away—in which Mayor Adams is a candidate. Hearing Transcript at 26. It is also apparent that dismissal would give Mayor Adams an electoral advantage he otherwise would not have. In sharp contrast, Ms. Sassoon has explained that the decision to bring the indictment in September 2024 was made nine months before the June 2025 Democratic Mayoral Primary and more than a year before the November 2025 Mayoral Election and "complied in every respect with longstanding Department policy regarding election year sensitivities and the applicable Justice Manual provisions." Sassoon Letter at 4.

Mr. Bove has further undermined public confidence in the administration of justice by failing to inform the Court of the government's stated position on the merits of the case in terms of fact and law. Hearing Transcript at 22. To restore public trust, an evidentiary hearing is necessary to determine whether Mr. Bove exercised his prosecutorial discretion for political

reasons in violation of his professional obligations as a federal prosecutor. There is evidence that he did not. In his February 10 memorandum to Ms. Sassoon, Mr. Bove explained that he reached his conclusions "without assessing the strength of the evidence or the legal theories on which the case is based, which are issues on which we defer to the U.S. Attorney's Office at this time." Memorandum from E. Bove, Acting Dep. Att'y Gen., to Acting U.S. Att'y, S.D.N.Y. at 1 (Feb. 10, 2025), Ex. 2. He added that "the Department has no concerns about the conduct or integrity of the line prosecutors who investigated and charged this case, and it does not question the merits of the case itself." *Id.*

A hearing is also necessary to assess whether there is sufficient credible evidence to support a finding of political weaponization that has been alleged by Mr. Bove. Mr. Bove undermined public confidence when he invoked the appearance of impropriety as the basis for dismissing the case. He did so in reliance on President Trump's Executive Order 14147, but without having introduced sufficient evidence to support a finding of political weaponization. Hearing Transcript at 23. In doing so, Mr. Bove appears to have acted without the requisite impartiality.

Indeed, there is ample evidence to undermine Mr. Bove's claims of weaponization. In her letter to Attorney General Bondi, Ms. Sassoon concluded that the "generalized" concerns expressed by Mr. Bove regarding weaponization were not a sufficient basis to dismiss an indictment returned by a duly constituted grand jury "at least where, as here, the Government has no doubt in its evidence or the integrity of its investigation." Sassoon Letter at 4. Ms. Sassoon also pointed out, based on her personal knowledge, the integrity of the line attorneys who prosecuted the case and the limited role played by former U.S. attorney Damian Williams. She wrote:

> [I] have only known the line prosecutors on this case to act with integrity and in the pursuit of justice, and nothing I have learned since becoming U.S. Attorney has demonstrated

otherwise. If anything, I have learned that Mr. Williams's role in the investigation and oversight of this case was even more minimal than I had assumed. The investigation began before Mr. Williams took office, he did not manage the day-to-day investigation, and the charges in this case were recommended or approved by four experienced career prosecutors, the Chiefs of the SDNY Public Corruption Unit, and career prosecutors at the Public Integrity Section of the Justice Department. Mr. Williams's decision to ratify their recommendations does not taint the charging decision. And notably, Adams has not brought a vindictive or selective prosecution motion, nor would one be successful.

*Id.*

## CONCLUSION

In the typical case involving allegations of prosecutorial misconduct, the remedy may be dismissal of the indictment. In the unusual circumstances presented here, the potential misconduct goes to the propriety of the dismissal motion itself. At bottom, Mr. Bove is asking the Court simply to take his word for it that there is nothing amiss, when there are ample grounds for questioning that assertion. Absent an evidentiary hearing into whether his actions complied with his ethical responsibilities, the Court cannot make an informed ruling on the Motion.

For the reasons set forth above, Amici respectfully request the Court to take the following actions:

First, to direct Mr. Clement to conduct a factual inquiry into whether Mr. Bove violated any of the Rules of Professional Conduct or Department of Justice prosecutorial policies or standards; and

Second, to hold an evidentiary hearing to determine whether, in fact, Mr. Bove violated any of the Rules of Professional Conduct or Department of Justice prosecutorial policies or standards.[6]

---

[6] Pursuant to Canon 3(B)(6) of the Code of Conduct for United States Judges, this Court has the discretion to impose a remedy – beyond denial of the Motion to Dismiss – if it determines that Mr. Bove violated any of the Rules of Professional Conduct. The Canon provides that "[a] judge should take appropriate action upon receipt of reliable information indicating the likelihood that . . . a lawyer violated applicable rules of professional conduct." (Emphasis added.)

February 28, 2025

Respectfully submitted,

_____

Ilene Jaroslaw
Elliot Kwok Levine Jaroslaw Neils LLP
One Grand Central Place
60 East 42nd Street, Suite 1570
New York, NY 10165
(212) 321-0510
ijaroslaw@ekljnlaw.com
Bar No. IW0569

Attorney for *State Democracy Defenders Fund*,
*Lawyers Defending American Democracy*, and
Individual Amici

### Individual Amici

Norman Eisen, *Board Member, State Democracy Defenders Fund*

John T. Montgomery, *Board Member, Lawyers Defending American Democracy*

Stephen Marcus, *Volunteer, Lawyers Defending American Democracy, Adjunct Professor, Georgetown University Law Center\**

Bruce Kuhlik, *Former Assistant to the Solicitor General, U.S. Department of Justice, Volunteer, Lawyers Defending American Democracy, Adjunct Professor, Georgetown University Law Center*

Virginia Canter, *Ethics and Anticorruption Chief Counsel and Director, State Democracy Defenders Fund*

Don Fox, *former General Counsel and Acting Director, U.S. Office of Government Ethics*

Richard Painter, *Former Associate Counsel to the President and chief White House ethics lawyer for President George W. Bush*

Cassandra Robertson, *Law Professor, Case Western Reserve University School of Law\**

Susan Carle, *Professor of Ethics Law and Vice-Dean, American University\*, Editor of Lawyers' Ethics and the Pursuit of Social Justice (NYU Press 2005)*

Angela J. Davis, *Distinguished Professor of Law, Criminal Justice Ethics and Criminal Law and Procedure, American University Washington School of Law\*, Author of Arbitrary Justice: The Power of the American Prosecutor (Oxford University Press, 2007)*

Bruce Green, *Louis Stein Chair of Law, Director, Stein Center, Fordham University School of Law\**

Mitt Regan, *McDevitt Professor of Jurisprudence, Director, Center on Ethics and the Legal Profession, Georgetown University Law Center\**

Rebecca Roiphe, *Joseph Solomon Distinguished Professor of Law, New York Law School\**

Ellen C. Yaroshefsky, *Howard Lichtenstein Professor of Legal Ethics, Director - Monroe Freedman Institute for the Study of Legal Ethics, Maurice A. Deane School of Law, Hofstra University\**

Abbe Smith, *Professor of Law, Georgetown University Law Center\**


\* Affiliations are provided for identification purposes only. The views expressed in the proposed amicus brief reflect only those of the individual and do not necessarily reflect the institution with which they are affiliated.

**CERTIFICATION OF WORD COUNT**

In compliance with Local Civil Rule 7.1(c) of the Joint Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, the undersigned hereby certifies that the word count in this Brief (excluding the caption, index, table of contents, table of authorities, signature block, the certificate of service, and this certification), as established using the word-count function of the word-processing system used to prepare it, is 6,427 words.

Dated:    New York, New York
          March 3, 2025

 

_____
Ilene Jaroslaw

**CERTIFICATE OF SERVICE**

I hereby certify that on February 28, 2025, I emailed the foregoing to the Chambers of the Honorable Dale E. Ho and to all counsel of record in this case.  On March 3, 2025, I electronically filed the same with the clerk of the court using the CM/ECF system, which will send notification of this filing to counsel of record.

Dated:     New York, New York
           March 3, 2025

_____
Ilene Jaroslaw

23