

David E. McCraw
Senior Vice President
& Deputy General Counsel

T 212 556 4031
mccraw@nytimes.com

620 8th Avenue
New York, NY 10018
nytimes.com

March 9, 2025

**VIA ECF**

The Hon. Dale E. Ho
Southern District of New York
United States Courthouse
40 Foley Square
New York, NY 10007

      Re: *U.S. v. Adams*, 24-cr-00556-DEH, Opposition to Sealing of Exhibits

Dear Judge Ho:

I write on behalf of The New York Times Company ("The Times") to respectfully request that the Court not seal Exhibits A through H (the "Exhibits") to the Government's March 7, 2025 Response in Support of Motion to Dismiss Pursuant to Rule 48(a) (the "Response," Dkt. 160). The Government, with the consent of the Defendant, has filed a letter requesting that the Exhibits be sealed but cites only a single ground: the purported privacy interest of the attorneys involved in this prosecution. (Dkt. 161.) The Response makes clear that all the attorneys were high-ranking officials at the U.S. Attorney's Office or at the Justice Department or prosecutors in this action, all of whom have been identified publicly on the docket. Those privacy interests are insufficient to set aside the public's constitutional and common law rights of access to judicial documents. More to the point, the Government is introducing the Exhibits as evidence of potential wrongdoing by prosecutors in a case involving the prosecution of the highest-ranking official in New York City. It is hard to imagine a circumstance in which the public interest would be higher and the privacy interest lower.

1

We premise this opposition on the public's qualified right of access to judicial records under both the federal common law and the First Amendment.[1] At issue in the Government's motion to dismiss is an allegation that cuts to the very heart of the public's confidence, or lack of confidence, in the criminal justice system: whether the prosecution of a sitting public official was pursued by prosecutors corrupted by political or other improper motives. The Second Circuit has made clear that, under both the common law and the First Amendment, government filings detailing possible wrongdoing by prosecutors are subject to a heightened presumption of public access. *Gannett Media Corp. v. United States*, No. 22-2160, 2022 U.S. App. LEXIS 35099 at *8 (2d Cir. Dec. 20, 2022) ("we emphasize that there is a strong public interest in the manner in which criminal cases are conducted, including the handling of any allegations of prosecutorial misconduct during the discovery phase of the case"). In *Gannett*, as here, the Government argued that secrecy was needed to protect the privacy interest of prosecutors who may be subject to internal investigation by the Department of Justice. The Second Circuit was not moved:

> The district court's two justifications for the redactions were (1) the need "to protect the robust and candid functioning of the Department of Justice's internal processes," and (2) "privacy concerns." These broad findings, however, are insufficient to justify the redactions in the Sealed Submissions.

*Id.* (citing *In re N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987) ("Broad and general findings by the trial court . . . are not sufficient to justify [sealing]."), and *Brown v. Maxwell*, 929 F.3d 41, 48 (2d Cir. 2019) (holding that the district court erred in making only "generalized statements about the record as a whole" to support sealing)). In *Gannett*, the Government tried to make a record to support the justification for secrecy, but the Second Circuit found it wanting. Importantly, that failed record was significantly more detailed than what the Government has done here. Here, the entire basis for sealing is set out in two conclusory sentences in a two-paragraph letter. That is not enough to deny the public its rights of access.

---

[1] The right of access is an affirmative public right, and the press's standing to enforce it is well settled. *See, e.g., Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 609 n.25 (1982); *United States v. All Funds on Deposit at Wells Fargo Bank*, 643 F. Supp. 2d 577, 580 (S.D.N.Y. 2009) ("A motion to intervene to assert the public's First Amendment right of access to criminal proceedings is proper." (quoting *United States v. Aref*, 533 F.3d 72, 81 (2d Cir. 2008))).

The Common Law

The *Gannett* decision flows from the well-established analytic framework used to determine the public's right of access under the federal common law. Every "judicial document" is subject to a presumption of access. *Lugosch v. Pyramid Co.*, 435 F.3d 110, 119 (2d Cir. 2006). As the Government concedes here, the Exhibits are judicial documents. *See* Dkt. 161 (citing *Lugosch*, 435 F.3d at 120). The weight of the presumption of access then turns on the nature of the specific documents sought, taking into account "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Lugosch*, 435 F.3d at 119 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)). When the documents are central to the exercise of the Court's Article III powers – indisputably the case here – the presumption is at its strongest. *Id.* In contrast, when a document is filed simply to illuminate a civil discovery dispute, the presumption is lessened. *Id.* The Court must then weigh the presumption of access against any countervailing interests posed by the parties. *Id*. at 120; *see also Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 143 (2d Cir. 2016).

Quotations from the sealed Exhibits are employed throughout the Response to justify the extraordinary decision by the Government to dismiss without prejudice the indictment of Mayor Adams. (*See* Dkt. 160 at 1-2, 13-16.) That extensive use of quotations is significant to this motion in two ways.

*First*, the repeated references to the Exhibits demonstrate just how significant the Exhibits are to the Government's argument for dismissal and, therefore, how central they will be to this Court's dispositive decision on the motion to dismiss. Whether the Government has accurately quoted from the Exhibits and done so with proper context can be fairly determined by the public only if the public has access to the Exhibits. Repeatedly in the Response, the Government chooses to excerpt isolated sentences that, in many cases, refer vaguely to other documents that are not themselves disclosed. On page 15, for instance, the Response quotes all (or maybe parts) of two comment bubbles taken from a draft letter without revealing what language in the draft is being addressed. Just after that, we learn of one attorney's "separate message" and are provided a snippet of the message's content, but no context about what the rest of the message said, who the recipients were, and how it fit into the timeline of events.

But the most dramatic denial of the public's right to be shown the evidence comes at the very end of that section on page 16. There the Government serves up an explosive summation of the Exhibits, suggesting that they damningly demonstrate that the former lead line prosecutor wanted to convict Mayor Adams to earn a judgeship and that the former Acting U.S. Attorney was making pretextual arguments. Yet, those troubling allegations are supported in the Response by nothing more than a handful of isolated quotations from the actual documents. When judicial documents are central to the Court's adjudication, the public's right of access is at its apex.

*Second*, in using the quotations, the Government already has unquestionably revealed the identities of the government lawyers whose privacy is purportedly being protected by the sealing of the Exhibits. Whatever privacy interests may have been present were rendered a nullity by the public discussion found in the Response. The Government cannot have it both ways – hiding documents from the public based on personal privacy and then stripping away that personal privacy with cherry-picked quotations from easily identifiable individuals in a brief. Simply put, this is not a case where protection of privacy is a countervailing interest capable of overcoming the presumption of access. And to the extent any information remains genuinely private, the Government has failed to convincingly explain why it should overcome the extraordinarily high public interest in this proceeding and these documents. In any event, any legitimate privacy interest would be properly safeguarded through targeted redactions rather than blanket sealing. *See In re Search Warrant*, No. 16-mc-464, 2016 U.S. Dist. LEXIS 178313, at *12 (S.D.N.Y. Dec. 19, 2016).

The First Amendment

The legal principles governing the First Amendment right of access to judicial records are equally well settled and provide a second, independent basis for unsealing the Exhibits. The right attaches to a large array of judicial records and gives the public a constitutional basis to inspect those records, absent a showing of an overriding public interest that justifies sealing. *See, e.g.*, *Lugosch*, 435 F.3d at 124 (common law and constitutional right to judicial documents in civil case); *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 92-93 (2d Cir. 2004) (unsealing of court dockets under the First Amendment); *United States v. Suarez*, 880 F.2d 626, 630 (2d Cir. 1989) (First Amendment right to documents in a criminal case).

The Supreme Court has developed a two-part test, based on "experience" and "logic," for determining whether the First Amendment right attaches to particular documents. *See Press-Enter. Co. v. Super. Ct.*, 478 U.S. 1, 8 (1986); *see also Pellegrino*, 380 F.3d at 92. Under the experience prong, the court considers whether the document has historically been open to the public. *Press-Enter.*, 478 U.S. at 8. The logic prong concerns "whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* It is now well settled in this circuit that the constitutional access right attaches to pre-trial motions in a criminal proceeding. *See United States v. Gerena*, 869 F.2d 82, 85 (2d Cir. 1989) (applying the First Amendment right to "briefs and memoranda" filed in connection with pre-trial and post-trial motions).

Though the right of access is presumptive, the presumption can be overcome only if the Government or another party demonstrates that:

1. There exists a "substantial probability" that unsealing will cause harm to a compelling governmental interest;
2. There exists no reasonable alternative to adequately protect the threatened interest;
3. Any denial of access is narrowly tailored to serve that interest; and
4. A denial of access would prevent the harm sought to be avoided.

*Press-Enter.,* 478 U.S. at 13-14; *see also United States v. Doe*, 629 F. App'x 69, 72 (2d Cir. 2015). Further, the court must make "specific, on the record findings" supporting the denial of access. *Press-Enter.*, 478 U.S. at 13; *accord Lugosch*, 435 F.3d at 120.

The Government has not carried that burden, not even close, with its perfunctory letter. As the Second Circuit held in *Gannett*, 2022 U.S. App. LEXIS 35099 at *7-8, the public has a particularly compelling interest in knowing whether those who hold powerful positions in the Department of Justice have misused their power. There is also a second and further compelling public interest: knowing the full basis upon which this prosecution is being terminated so the public can judge for itself whether that dismissal is truly in the public's interest, as the Government says. *See United States v. Mazzariello*, No. 13-cr-211, 2015 U.S. Dist. LEXIS 168874 at *17 (W.D.N.Y. Dec. 17, 2015) (all papers on a motion to dismiss must be made public except for references to secret grand jury materials). Few decisions are of more public consequence than the decision by a court to punish or leave at liberty a high government official accused of violating the public trust.

5

A decision to dismiss shares many of the attributes of sentencing, where the courts in this Circuit have repeatedly recognized the importance of public access to the ultimate determination a court makes in a criminal case. *See United States v. Alcantara*, 396 F.3d 189, 198-99 (2d Cir. 2005) (acknowledging the value to the public of witnessing at sentencing whether fairness has been achieved for both the defendant and the community); *see also United States v. Rechnitz*, No. 16-cr-389, 2021 U.S. Dist. LEXIS 6757, at *2 (S.D.N.Y. Jan. 13, 2021) ("This right of access extends also to materials submitted to the court in connection with sentencing."); *United States v. LeRoux*, No. 12-cr-489, 2020 U.S. Dist. LEXIS 100016, at *2 (S.D.N.Y. June 8, 2020) (access to sentencing submissions plays a key role in public confidence in the judiciary by "enabl[ing] the public to learn why [the] defendant received a particular sentence").

For the reasons discussed above in respect to the common law right, no compelling, countervailing interest overcomes the First Amendment right of access to the Exhibits. The one interest cited by the Government – protection of privacy – is illusory here. Importantly, the Constitution imposes a heavier burden on those seeking sealing than the one imposed by the common law. *Lugosch*, 435 F.3d at 126. Where the First Amendment applies, it can be "overcome only by an overriding interest based on findings that [sealing] is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enter.*, 478 U.S. at 9; *see also Lugosch*, 435 F.3d at 124. And the parties must show a "substantial probability" that the harms they proffer to justify sealing will come to pass if disclosure is granted. *Press-Enter.*, 478 U.S. at 14. That case has not been made here.

Finally, the Second Circuit has "emphasize[d] the importance of immediate access where a right to access is found," *Lugosch*, 435 F.3d at 126, and unsealing is particularly urgent here. The Court has already underscored the need for "prompt resolution of the pending motion [to dismiss]" and indicated it "will endeavor to rule expeditiously after briefing." (Order, Dkt. 136, at 4.) It has also scheduled any oral argument, which will likely involve discussion of the sealed Exhibits, for this coming Friday, March 14. *Id.* To delay unsealing "until after the judge has ruled on a motion[] would be to impair the important interest in contemporaneous review by the public of judicial performance" and of the prosecutorial misconduct alleged by the Government. *Lugosch*, 435 F.3d at 127 (quoting *In re Coordinated Pretrial Procs. in Petroleum Prods. Antitrust Litig.*, 101 F.R.D. 34, 43 (C.D. Cal. 1984)).

For the foregoing reasons, The Times respectfully requests that the Exhibits be made public.

We thank the Court for its consideration of this matter.

Respectfully submitted,

*David McCraw*

David E. McCraw

cc: Counsel of Record (via ECF)