# United States District Court
## District of New Jersey

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: | Mag. No. 22-16177 |
| ALL SMART PHONES AND TABLETS ON THE PERSON OR IN THE POSSESSION OF ███ ██████████ AT NEWARK INTERNATIONAL AIRPORT | Honorable José R. Almonte<br><br>**APPLICATION FOR A SEARCH WARRANT** |

I, ████████, being duly sworn depose and say:
I am a Special Agent with the FBI and have reason to believe that on the devices described as:

See Attachment A

located in the District of New Jersey there is now concealed:

See Attachment B

The application is based on these facts:

See Attachment C

The basis for the search under Fed. R. Crim. P. 41(c) is (check one or more):
  x  evidence of a crime;
  _  contraband, fruits of crime, or other items illegally possessed;
  x  property designed for use, intended for use, or used in committing a crime;
  _  a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: 18 U.S.C. §§ 371, 666, 1343, 1349



Special Agent, FBI

Special Agent ████ attested to this Affidavit by telephone pursuant to FRCP 4.1(b)(2)(A), on October 13, 2022

<u>October 13, 2022</u>    at  <u>9:29</u>  <u>A.M.</u>
Date

<u>New Jersey</u>
State

Honorable José R. Almonte
<u>United States Magistrate Judge</u>
Name & Title of Judicial Officer

s/Honorable José R. Almonte

Signature of Judicial Officer

**ATTACHMENT A**

**Property to Be Searched**

The Target Devices are particularly described as any smart phones (including but not limited to Apple iPhones) or tablets (including but not limited to Apple iPads) found on the person of ███████████ ("████████"), including any garments worn by ████████ and any bags or containers carried by ████████ while at Newark International Airport.

SDNY_01_000004350
SUBJECT TO PROTECTIVE ORDER.

**ATTACHMENT B**

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the ESI contained on the Target Devices for evidence, fruits, and instrumentalities of theft of federal funds and wire fraud, and conspiracy to commit the same, in violation of 18 U.S.C. §§ 371, 666, 1343, and 1349, including the following:

a. Evidence of knowledge or understanding of, or intent to violate, laws and regulations governing the conduct of the 2021 New York City Mayoral campaign on the part of ███████████████████ and its employees, officers, or associates.

b. Evidence relating to coordination between employees, officers, and associates of ████ and employees, officers, and associates of the 2021 New York City mayoral campaign of Eric Adams (the "Adams Campaign") concerning political contributions to the Adams Campaign.

c. Evidence relating to payments to employees, officers, and associates of ███ to facilitate those employees, officers, and associates making political contributions to the Adams Campaign.

d. Evidence relating to coordination or communications between employees, officers, and associates of the Adams Campaign and employees,

SUBJECT TO PROTECTIVE ORDER.

officers, and associates of the Turkish General Consulate in New York City concerning contributions to the Adams Campaign.

     e.  Evidence relating to the source of funds for payment or reimbursement of employees, officers, and associates of ███ for political contributions to the Adams Campaign.

     f.  Evidence of other individuals or entities who donated to the Adams Campaign before or after receiving transfers of funds similar to the amount of the donation.

     g.  Identity of any persons or entities involved, wittingly or unwittingly, in straw donations to the Adams Campaign.

     h.  Passwords or other information needed to access the user's online accounts, including but not limited to email and encrypted messaging applications.

**ATTACHMENT C**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN THE MATTER OF THE SEIZURE AND SEARCH OF: | **TO BE FILED UNDER SEAL** |
| ALL SMART PHONES AND TABLETS ON THE PERSON OR IN THE POSSESSION OF ███████████ AT NEWARK INTERNATIONAL AIRPORT. | Mag. No. 22-16177 |
| | **AFFIDAVIT** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Special Agent ████████, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.    I have been a Special Agent with the Federal Bureau of Investigation ("FBI") for over two years.  I am assigned to a public corruption squad in the FBI's New York office and have participated in investigations involving campaign finance offenses and public corruption.  As part of those investigations, I have participated in the execution of search warrants involving electronic evidence.

2.    I make this Affidavit in support of an application pursuant to Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the person of ████████ ("████████"), including any garments worn by ████████ and any bags or containers carried by ████████, and to seize and search any smart phones (including but not limited to Apple iPhones) or tablets (including but not

SUBJECT TO PROTECTIVE ORDER.

limited to Apple iPads) (collectively, the "Target Devices") found pursuant to said search, as more particularly described in Attachment A, for the information described in Attachment B.

3.      For the reasons detailed below, I respectfully submit that there is probable cause to believe that the Target Devices contain evidence, fruits, and instrumentalities of violations of violations of theft of federal funds and wire fraud, and conspiracy to commit the same, in violation of 18 U.S.C. §§ 371, 666, 1343, and 1349 (collectively, the "Subject Offenses").

4.      This affidavit is based upon my personal knowledge; my review of documents and other evidence; my conversations with other law enforcement personnel; and my training, experience, and advice received concerning the use of electronic devices in criminal activity and the forensic analysis of electronically stored information ("ESI").  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation.  Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

SDNY_01_000004354
SUBJECT TO PROTECTIVE ORDER.

## THE TARGET DEVICES

5.      The Target Devices are defined as any smart phones (including but not limited to Apple iPhones) or tablets (including but not limited to Apple iPads) carried by ▮▮▮▮▮▮ or in clothing, bags, or containers worn or carried by her at the time of the search.

6.      Based on my training and experience, I know that the Target Devices have capabilities that allow them to serve as a wireless telephone (sending and receiving phone calls, video calls, text messages, and encrypted messages), digital camera, portable media player, GPS navigation device, calendar, and PDA and providing email and internet access.

7.      At the time this warrant is executed, the Target Devices will be located in the District of New Jersey.  In particular, ▮▮▮▮▮▮ is scheduled to be on Turkish Airlines Flight 29, departing Istanbul, Turkey on October 13, 2022, and arriving at Newark International Airport in Newark, New Jersey that same day, October 13, 2022.  Law enforcement agents will execute this warrant at Newark International Airport.

## PROBABLE CAUSE

### A. Probable Cause Regarding the Subject Offenses

8.      Since in or about August 2021, the FBI and the Office of the United States Attorney for the Southern District of New York have been investigating the

possible receipt of so-called "straw" donations[1] by the 2021 New York City mayoral campaign of Eric Adams (the "Adams Campaign") from employees of ████████████████████████ a construction company that operates in New York City.  In particular, Erden Arkan, the owner of ████, organized a fundraiser for Adams, which was held at ████ on May 7, 2021; various persons made donations at the event, some of whom on April 28, 2021 had received checks from ████ in the same amount as their subsequent donations (the "Straw Donations").

9.    On or about August 1, 2022, the Honorable Katharine H. Parker, United States Magistrate Judge, Southern District of New York, issued a search warrant for the iCloud accounts of both ████████████ and ████████████ (the "iCloud Warrant") for evidence, fruits, and instrumentalities of commission of the Subject Offenses in connection with the possible straw donations discussed above.  That warrant, to include the affidavit I submitted in seeking it, is attached hereto as Exhibit A and incorporated by reference herein.

10.    I know from my review of media reports, among other sources, that ████████ is a longtime advisor of Eric Adams who worked in the Special Counsel's office of the Brooklyn Borough President when Adams was Brooklyn Borough President, was involved with the Adams Campaign, and now works in the Mayor's Office for International Affairs.  As detailed in Exhibit A, during the

---

[1] A straw, or "conduit," donation occurs when a donation to a political campaign is made in the name of one donor, but the funds in question in fact belong to a different person.

SUBJECT TO PROTECTIVE ORDER.

course of Adams's mayoral campaign, ██████ had regular contact both with Turkish consular officials and with ███ and was personally involved with the May 7, 2021 Adams fundraiser held by ███, at which the Straw Donations were made.

11.    I know from my review of media reports, among other sources, that ████ was a fundraiser for the Adams Campaign, was employed with the Brooklyn Borough President's office when Adams was the Brooklyn Borough President, and is now a fundraiser for the Kings County Democratic Party.

12.    Based on my review of publicly available information, ███ is affiliated with a larger Turkish company and many of its employees are Turkish nationals.

13.    Based on my involvement in this investigation, including the review of emails sent by Erden Arkan, the owner of ███, and obtained pursuant to a court-authorized search warrant, as well as data obtained pursuant to the iCloud Warrant, I know that:

a. On or about April 1, 2021, ██████ sent ███ a message listing various meeting attendees including ████████, Turkey's Consul General, and Arkan.

b. On April 10, 2021, Arkan sent an email, in Turkish, to seven individuals, five of whom have corporate email addresses indicating involvement in the construction industry. Arkan also copied seven ███ employees, some of whom subsequently made the Straw Donations. Arkan wrote, in substance and in part, that: In the

SUBJECT TO PROTECTIVE ORDER.

previous week he had met with (then) Brooklyn Borough President Eric Adams, and the New York General Consul (who I understand, to be Turkey's New York General Consul) also joined them; Adams is running for New York City Mayor and has warm feelings for Turkish business people; Arkan knows that the recipients of the email have been supporting Adams so far, but "they" (from context, ███) are organizing a very special event in Arkan's office on May 5th, between 5 and 6:30 pm; the recipients of the email should participate in the event and contribute; this may "feel like swimming against the current" but unfortunately, this is how things are done in this country; and this will hopefully be a successful fundraising event.

c.  On or about April 21, 2021, ████████ sent ██████ the following message: "Also I gave your number to one of the gentleman from last time dinner[.] He has questions regarding campaigns[.] His name is Erden Arkan[.]"

d.  On April 21, 2021, Arkan sent an email to four individuals to thank them all for participating in an unspecified event.  Arkan further wrote that in the morning, he had spoken with "Consul General ████ ████████ who was very happy and thought that mid-May would be an appropriate target date.  As noted above, ██████████████ is the Consul General of Turkey's New York consulate.

14.    As further detailed in the iCloud Warrant, there is probable cause to believe that evidence of the Subject Offenses would be found in ███████ iCloud account, because, among other reasons, she helped coordinate the fundraising efforts with ███ that resulted in the Straw Donations.  *See* Ex. A at ¶¶ 8-22.  Furthermore, I have participated in the review of data received from ███████ iCloud account pursuant to the iCloud Warrant.  This review has uncovered, amongst other things, the following:

a.  A photograph of ███████, the Turkish Consul General, and Adams from on or about February 15, 2021;

b.  Photographs of ████, Adams, and ██████ at what appears to be the Turkish consulate in New York, NY on or about November 19, 2021;

c.  A video of Adams giving a speech at what appears to be the May 7, 2021 fundraiser held at ███ based on the attendees depicted and metadata for video file; and

d.  A screenshot of what appears to be a WhatsApp message, in which ██████ asks Adams to facilitate the cooperation of the New York City Fire Department in obtaining a temporary certificate of occupancy for a building operated by the Turkish Consulate, and Adams states "Let me check on this."  Based on information at the bottom of the screenshot, it appears that ██████ forwarded this screenshot to ████, the Turkish Consul General who was present at the meeting that appears to have led to the Straw Donations; and

SUBJECT TO PROTECTIVE ORDER.

e. A WhatsApp audio message between ███ and ███.[2]

**B. Probable Cause Regarding the Target Devices**

15.    Like individuals engaged in any other kind of activity, individuals who engage in the Subject Offenses store records relating to their illegal activity and to persons involved with them in that activity on electronic devices such as the Target Devices.  Such records can include, for example, call logs, text messages or chats, emails, voicemails, voice notes or messages, photographs, and contact information of co-conspirators.  As detailed herein and in Exhibit A, evidence of the straw donor scheme has been found in email, text messages (including WhatsApp messages), and photographs, amongst other mediums.

16.    Furthermore, based on my training and experience, including the review of ESI obtained pursuant to search warrants, I know that data found in a user's iCloud account generally originates from the user's electronic devices, including smart phones like an iPhone and tablets like an iPad.  Although data can be deleted from a user's devices after being backed-up to the iCloud, depending on the user's settings, it is not uncommon to find at least some of the same data on a user's devices as is found in a user's iCloud account.  Moreover, depending on a user's settings, data might only be backed up on the iCloud at certain intervals, meaning that the user's devices can contain additional data beyond that found on the iCloud.  Finally, if a user utilizes encrypted

---

[2] These messages are in Azeri and, although not yet translated, confirm contact between ███ and ███.

SUBJECT TO PROTECTIVE ORDER.

applications, including encrypted messaging applications such as WhatsApp or Signal, their smart phone or tablet can contain data that is not on their iCloud. Where there is encrypted data on the user's iCloud, often times the password or "key" needed to access that data can be found on the user's smart phone or tablet.

17.     Based on my review of data from the ███████ iCloud account, and my consultation with an FBI expert in forensic electronic analysis, I understand that ████████ iCloud account contains significant quantities of WhatsApp data but that the FBI cannot currently access this data because the data is encrypted and the FBI does not have the key.  I further understand that the key can be found on the electronic device where the WhatsApp application resides, such as the Target Devices.

18.     Furthermore, I know based on my review of messages in the ██████ iCloud account that ██████ sometimes moved her sensitive conversations, including conversations with ██████, to the encrypted messaging application Signal.  Based on my review of data in the ███████ iCloud account, I know that ████████ also utilized Signal.  FBI cannot currently access any of the Signal data for ██████ or ████████.  However, based on my consultation with an FBI expert in forensic electronic analysis, I understand that depending on the version of Signal on ████████ electronic devices, Signal data could be recovered from those devices.

19.     Based on the foregoing, I respectfully submit there is probable cause to seize and search the Target Devices for evidence, fruits, and instrumentalities of the Subject Offenses.

### III. Procedures for Searching ESI

#### A. Execution of Warrant for ESI

20.     Federal Rule of Criminal Procedure 41(e)(2)(B) provides that a warrant to search for and seize property "may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information . . . for later review."    Consistent with Rule 41, this application requests authorization to seize any computer devices and storage media and transport them to an appropriate law enforcement facility for review. This is typically necessary for a number of reasons:

- First, the volume of data on electronic devices and storage media is often impractical for law enforcement personnel to review in its entirety at the search location.

- Second, because such data is particularly vulnerable to inadvertent or intentional modification or destruction, computer devices are ideally examined in a controlled environment, such as a law enforcement laboratory, where trained personnel, using specialized software, can make a forensic copy of the storage media that can be subsequently reviewed in a manner that does not change the underlying data.

- Third, there are so many types of electronic hardware and software in use today that it can be impossible to bring to the search site all of the necessary technical manuals and specialized personnel and equipment potentially required to safely access the underlying data.

- Fourth, many factors can complicate and prolong recovery of data from an electronic device, including the increasingly common use of passwords, encryption, or other features or configurations designed to protect or conceal data on the computer, which often take considerable time and resources for forensic personnel to detect and resolve.

SDNY_01_000004362
SUBJECT TO PROTECTIVE ORDER.

**B. Review of ESI**

21.    Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) will review the ESI contained on Target Devices for information responsive to the warrant.

22.    In conducting this review, law enforcement may use various techniques to determine which files or other ESI contain evidence or fruits of the Subject Offenses.  Such techniques may include, for example:

- surveying directories or folders and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);

- conducting a file-by-file review by "opening" or reading the first few "pages" of such files in order to determine their precise contents (analogous to performing a cursory examination of each document in a file cabinet to determine its relevance);

- "scanning" storage areas to discover and possibly recover recently deleted data; scanning storage areas for deliberately hidden files; and

- performing electronic keyword searches through all electronic storage areas to determine the existence and location of search terms related to the subject matter of the investigation. (Keyword searches alone are typically inadequate to detect all information subject to seizure. For one thing, keyword searches work only for text data, yet many types of files, such as images and videos, do not store data as searchable text. Moreover, even as to text data, there may be information properly subject to seizure but that is not captured by a keyword search because the information does not contain the keywords being searched.)

23.    Law enforcement personnel will make reasonable efforts to restrict their search to data falling within the categories of evidence specified in the warrant.  Depending on the circumstances, however, law enforcement may need

SDNY_01_000004363
SUBJECT TO PROTECTIVE ORDER.

to conduct a complete review of all the ESI from the Target Devices to locate all data responsive to the warrant.

### C. Return of ESI

24.     If the Government determines that the Target Devices are no longer necessary to retrieve and preserve the data on the device, and that the Target Devices are not subject to seizure pursuant to Federal Rule of Criminal Procedure 41(c), the Government will return them, upon request.  Data that is encrypted or unreadable will not be returned unless law enforcement personnel have determined that the data is not (i) an instrumentality of the offense, (ii) a fruit of the criminal activity, (iii) contraband, (iv) otherwise unlawfully possessed, or (v) evidence of the Subject Offenses.

### <u>CONCLUSION</u>

25.     I submit that this affidavit provides probable cause for a warrant to search the **Target Devices** described in Attachment A and to seize the items described in Attachment B.

26.     WHEREFORE, I respectfully request that a search warrant be issued, pursuant to Rule 41 of the Federal Rules of Criminal Procedure, authorizing law enforcement personnel to seize and search the **Target Devices** described in Attachment A. I further request that the warrant authorize law enforcement personnel to search the **Target Devices** for and to seize those items set forth in Attachment B.

SUBJECT TO PROTECTIVE ORDER.

## REQUEST FOR DELAYED NOTICE AND SEALING

27.    I hereby request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the proposed warrant to delay notice to the person whose property was searched or seized until April 13, 2023.[3]  Delayed notice would be appropriate because, as set forth above, the proposed warrant relates to an ongoing criminal investigation concerning the Subject Offenses that is neither public nor otherwise known to all targets of the investigation, including ███████████, who would otherwise receive notice of the warrant and is suspected of being involved in the conduct under investigation.  As a result, premature public disclosure of this affidavit or the requested warrant could alert potential criminal targets that they are under investigation, causing them to destroy evidence, flee from prosecution, or otherwise seriously jeopardize the investigation.  In particular, as is set forth above and in Exhibit A, some of the subjects of the investigation have significant contacts abroad, including in Turkey, and could   flee if alerted to the investigation.  *See* 18 U.S.C. § 2705(a)(2)(B), (E).  In addition, as is set forth above and in Exhibit A, subjects of this investigation are known to use computers and electronic communications in furtherance of their criminal activity and thus

---

[3] It is my understanding that in order to execute the proposed warrant in a manner that does not disclose the fact of the ongoing investigation described herein, agents from Homeland Security Investigations ("HSI") at Newark International Airport will tell ████████, in sum and substance, that they are seizing the Target Devices pursuant to border search authority.  In fact, HSI will be seizing the Target Devices, and FBI will be searching them, pursuant to the proposed warrant.

SDNY_01_000004365
SUBJECT TO PROTECTIVE ORDER.

could easily delete, encrypt, or otherwise conceal such digital evidence from law enforcement were they to learn of the Government's investigation. *See* 18 U.S.C. § 2705(b)(3).

28.    I further submit that, for the reasons set forth above, there is reasonable necessity for the seizure of the Target Devices.

29.    Finally, for the reasons set forth above, I respectfully request that this affidavit and all papers submitted herewith be maintained under seal until the Court orders otherwise, except that the Government be permitted without further order of this Court to provide copies of the warrant and affidavit as need be to personnel assisting it in the investigation and prosecution of this matter, and to disclose those materials as necessary to comply with discovery and disclosure obligations in any prosecutions related to this matter.



Special Agent
Federal Bureau of Investigation

Special Agent ▮▮▮ attested to this Affidavit by telephone pursuant to F.R.C.P. 4.1(b)(1)(A) on this 13th day of October, 2022.

s/HONORABLE JOSÉ R. ALMONTE

HONORABLE JOSÉ R. ALMONTE United States Magistrate Judge

SUBJECT TO PROTECTIVE ORDER.

# EXHIBIT A
## [22 MAG 6274]

SDNY_01_000004367
SUBJECT TO PROTECTIVE ORDER.

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: | Mag No. 22-16177 |
| ALL SMART PHONES AND TABLETS ON THE PERSON OR IN THE POSSESSION OF ███████████ AT NEWARK INTERNATIONAL AIRPORT | Honorable José R. Almonte **SEALING ORDER** |

Upon the application of the United States of America, by Philip R. Sellinger, the United States Attorney for the District of New Jersey (by Ari Fontecchio, Assistant United States Attorney, appearing), for a search warrant and an order sealing the search warrant issued on this date and the application and attached affidavit in support of such warrant; and

**IT APPEARING** that disclosure or prior notice of this search warrant and all related documents would seriously jeopardize the investigation; and for good cause shown,

**IT IS** on this 13th day of October 2022,

**ORDERED** that the search warrant, the application in support of the search warrant, and all related documents, and this Order, are sealed until otherwise ordered by the Court.

s/Honorable José R. Almonte
HONORABLE JOSÉ R. ALMONTE
UNITED STATES MAGISTRATE JUDGE

Authorized telephonically pursuant to Fed. R. Crim. P. Rule 4.1

SDNY_01_000004393
SUBJECT TO PROTECTIVE ORDER.

AO 93C  (08/18) SDNY Rev.  Warrant by Telephone or Other Reliable Electronic Means          ❑ Original          ❑ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

District of New Jersey

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| ALL SMART PHONES AND TABLETS ON THE PERSON OR IN THE POSSESSION OF ███ ███ AT NEWARK INTERNATIONAL AIRPORT | ) ) ) ) |

Case No.  22-16177

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____ New Jersey _____

*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

The search and seizure are related to violation(s) of *(insert statutory citations)*:

theft of federal funds and wire fraud, and conspiracy to commit the same, in violation of 18 U.S.C. §§ 371, 666, 1343, and 1349

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____ October 25, 2022 _____ *(not to exceed 14 days)*
❑ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ The Honorable José R. Almonte _____ .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❑ for ____ days *(not to exceed 30)*   ☑ until, the facts justifying, the later specific date of _____ 04/13/2023 _____ .

| | |
|---|---|
| Date and time issued: _____ October 13, 2022 at 9:29 A.M. _____ | s/Honorable José R. Almonte |
| | *Judge's signature* |
| City and state: _____ By telephone pursuant to FRCP 4.1(b)(2)(A) _____ | Honorable José R. Almonte, United States Magistrate Judge |
| | *Printed name and title* |

SDNY_01_000004394
SUBJECT TO PROTECTIVE ORDER.

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>22-16177 | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

SDNY_01_000004395
SUBJECT TO PROTECTIVE ORDER.