UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 24 MAG 1197

---
In re: Warrant and Order for Historical
Location Information for the Electronic
Device    Associated    with    VIN
JA4T5VA91PZ030200,    USAO
Reference No. 2021R00778
---

**APPLICATION**

**24 Mag. _____**

### Application for Warrant and Order
### for Location Information

The United States of America, by its attorney, Damian Williams, United States Attorney

for the Southern District of New York, Hagan Scotten, Assistant United States Attorney, of

counsel, respectfully requests that the Court issue the accompanying proposed Warrant and Order

for historical location information for an electronic device. As grounds for this Application the

Government relies on the following facts and authorities.

**I.   Introduction**

1.   I am an Assistant United States Attorney in the U.S. Attorney's Office for the Southern

District of New York. This Application is submitted in conjunction with the accompanying

affidavit of a law enforcement agent ("Agent Affidavit"), to be sworn before this Court, and

incorporated by reference herein. I make this Application based on information and belief,

including the Agent Affidavit, my review of other documents in the case, and information received

from investigative personnel.

2.   The Investigating Agency, Target Device, Target Subject, Service Provider, and

Subject Offenses referenced in this Application are as specified in the Agent Affidavit.

**II.   Legal Authority**

3.   The Government seeks historical cell site data for the Target Device for the period from

November 5, 2023 through November 7, 2023 (the "Historical Location Information"). Because

2024-03-21

1

SDNY_01_000006356
SUBJECT TO PROTECTIVE ORDER.

such data constitutes information concerning a subscriber, the Court is authorized to order the Service Provider to provide this data pursuant to a warrant application under 18 U.S.C. § 2703(c) or an application for an order under 18 U.S.C. § 2703(d). *See* 18 U.S.C. § 2703(c)(1)(A). I respectfully submit that the Agent Affidavit establishes probable cause supporting the issuance of a warrant under § 2703(c) for the Historical Location Information, pursuant to the applicable provisions of Rule 41. In addition, the Government seeks toll records for the same period as the Historical Location Information is requested, which the Government is authorized to obtain pursuant to 18 U.S.C. § 2703(d). I respectfully submit that there are specific and articulable facts showing that there are reasonable grounds to believe that the historical location information and toll records sought are relevant and material to an ongoing criminal investigation, as set forth in greater detail in the Agent Affidavit.

### III. Sealing and Non-Disclosure Order to Service Provider

4.    When the Government obtains records or information under § 2703(c), it is not required to notify the subscriber or customer. 18 U.S.C. § 2703(c)(3). Additionally, the Government may obtain an order precluding the Service Provider from notifying the subscriber or any other third-party of the warrant or order obtained, for such period as the Court deems appropriate, where there is reason to believe that such notification will result in endangering the life or physical safety of an individual, flight from prosecution, destruction of or tampering with evidence, or intimidation of potential witnesses, or will otherwise seriously jeopardize the investigation. 18 U.S.C. § 2705(b). As described in greater detail in the Agent Affidavit, the subjects of the investigation have discussed the deletion of documents and are suspected of having made efforts to obstruct the Government's investigation, and there is a risk that if this application were disclosed, electronic evidence could be destroyed.

2024-03-21

2

SDNY_01_000006357
SUBJECT TO PROTECTIVE ORDER.

5. Accordingly, as explained further in the Agent Affidavit, in light of the confidential nature of the continuing criminal investigation and the adverse consequences expected in the event of premature notification, the Government respectfully requests that the Court direct the Service Provider not to notify the subscriber or any other person of the Warrant and Order sought herein for a period of one year, subject to extension upon application to the Court, if necessary.

6. For similar reasons, I respectfully request that the proposed Warrant and Order, this Application, and the accompanying Agent Affidavit, be maintained under seal until the Court orders otherwise, except that the Government be permitted without further order of this Court to serve the Warrant and Order on the Service Provider; provide copies of the Warrant and Order or the supporting Application and Agent Affidavit as need be to personnel assisting the Government in the investigation and prosecution of this matter; and disclose these materials as necessary to comply with discovery and disclosure obligations in any prosecutions related to this matter.

**IV. Prior Requests**

7. Except as may be set forth above, no prior request for the relief requested herein has been made.

Dated: New York, New York
      March 22, 2024

                                     Hagan Scotten
                                     Assistant United States Attorney
                                     Tel.: 347-802-5952

2024-03-21

3

SDNY_01_000006358
SUBJECT TO PROTECTIVE ORDER.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re: Warrant and Order for Historical
Location Information for the Electronic
Device Associated with VIN
JA4T5VA91PZ030200, USAO
Reference No. 2021R00778

**24 MAG 1197**

**AGENT AFFIDAVIT**

**24 Mag. _____**

**Agent Affidavit in Support of Warrant and Order
for Historical Location Information**

STATE OF NEW YORK    )
                     ) ss.
COUNTY OF NEW YORK  )

███████████ being duly sworn, deposes and states:

**I. Introduction**

1. I am a Special Agent with the Federal Bureau of Investigation (the "FBI" or
"Investigating Agency"). As such, I am a "federal law enforcement officer" within the meaning of
Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing
the criminal laws and duly authorized by the Attorney General to request a search warrant. I have
been a Special Agent with the FBI since 2019. I am currently assigned to a public corruption squad
of the New York Field Office, where, among other things, I investigate crimes involving illegal
campaign contributions, theft of federal funds, and bribery. Through my training and experience,
I also have become familiar with some of the ways in which individuals use smart phones and
electronic communications, including social media, email, and electronic messages, in furtherance
of their crimes, and have participated in the execution of search warrants involving electronic
evidence. I have also participated in the use of location data, such as the data sought herein, in
order to locate persons and evidence.

SUBJECT TO PROTECTIVE ORDER.

2.  **Requested Information.** I respectfully submit this Affidavit pursuant to 18 U.S.C. §§ 2703(c) and (c)(1)(A) and the applicable procedures of Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(d) & 2705, in support of a warrant and order for historical location information and toll records for the Target Device identified below (collectively, the "Requested Information").

3.  **Basis for Knowledge.** This Affidavit is based upon my participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals, as well as my training and experience. Because this Affidavit is being submitted for the limited purpose of obtaining the Requested Information, it does not include all the facts that I have learned during the course of this investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. In addition, unless otherwise indicated, statements by others referenced in this Affidavit were not necessarily made to me, but may have been provided to me by someone else to whom I have spoken or whose report I have read (and who in turn may have had either direct or indirect knowledge of the statement). Similarly, unless otherwise indicated, information in this Affidavit resulting from surveillance does not necessarily set forth my personal observations, but may have been provided to me by other law enforcement agents who observed the events, and to whom I have spoken or whose report I have read.

4.  **Target Device, Target Subject, and Service Provider.** The Target Device referenced in this Affidavit is the electronic device associated with VIN JA4T5VA91PZ030200 which, for purposes of the Requested Information, operates in similar fashion to a cellular telephone.  The Service Provider for that device is AT&T.  The Target Device is associated with a vehicle, but it

2

SUBJECT TO PROTECTIVE ORDER.

connects to the Service Provider's network in order to provide services to the user of the vehicle. The Target Subject is ███████ who, as further explained below, uses the vehicle associated with the VIN JA4T5VA91PZ030200.

5. **Cell Site Location Information.** Cellphone service providers have technical capabilities that allow them to collect at least two kinds of information about the locations of the cellphones to which they provide service: (a) precision location information, also known as E-911 Phase II data, GPS data, or latitude-longitude data, and (b) cell site data, also known as "tower/face" or "tower/sector" information. Precision location information provides relatively precise location information about a cellphone, which a provider can typically collect either via GPS tracking technology built into the phone or by triangulating the device's signal as received by the provider's nearby cell towers. Cell site data, by contrast, reflects only the cell tower and sector thereof utilized in routing any communication to and from the cellphone, as well as the approximate range of the cellphone from the tower during the communication (sometimes referred to as "per-call measurement" ("PCM") or "round-trip time" ("RTT") data). Because cell towers are often a half-mile or more apart, even in urban areas, and can be ten or more miles apart in rural areas, cell site data is typically less precise than precision location information. Based on my training and experience, I know that cell site data is routinely collected by the Service Provider in the course of routing calls placed to or from any cellphone on its network.[1]

**II.   Facts Establishing Probable Cause**

6. I respectfully submit that probable cause exists to believe that the Requested Information will lead to evidence of violations of (i) 18 U.S.C. §§ 371 and 666 (theft of federal

---

[1] Toll records are sometimes necessary or helpful in order to obtain or interpret historical cell site data and are therefore also requested herein.

SDNY_01_000006361
SUBJECT TO PROTECTIVE ORDER.

funds and conspiracy to steal federal funds), (ii) 18 U.S.C. §§ 1343 and 1349 (wire fraud and attempt and conspiracy to commit wire fraud), (iii) 18 U.S.C. § 371 and 52 U.S.C. § 30121 (campaign contributions by foreign nationals and conspiracy to commit the same); and (iv) 18 U.S.C. § 1001 (false statements in a matter within the jurisdiction of the executive branch of the Government of the United States) (collectively, the "Subject Offenses").

7.    By way of overview, and as described in greater detail below, in November 2023 law enforcement obtained a warrant to search electronic devices in New York City Mayor Eric Adams's possession for evidence of some of the Subject Offenses (namely, the statutes listed in items (i) through (iii) in paragraph 6 above). When law enforcement executed that warrant, Adams turned over a number of devices, but did not turn over his personal cellphone (the "Adams Personal Cellphone"). When an FBI agent asked Adams, in substance and in part, whether he had any other electronic devices with him, Adams responded, in substance and in part, that he did not have any other electronic devices on his person. Adams did not volunteer any information about any additional cellphones. In the days after the search, Adams represented, through counsel, that Adams did not have the Adams Personal Cellphone in his possession during the search, and that Adams had inadvertently rendered the Adams Personal Cellphone inaccessible the day before the search and left it at City Hall on the day of the search. Location data for the Adams Personal Cellphone was inconsistent with that representation, and Adams subsequently reported, through counsel, a different version of events, namely, that Adams's assistant ████████████ took the Adams Personal Cellphone with her when she left City Hall on the day of the search. The Government is seeking the Requested Information—location and toll information for the Target Device, which is the cellular device attached to the New York City Vehicle (the "City Vehicle") used by ██████—to determine whether the movements of the Adams Personal Cellphone were

4

consistent with its being in ███████ possession or in the possession of Adams or someone with him on the evening of the search.

**The Search of Adams Does Not Result in the Seizure of the Adams Personal Cellphone**

8.   On November 5, 2023, this Court issued a warrant authorizing a search of the person and personal effects of Eric Adams and the seizure of any electronic communications devices found in that search. The search warrant (the "Adams Phone Warrant"), and the application for that warrant, including the affidavit in support and its exhibits (the application and its exhibits are collectively referred to as the "Adams Phone Warrant Application"), are attached as Exhibit A.[2] As set forth in the Adams Phone Warrant Application, Adams used a personal cellphone, the Adams Personal Cellphone, with the call number ███████3179, and a number of Adams's communications about the Subject Offenses identified in the Adams Phone Warrant were conducted using the Adams Personal Cellphone. (*See generally* Ex. A ¶ 15).

9.   On November 6, 2023, at approximately 7:10 p.m., I and other FBI Special Agents executed the Adams Phone Warrant, as Adams was leaving an event that began at approximately 6:30 p.m. and was held near Washington Square Park in Manhattan. During the execution of the Adams Phone Warrant, Adams handed over four electronic devices: two cellphones, one Apple

---

[2] The Adams Phone Warrant Application is incorporated by reference herein, with the following exceptions: (1) ¶ 6 of that application described ████████ as a member of the staff for Adams' 2021 mayoral campaign.  Counsel for Adams has since told the Government that, at least with respect to the 2021 Adams Campaign, ██████ was a volunteer. (2) Paragraph 7 of that application stated that ███ was affiliated with a larger Turkish corporation. Law enforcement has since interviewed several ███ employees who have stated, in substance and in part, that although ███ was started by personnel formerly employed by that larger Turkish corporation, the two entities have no formal connection. (3) We are continuing to investigate the exact substance of the conversation described in paragraph 13 of that application and are not presently asking the Court to rely on that conversation in making its probable cause determination.

SDNY_01_000006363
SUBJECT TO PROTECTIVE ORDER

iPad, and a laptop computer that belonged to the City of New York.[3] When an FBI agent asked Adams during the execution of the Adams Phone Warrant, in substance and in part, whether he had any other electronic devices with him, Adams responded, in substance and in part, that he did not have any other electronic devices on his person.

10. Based on my discussions with other law enforcement personnel, I know that none of the electronic devices seized in the execution of the Adams Phone Warrant were associated with the call number of the Adams Personal Cellphone.

**The Shifting Narrative About the Location of the Adams Personal Cellphone**

11. From my involvement in this investigation, I know that on or about November 7, 2023, in response to a subpoena, Adams's counsel brought two electronic devices to the FBI's offices in Manhattan. I understand that Adams's counsel has asserted, in substance and in part, that those two devices were both, at different times, associated with the call number of the Adams Personal Cellphone, and that they were not in Adams's possession at the time of the search warrant execution discussed above. On November 9, 2023, the Honorable Sarah Netburn, United States Magistrate Judge for the Southern District of New York, issued a search warrant authorizing a search of those two devices. From my discussions with law enforcement personnel involved in executing that search warrant, I know that one of those devices is the device that used the call number of the Adams Personal Cellphone at the time of the search, and that the phone had been "locked" prior to its arrival at the FBI's offices, such that it could not be accessed biometrically, but instead could only be accessed via a six-digit personal identification number ("PIN"). The FBI has not been able to access all of the data on that device and is still attempting to unlock the phone.

---

[3] The laptop was subsequently returned to Adams at the request of Adams's counsel without being searched.

SDNY_01_000006364
SUBJECT TO PROTECTIVE ORDER.

12. Based on my discussions with a Paralegal employed by the United States Attorney's Office for the Southern District of New York, who was present for a series of phone calls on November 9, 2023, between prosecutors involved in this investigation and attorneys representing Eric Adams, I know, among other things, the following:

    a.   In a series of phone calls with an attorney ("Attorney-1") who represents Adams in his personal capacity, Attorney-1 represented that Adams had told Attorney-1, in substance and in part, that:

        i.   Because of the nature of his job, several of Adams's aides must from time to time access Adams's personal cellphone, and therefore knew the PIN used to access the phone, which consisted of four digits;

        ii.   After public reporting of searches of other subjects executed in this investigation on or about Thursday, November 2, 2023, Adams was concerned about others' access to his phone, because of the possibility that there would come a time when his phone might be sought in connection with the investigation;

        iii.   As a result of that concern, Adams decided to change the password used to access his personal cellphone;

        iv.   On Sunday night (*i.e.,* the night of November 5, 2023) Adams changed his password, for the first time in a long time, to a six-digit password, which he believed—he later discovered incorrectly—was 936639;

        v.   After locking himself out of his personal cellphone, Adams intended to bring the phone to the Apple Store to attempt to gain access to the phone, and exchanged text messages with his scheduler (*i.e.,* ▮▮▮▮▮▮) on the evening of

7

SDNY_01_000006365
SUBJECT TO PROTECTIVE ORDER.

November 5, 2023, asking her to help him bring the phone to the Apple Store for that purpose, though Adams did not ultimately take the phone to the Apple Store;

vi.  On Monday, November 6, 2023, Adams brought the locked personal cellphone to City Hall, where he continued to try unsuccessfully to access it;

vii.  On November 6, 2023, when Adams left City Hall to attend the event after which he was searched by the FBI, he did not bring his locked personal cellphone with him, but instead left it at City Hall; and

viii.  After the search, Adams returned to City Hall to retrieve the personal cellphone, and then brought it to Gracie Mansion, where he handed it over to his counsel.

b.  In a phone call with an attorney ("Attorney-2") who represents Adams in his official capacity as the Mayor of New York City, Attorney-2 represented, in substance and in part, that Adams told Attorney-2 that Adams's current personal cellphone, as well as another device, were at City Hall at the time Adams was searched by the FBI, and that after Adams was searched by the FBI, Adams was driven to City Hall for the purpose of retrieving those electronic devices, which he then immediately brought to Gracie Mansion, where he turned them over to counsel.

13. On November 5, 2023, the Honorable Gary Stein, United States Magistrate Judge for the Southern District of New York, issued a Warrant and Order (the "Adams Personal Cellphone Cellsite Order") authorizing the disclosure of location information for the Adams Personal Cellphone.

14. Based on my review of data received pursuant to the Adams Personal Cellphone Cellsite Order and analyses of that data prepared by other law enforcement officers, I know, among

8

SDNY_01_000006366
SUBJECT TO PROTECTIVE ORDER.

other things, that on or about November 6, 2023, between approximately 5:30 p.m. and 5:48 p.m. (approximately 42 minutes before the beginning of the event near Washington Square Park described in paragraph 9 above, after which the Adams Phone Warrant was executed), the Adams Personal Cellphone traveled from the vicinity of City Hall northbound, passing the vicinity of Washington Square Park and then moving north in a manner consistent with driving northbound on Sixth Avenue in Manhattan, reaching approximately 29th Street. Thereafter, the Adams Personal Cellphone stopped providing location information, which I know from my training and experience and my discussions with other law enforcement officers indicates that the Adams Personal Cellphone was no longer connecting to its carrier's network, which may indicate that it was turned off, placed in "airplane mode," or its battery died. In other words, location information for the Adams Personal Cellphone is inconsistent with the representations Adams made, through Attorney-1 and Attorney-2, that the Adams Personal Cellphone remained at City Hall while he attended the event after which he was searched.

15. On December 1, 2023, the Honorable Sarah L. Cave, United States Magistrate Judge for the Southern District of New York, issued a Warrant and Order authorizing the disclosure of location information for the two cellphones and the Apple iPad seized from Adams's person on November 6, 2023. Based on my review of data received pursuant to that Order and analyses of that data prepared by other law enforcement officers, I know, among other things, that the locations and apparent movements of those devices were not consistent with the locations and apparent movements of the Adams Personal Cellphone.

16. Based on my review of an email from Attorney-1 sent to the prosecutors involved in this investigation, I know that Attorney-1 sent an email correcting some of the information,

SDNY_01_000006367
SUBJECT TO PROTECTIVE ORDER.

described above, that had previously been provided by phone. Specifically, Attorney-1 stated, in substance and in part, the following:

a. In the evening on November 5, 2023, Adams changed the password to the Adams Personal Cellphone, and thereafter was unable to access the device.

b. After locking himself out of the Adams Personal Cellphone, Adams sent a text message to ▮▮▮▮ his assistant, to inform her that he had lost access to his cellphone and to ask her to bring the Adams Personal Cellphone to an Apple store the following day to troubleshoot. Adams left the Adams Personal Cellphone at City Hall on the evening of November 5, 2023, so that ▮▮▮▮ could retrieve it.

c. On November 6, 2023, ▮▮▮▮ was unable to bring the Adams Personal Cellphone to an Apple store. At the end of the work day, when she left City Hall, she brought the device with her.

d. After the FBI's search of Adams on the evening of November 6, 2023, Adams returned to City Hall, expecting to find the Adams Personal Cellphone there. When the device was not there, ▮▮▮▮ was asked to return the device to City Hall, and did so, after which Adams brought the Adams Personal Cellphone to Gracie Mansion and turned it over to his attorneys.

17. I know from my conversations with an investigator for the New York City Department of Investigation, and records provided by that investigator, that the City Vehicle was assigned to ▮▮▮▮ from November 5 to 7, 2023, among other days.

18. I have spoken with an FBI expert in cellphone and GPS location data, who has analyzed, among other records: (1) location data for the Adams Personal Cellphone; (2) location data for the devices seized from Adams on November 6, 2023, (3) location data for a cellphone known to be used by ▮▮▮▮ and (4) location data from a device used by the City that

10

SUBJECT TO PROTECTIVE ORDER.

records the location of the City Vehicle when it parks.  The expert informed me, in substance and

in part, that (1) for the time between approximately 5:30 p.m. on November 6, 2023 and the

execution of the Adams Phone Warrant, the location data she reviewed was more consistent with

the Adams Personal Cellphone moving with the devices used by ▮▮▮▮ than with moving with

the devices seized from Adams during the execution of the Adams Phone Warrant, but (2) the data

was relatively sparse, and the expert's understanding could be improved by reviewing the

Requested Information, which is likely to be more precise than the current data for ▮▮▮▮

devices during that time period.

***

19. Based on the foregoing, I respectfully submit that there is probable cause to believe

that Adams made false statements about the location of the Adams Personal Cellphone through his

attorney, thus committing certain of the Subject Offenses, namely violation of 18 U.S.C. § 1001.

That violation would also constitute evidence of the other Subject Offenses, namely, evidence of

consciousness of guilt, given that the suspected false statements related to an electronic device for

which there was probable cause to believe evidence of the other Subject Offenses in the

Government's investigation, which had recently become publicly known, would be found. I further

submit that there is probable cause to believe that the Requested Information will constitute

evidence of the Subject Offenses, because location information for the Target Device will indicate

which version of events relating to the Adams Personal Cellphone, described above, actually

occurred. In particular, the Requested Information will indicate whether the Adams Personal

Cellphone was with ▮▮▮▮ or somewhere else at the time Adams was searched, thus

demonstrating whether Adams, through his counsel, made false statements to law enforcement.

11

SUBJECT TO PROTECTIVE ORDER.

### III.  Request for Warrant and Order

20. Based on the foregoing I respectfully request that the Court require the Service Provider to provide the Requested Information as specified further in the Warrant and Order proposed herewith, including historical cell site data and toll records for the period from November 5, 2023 through November 7, 2023.

21. **Nondisclosure.** The existence and general nature of this ongoing criminal investigation are publicly known, because of media reporting, and are known to Adams himself, including because of the execution of the Adams Phone Warrant and Adams's counsel's subsequent interactions with prosecutors. But the exact nature of the investigation and the particular types of evidence the Government is covertly seeking as the investigation continues—including the fact that the Government is seeking the Requested Information—are not publicly known. Neither is the fact that the Government has expanded the Subject Offenses under investigation to include false statements, or the fact that the Government has reason to doubt the truth of statements Adams has made and may continue to make. The premature public disclosure of this affidavit or the requested Warrant and Order could alert subjects of the investigation about as-yet non-public information about the nature and scope of the Government's investigation, which could cause them to destroy evidence, flee from prosecution, or otherwise seriously jeopardize the investigation. Accordingly, I respectfully request that the Service Provider be directed not to notify the subscriber or others of the existence of the Warrant and Order for a period of one year, and that the Warrant and Order and

SDNY_01_000006370
SUBJECT TO PROTECTIVE ORDER.

all supporting papers be maintained under sealuntil the Court orders otherwise, as specified in

the Application submitted in conjunction with this Affidavit.

/s/ ███████ (by GS w/ permission)

Special Agent
Federal Bureau of Investigation

Sworn to me through the transmission of this
Affidavit by reliable electronic means, pursuant to
Federal Rules of Criminal Procedure 41(d)(3) and 4.1, on
March 22, 2024

HONORABLE GARY STEIN
United States Magistrate Judge
Southern District of New York

13

SUBJECT TO PROTECTIVE ORDER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 24 MAG 1197

In re: Warrant and Order for Historical
Location Information for the Electronic
Device Electronic Device Associated
with    VIN    JA4T5VA91PZ030200,
USAO Reference No. 2021R00778

**WARRANT AND ORDER**

**24 Mag. _____**

**Warrant and Order
for Historical Location Information
and for Sealing and Non-Disclosure**

TO:    AT&T ("Service Provider")

Federal Bureau of Investigation ("Investigative Agency")

Upon the Application and Agent Affidavit submitted by the Government in this matter:

**I.  Findings**

The Court hereby finds:

1.  The electronic device that is the subject of this Order is associated with VIN JA4T5VA91PZ030200 (the "Target Device"), and is currently serviced by the Service Provider.

2.  Pursuant to 18 U.S.C. § 2703(c)(1)(A) and the applicable provisions of Rule 41 of the Federal Rules of Criminal Procedure, the Government's application sets forth probable cause to believe that the historical location information for the Target Device specified below will reveal evidence, fruits, or instrumentalities of suspected violations of (i) 18 U.S.C. §§ 371 and 666 (theft of federal funds and conspiracy to steal federal funds), (ii) 18 U.S.C. §§ 1343 and 1349 (wire fraud and attempt and conspiracy to commit wire fraud), (iii) 18 U.S.C. § 371 and 52 U.S.C. § 30121 (campaign contributions by foreign nationals and conspiracy to commit the same); and (iv) 18 U.S.C. § 1001 (false statements in a matter within the jurisdiction of the executive branch of the Government of the United States) (collectively, the "Subject Offenses").

SUBJECT TO PROTECTIVE ORDER.

3.   Pursuant to 18 U.S.C. § 2703(d), the Government's application also sets forth specific and articulable facts showing that there are reasonable grounds to believe that the historical location information and toll records for the Target Device specified below are relevant and material to an ongoing criminal investigation.

4.   Pursuant to 18 U.S.C. § 2705(b), there is reason to believe that notification of the existence of this Warrant and Order will result in destruction of or tampering with evidence, or otherwise will seriously jeopardize an ongoing investigation.

NOW, THEREFORE, pursuant to Fed. R. Crim. P. 41, 18 U.S.C. §§ 2701 *et seq.*, and 18 U.S.C. § 3103a, IT IS HEREBY ORDERED:

**II.   Order to Service Provider**

5.   **Service Provider.** This Order shall apply to the Service Provider specified above.

6.   **Historical Location Information and Toll Records**. The Service Provider shall provide to the Investigating Agency all available historical cell site location information reflecting the cell towers and sectors thereof utilized in routing any phone, text, or data communication to or from the Target Device, and the approximate range of the Target Device from the cell towers during the communication (PCM/RTT data), for the period from November 5, 2023 through November 7, 2023, as well as all available toll records (including call detail, SMS detail, or data session detail records) for the communications.

7.   **Non-Disclosure to Subscriber.** The Service Provider, including its affiliates, officers, employees, and agents, shall not disclose the existence of this Warrant and Order, or the underlying investigation, to the subscriber or any other person, for a period of one year from the date of this Warrant and Order, subject to extension upon application to the Court, if necessary.

SDNY_01_000006373
SUBJECT TO PROTECTIVE ORDER.

### III.   Additional Provisions

8.   **Sealing.** This Warrant and Order, and the supporting Application and Agent Affidavit, shall be sealed until otherwise ordered by the Court, except that the Government may without further order of this Court: serve this Warrant and Order on the Service Provider; provide copies of the Warrant and Order or the supporting Application and Agent Affidavit as need be to personnel assisting the Government in the investigation and prosecution of this matter; and disclose these materials as necessary to comply with discovery and disclosure obligations in any prosecutions related to this matter.

Dated: New York, New York

| March 22, 2024 | 12:25 p.m. |
|----------------|------------|
| Date Issued | Time Issued |

_____

UNITED STATES MAGISTRATE JUDGE
Southern District of New York

3

SDNY_01_000006374
SUBJECT TO PROTECTIVE ORDER.

# EXHIBIT A
# [23 MAG 7090]