UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 24 MAG 2930

In re: Warrant and Order For
Prospective and Historical Location
Information and Pen Register
Information for the Cellphone Assigned
Call Number ▮▮▮▮6335, USAO
Reference No. 2021R00778

**APPLICATION**

_____ Mag. _____

**Application for Warrant and Order
for Cellphone Location and Pen Register Information**

The United States of America, by its attorney, Damian Williams, United States Attorney

for the Southern District of New York, Hagan Scotten, Assistant United States Attorney, of

counsel, respectfully requests that the Court issue the accompanying proposed Warrant and Order

for prospective and historical location information and pen register information for a cellphone.

As grounds for this Application the Government relies on the following facts and authorities.

## I.  Introduction

1.  I am an Assistant United States Attorney in the U.S. Attorney's Office for the Southern

District of New York.  This Application is submitted in conjunction with the accompanying

affidavit of a law enforcement agent ("Agent Affidavit"), to be sworn before this Court, and

incorporated by reference herein. I make this Application based on information and belief,

including the Agent Affidavit, my review of other documents in the case, and information received

from investigative personnel.

2.  The Investigating Agency, Target Cellphone, Subscriber, Target Subject(s), Service

Provider, Subject Offenses, and Successor Service Provider referenced in this Application are as

specified in the Agent Affidavit.

2024.07.12

SDNY_01_000008909
SUBJECT TO PROTECTIVE ORDER.

## II. Legal Authority

### A. Prospective Location Information

3. The Government seeks to obtain both precision location information and cell site data for the Target Cellphone on a prospective basis (the "Prospective Location Information") for a period of 45 days from the date of this order – the same period of time for which a warrant for a tracking device may be granted under Rule 41(e)(2)(C). It bears noting, however, that while the Prospective Location Information may permit "tracking" the user of the phone in the colloquial sense, this is not an application for a warrant for a "tracking device" as defined in Fed. R. Crim. P. 41(a)(2)(E) and 18 U.S.C. § 3117(b). Those provisions only apply where an agent is seeking to physically install a tracking device on a given object. Instead, the Prospective Location Information will be obtained by requiring the Service Provider to provide the information.

4. The authority for this application is found in 18 U.S.C. § 2703(c)(1), which authorizes a court of competent jurisdiction to require any electronic communication service provider (which includes a cellular telephone service provider[1]) to disclose any "record or other information pertaining to a subscriber" other than the "contents of communications," when the government obtains, *inter alia*, a warrant under the applicable procedures of Rule 41. *See* 18 U.S.C. § 2703(c)(1)(A). Because data concerning a subscriber's location, such as precision location information and cell site data, constitutes "information pertaining to a subscriber" that does not include the "contents of communications," that data is among the types of information available

---

[1] *See* 18 U.S.C. § 2711(1) (incorporating by cross-reference statutory definitions set forth in 18 U.S.C. § 2510); 18 U.S.C. § 2510(15) (defining "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications").

1

SUBJECT TO PROTECTIVE ORDER.

under § 2703(c)(1)(A).[2]  Further, as specified in 18 U.S.C. § 2711(3), this Court is a court of competent jurisdiction under the Stored Communications Act because it has jurisdiction over the Subject Offenses.

5.  The Government's request for cell site data also implicates the pen register statute, because such data constitutes signaling information used by the Service Provider to route communications to and from the Target Cellphone.  In order to collect such data, a valid pen register order is required.[3]  Accordingly, I hereby certify pursuant to 18 U.S.C. § 3122 that such signaling information is relevant to an ongoing investigation being conducted by the Investigating Agency into suspected violations of the Subject Offenses by the Target Subject(s).

**B.  Historical Location Information**

6.  The Government also seeks historical cell site data for the Target Cellphone for the period from July 1, 2024 to the present (the "Historical Location Information").  Because such data—like "Prospective Location Information"—constitutes information concerning a subscriber, the Court is authorized to order the Service Provider to provide this data pursuant to a warrant

---

[2] *See In re Application*, 460 F. Supp. 2d 448, 459–60 & n. 55 (S.D.N.Y. 2006) (Kaplan, J.) (cellphone location information falls within § 2703(c)(1)); *accord, e.g.*, *United States v. Caraballo*, 963 F. Supp. 2d 341, 361 (D.Vt. 2013); *In re Order*, 632 F. Supp. 2d 202, 207 (E.D.N.Y. 2008); *In re Application*, 405 F. Supp. 2d 435, 444-45 (S.D.N.Y. 2005).  *But see In re Application*, 849 F. Supp. 2d 526, 574 (D.Md. 2011) (rejecting view that cellular location data falls within the scope of the SCA and finding that phone must be treated as "tracking device" for purposes of Rule 41 where used to collect location data); *In re Application*, 2009 WL 159187, at *5-*6 (S.D.N.Y. Jan.13, 2009) (McMahon, J.) (same).

[3] *See* 18 U.S.C. § 3121 (prohibiting use of pen register or trap and trace device without an order under the pen register statute); 3127(3) & (4) (defining pen register and trap and trace device to include devices or processes that record, *inter alia*, signaling information).  Although cell site data constitutes "signaling" information within the meaning of the pen register statute, a separate statute precludes the Government from relying "solely" on the authority provided by the pen register statute to ascertain a subscriber's location.  47 U.S.C. § 1002(a).  Here, the Government seeks to obtain such data pursuant to 18 U.S.C. § 2703(c) as well as the pen register statute, rather than "solely" under the latter statute.  *See In re Application*, 460 F. Supp. 2d at 456-59.

2

SUBJECT TO PROTECTIVE ORDER.

application under 18 U.S.C. § 2703(c), under the applicable procedures of Rule 41.  *See* 18 U.S.C.

§ 2703(c)(1)(A).   I respectfully submit that the same probable cause supporting the Government's

request for a warrant to obtain the Prospective Location Information requested above also supports

the issuance of a warrant under § 2703(c) for the requested Historical Location Information.  In

addition, the Government seeks toll records for the same period as the Historical Location

Information.  Pursuant to 18 U.S.C. § 2703(d), I respectfully submit that the Agent Affidavit offers

specific and articulable facts showing that there are reasonable grounds to believe that the toll

record information sought is relevant and material to an ongoing criminal investigation.

### C.  Pen Register Information

7.   Finally, the Government seeks an order pursuant to 18 U.S.C. §§ 3121-26 authorizing

the use of a pen register on the Target Cellphone for a period of 45 days from the date of this order.

Specifically, the Government seeks an order directing the Service Provider to furnish any

information, facilities, and technical assistance necessary to operate, unobtrusively and with

minimum disruption of service, a pen register and trap and trace device to capture all dialing,

routing, addressing, or signaling information associated with each call transmitted to or from the

Target Cellphone, as specified further in the proposed Warrant and Order (the "Pen Register

Information").[4]

---

[4] The Government is also not seeking authorization to obtain post-cut-through dialed digits
("PCTDD"), or digits that are dialed after a telephone call from the Target Cellphone has been
connected.  Pursuant to the attached Order, if possible, the Service Provider will forward only pre-
cut-through-dialed digits to the Investigating Agency.  However, if the Service Provider's
technical capabilities require it to forward all dialed digits, including PCTDD, to the Investigating
Agency, the Investigating Agency will only decode and forward to the agents assigned to the
investigation the numbers that are dialed before the call is cut through.

SDNY_01_000008912
SUBJECT TO PROTECTIVE ORDER.

8. I hereby certify pursuant to 18 U.S.C. § 3122 that the Pen Register Information is relevant to an ongoing investigation being conducted by the Investigating Agency into suspected violations of the Subject Offenses by the Target Subject(s).

**D.  Sealing and Non-Disclosure Order to Service Provider**

9. When the Government obtains records or information under § 2703(c), it is not required to notify the subscriber or customer. 18 U.S.C. § 2703(c)(3). Additionally, the Government may obtain an order precluding the Service Provider from notifying the subscriber or any other third-party of the warrant or order obtained, for such period as the Court deems appropriate, where there is reason to believe that such notification will result in endangering the life or physical safety of an individual, flight from prosecution, destruction of or tampering with evidence, or intimidation of potential witnesses, or will otherwise seriously jeopardize the investigation. 18 U.S.C. § 2705(b).

10. Further, 18 U.S.C. § 3123(d) provides that an order directing installation of a pen register or trap and trace device shall direct the pertinent service provider "not to disclose the existence of the pen register or trap and trace device or the existence of the investigation to the listed subscriber, or to any other person unless or until otherwise ordered by the Court."

11. Accordingly, as explained further in the Agent Affidavit, in light of the confidential nature of the continuing criminal investigation and the adverse consequences expected in the event of premature notification, the Government respectfully requests that the Court direct the Service Provider not to notify the Subscriber or any other person of the Warrant and Order sought herein for a period of one year, subject to extension upon application to the Court, if necessary.

12. For similar reasons, I respectfully request that the proposed Warrant and Order, this Application, and the accompanying Agent Affidavit, be maintained under seal until the Court orders otherwise, except that the Government be permitted without further order of this Court to

4

SDNY_01_000008913
SUBJECT TO PROTECTIVE ORDER.

serve this Warrant and Order on the Service Provider; provide copies of the Warrant and Order or

the supporting Application and Agent Affidavit as need be to personnel assisting the Government

in the investigation and prosecution of this matter; and disclose these materials as necessary to

comply with discovery and disclosure obligations in any prosecutions related to this matter.

**III.  Prior Requests**

13. Except as may be set forth above, no prior request for the relief requested herein has

been made.

Dated:  New York, New York
        August 12, 2024

/s **Hagen Scotten**  (By Court with Authorization)
Hagan Scotten
Assistant United States Attorney
Tel.: 347-802-5952

SDNY_01_000008914
SUBJECT TO PROTECTIVE ORDER.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**24 MAG 2930**

In re: Warrant and Order For Prospective
and Historical Location Information and
Pen Register Information for the
Cellphone Assigned Call Number ███
███ 6335, USAO Reference No.
2021R00778

**AGENT AFFIDAVIT**

_____ Mag. _____

**Agent Affidavit in Support of Warrant and Order
for Cellphone Location and Pen Register Information**

STATE OF NEW YORK    )
                     ) ss.
COUNTY OF NEW YORK   )

███████ being duly sworn, deposes and states:

**I. Introduction**

1.  I have been a Special Agent with the Federal Bureau of Investigation (the "FBI" or "Investigating Agency") since 2019. I am currently assigned to a public corruption squad of the New York Field Office, where, among other things, I investigate crimes involving illegal campaign contributions, theft of federal funds, and bribery. Through my training and experience, I also have become familiar with some of the ways in which individuals use smart phones and electronic communications, including social media, email, and electronic messages, in furtherance of their crimes, and have participated in the execution of search warrants involving electronic evidence.

2.  **Requested Information.** I respectfully submit this Affidavit pursuant to 18 U.S.C. §§ 2703(c) and (c)(1)(A) and the applicable procedures of Federal Rule of Criminal Procedure 41; 18 U.S.C. §§ 2703(d) & 2705; and 18 U.S.C. §§ 3121-3126, in support of a warrant and order for prospective location information, historical location information, toll records, and pen register

2024.07.12

SDNY_01_000008915
SUBJECT TO PROTECTIVE ORDER.

information, for the Target Cellphone identified below (collectively, the "Requested Information").

3. **Basis for Knowledge.** This Affidavit is based upon my participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals, as well as my training and experience. Because this Affidavit is being submitted for the limited purpose of obtaining the Requested Information, it does not include all the facts that I have learned during the course of this investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. In addition, unless otherwise indicated, statements by others referenced in this Affidavit were not necessarily made to me, but may have been provided to me by someone else to whom I have spoken or whose report I have read (and who in turn may have had either direct or indirect knowledge of the statement). Similarly, unless otherwise indicated, information in this Affidavit resulting from surveillance does not necessarily set forth my personal observations, but may have been provided to me by other law enforcement agents who observed the events, and to whom I have spoken or whose report I have read.

4. **Target Cellphone, Subscriber, Target Subject, and Service Provider.** The Target Cellphone referenced in this Affidavit is the cellphone assigned call number █████ 6335. As further discussed below, the Target Cellphone is subscribed to in the name of Eric L. Adams (the "Subscriber"). The Subscriber is believed to use the Target Cellphone and is a Target Subject of this investigation. T-Mobile is the Service Provider for the Target Cellphone.

5. **Precision Location Capability.** Cellphone service providers have technical capabilities that allow them to collect at least two kinds of information about the locations of the

SDNY_01_000008916
SUBJECT TO PROTECTIVE ORDER

cellphones to which they provide service: (a) precision location information, also known as E-911 Phase II data, GPS data, or latitude-longitude data, and (b) cell site data, also known as "tower/face" or "tower/sector" information.  Precision location information provides relatively precise location information about a cellphone, which a provider can typically collect either via GPS tracking technology built into the phone or by triangulating the device's signal as received by the provider's nearby cell towers.  Cell site data, by contrast, reflects only the cell tower and sector thereof utilized in routing any communication to and from the cellphone, as well as the approximate range of the cellphone from the tower during the communication (sometimes referred to as "per-call measurement" ("PCM") or "round-trip time" ("RTT") data).  Because cell towers are often a half-mile or more apart, even in urban areas, and can be ten or more miles apart in rural areas, cell site data is typically less precise than precision location information.  Based on my training and experience, I know that the Service Provider has the technical ability to collect precision location information from any cellphone on its network, including by initiating a signal on the Service Provider's network to determine the phone's location.  I further know that cell site data is routinely collected by the Service Provider in the course of routing calls placed to or from any cellphone on its network.[1]

6. **Successor Service Provider.** Because it is possible that the Target Subject may change cellphone service providers during the course of this investigation, it is requested that the warrant and investigative order requested apply without need for further order to any Successor Service Provider who may provide service to the Target Cellphone during the time frames at issue herein.

_____

[1] Toll records are sometimes necessary or helpful in order to obtain or interpret historical cell site data and are therefore also requested herein.

2019.07.24

SDNY_01_000008917
SUBJECT TO PROTECTIVE ORDER.

## II. Facts Establishing Probable Cause

7.  Although I understand that probable cause is not necessary to obtain all of the Requested Information, I respectfully submit that probable cause exists to believe that the Requested Information will lead to evidence of the crime(s) of (i) 18 U.S.C. §§ 371 and 666 (theft of federal funds, federal program bribery, and conspiracy to commit both), (ii) 18 U.S.C. §§ 1343 and 1349 (wire fraud and attempt and conspiracy to commit wire fraud), (iii) 18 U.S.C. § 371 and 52 U.S.C. § 30121 (campaign contributions by foreign nationals and conspiracy to commit the same); and (iv) 18 U.S.C. §§ 1512(b) and (k) (witness tampering and conspiracy to commit the same) (collectively, the "Subject Offenses").

8.  Since in or about August 2021, the FBI and the Office of the United States Attorney for the Southern District of New York have been investigating the receipt of so-called "straw" donations[2] by the 2021 and 2025 New York City mayoral campaigns of New York City Mayor Eric Adams (the "Adams Campaigns"), including certain straw donations that were funded by and/or made at the direction of foreign government officials and other foreign persons.

9.  On or about November 5, 2023, the Honorable Gary Stein, United States Magistrate Judge, issued a warrant to seize and search the electronic devices used by Adams.  (*See* Ex. A). As further described in the application for that warrant, evidence established probable cause to believe that Adams used cellphones to commit certain of the Subject Offenses, including by scheduling and attending meetings at which straw donations were planned and executed, and by planning and executing the exchange of benefits—such as free or steeply discounted luxury travel given to Adams and his companions—in return for official action, such as Adams's intervention

---

2    A straw, or "conduit," donation occurs when a donation to a political campaign is made in the name of one donor, but the funds in question in fact belong to a different person.

4

SDNY_01_000008918
SUBJECT TO PROTECTIVE ORDER.

with the New York City Fire Department to allow one of his benefactors to occupy an office building. (*See* Ex. A. at ¶¶ 14-19).

10. On or about November 6 and 7, 2023, I and other FBI agents obtained all the cellphones which we then knew to be used by Adams.

11. On or about July 1, 2024, the Honorable Katharine H. Parker, United States Magistrate Judge, issued a warrant and order for the historical cell site information for the Target Cellphone and a cellphone used by Mohammed Bahi (the "Bahi Cellphone"). (*See* Ex. B). As further described in the application for that warrant and order:



a. Evidence developed in the course of this investigation shows that ▮▮▮▮▮ ▮▮▮▮▮ a businessman, orchestrated straw donations to the 2021 Adams Campaign, at the behest of, among others, Bahi, who currently works in Adams's administration. (Ex. B at ¶¶ 9-11).

b. On or about June 13, 2024, other FBI agents and I executed a search warrant▮ ▮▮▮▮▮ home. After that search, ▮▮▮▮▮ contacted Bahi. Bahi met ▮▮▮▮▮ and the employees through whom ▮▮▮▮▮ made straw donations. (Ex. B. ¶ 11).

c. Bahi told ▮▮▮▮▮ among other things, that he had met with Eric Adams at City Hall before coming to ▮▮▮▮▮ office. Bahi indicated that his meeting with Adams was conducted in private, and that Adams and Bahi each left their cellphones outside of the room where they met. Bahi reported that Adams had been agitated in their meeting, and that Adams expressed displeasure that ▮▮▮▮▮ had been searched. But Bahi reported that Adams said it was ok, because ▮▮▮▮▮ was "tight." Bahi told ▮▮▮▮▮ that he asked what Adams meant by "tight," and Adams responded that ▮▮▮▮▮ was "strong." (Ex. B. ¶ 11).

d. Bahi then told ▮▮▮▮▮ to stay strong, and to continue to claim that he had not reimbursed anyone for donations to the Adams Campaigns. Bahi told ▮▮▮▮▮ that if ▮▮▮▮▮

2019.07.24

5

SDNY_01_000008919
SUBJECT TO PROTECTIVE ORDER

stuck to that story, everything would be fine. Bahi then had ████████ invite his employees, who had been approached by the FBI, into the office, so that Bahi could address them. (Ex. B. ¶ 11).

    e.  When addressing ████████ employees, Bahi told the employees that they should stick to their story, and that because they were reimbursed in cash, the Government would be unable to prove that they had received reimbursements for their donations, so everything would be fine. (Ex. B. ¶ 11).

    f.  The Target Cellphone is used by Eric Adams. (Ex. B. ¶ 12).

12. I have reviewed the location data for the Target Cellphone and the Bahi Cellphone for June 13, 2024. That data is consistent with Adams and Bahi meeting at City Hall at the time Bahi described to ████████

13. In the course of my investigation, I have also become aware of other evidence that Adams uses the Target Cellphone in the commission of the Subject Offenses. Among other things:

    a.  On or about May 16 and May 20, 2024, Adams sent ████████ messages using Signal, an encrypted communications application, asking ████████ to provide 20 $250 dollar donations from separate individuals to Adams's 2025 mayoral campaign.

    b.  On or about May 16, 2024, Adams messaged ████████ "You have always been my strongest go to person."

    c.  On or about May 20, 2024, Adams messaged ████████ that for each $250 donation ████████ provided, "The City will match eight to one." I have learned in the course of this investigation that New York City provides matching funds for certain contributions to campaigns for New York City mayor, such that a $250 donation can entitle a mayoral campaign to eight times that amount in public matching funds. (*See* Ex. A at 38-39).

2019.07.24

6

SUBJECT TO PROTECTIVE ORDER.

d. ▮▮▮▮▮ has stated that he initially understood Adams to have requested 20 bona fide donations from 20 separate donors, each contributing their own funds. In a subsequent conversation with ▮▮▮▮▮ however, Bahi referred to Adams's request as a request for $5,000.[3]

e. Based on my training and experience, including my experience in this investigation, I believe Bahi's statement indicates that Adams had requested ▮▮▮▮▮ conduct straw donations, because, among other reasons, describing the request as seeking $5,000 from ▮▮▮▮▮ is consistent with requesting that ▮▮▮▮▮ provide $5,000 split among 20 straw donors at $250 each, rather than 20 bona fide donors each separately contributing their own money.

f. Although I cannot definitively determine which device Adams used to send the messages to ▮▮▮▮▮ on May 16 and 20, 2024, I know that Signal is most commonly used from a cellphone, and that Adams has previously sent Signal messages to ▮▮▮▮▮

14. On or about July 24, 2024, other FBI agents executed a search warrant at Bahi's residence and seized the Bahi Cellphone. After the agents who conducted the search departed, other FBI agents surreptitiously remained outside Bahi's residence. Those agents have informed me that Bahi quickly left his residence and drove to City Hall. ▮▮▮▮▮ has informed me that Bahi visited ▮▮▮▮▮ later that same day, where Bahi continued to indicate, in substance and in part, that Bahi would not disclose the truth about the straw donations to law enforcement unless Bahi's situation became untenable.

15. Based on the foregoing, I respectfully submit that the historical location information for the Target Cellphone will provide evidence of the Subject Offenses because, among other reasons, it will reveal Adams's location at the time Bahi visited City Hall on July 24, 2024. I

---

▮▮▮▮▮ provided these statements pursuant to a proffer agreement with the Government. (*See* Ex. B at 11 & n.3).

2019.07.24

SDNY_01_000008921
SUBJECT TO PROTECTIVE ORDER.

further submit that the prospective location information for the Target Cellphone will provide evidence of the Subject Offenses because, among other reasons, (1) it will reveal Adams's location at times he is or may be meeting with co-conspirators to carry out the Subject Offenses, and (2) will reveal the location of the Target Cellphone, which, as set forth above, is likely to contain evidence of the Subject Offenses.

**III.  Request for Warrant and Order**

16. Based on the foregoing I respectfully request that the Court require the Service Provider to provide the Requested Information as specified further in the Warrant and Order proposed herewith, including prospective precision location and cell site data for a period of 45 days from the date of this Order, historical cell site data and toll records for the period from July 1, 2024 through the date of this order, and pen register information for a period of 45 days from the date of this Order.

17. **Nondisclosure.** The existence and general nature of this ongoing criminal investigation are publicly known, because of media reporting, and are known to Adams himself because of the execution of prior warrants and Adams's counsel's subsequent interactions with prosecutors. But the exact nature of the investigation and the particular types of evidence the Government is covertly seeking as the investigation continues—including the fact that the Government is seeking the Requested Information—are not publicly known. Nor is it public that the Government is investigating conduct by certain other Target Subjects. The premature public disclosure of this affidavit or the requested Warrant and Order could alert subjects of the investigation about as-yet non-public information about the nature and scope of the Government's investigation, which could cause them to destroy evidence, flee from prosecution, or otherwise seriously jeopardize the investigation.  Accordingly, I respectfully request that the Service Provider be directed not to notify the subscriber or others of the existence of the Warrant and Order for a period of one year,

2019.07.24

SDNY_01_000008922
SUBJECT TO PROTECTIVE ORDER.

and that the Warrant and Order and all supporting papers be maintained under seal until the Court orders otherwise, as specified in the Application submitted in conjunction with this Affidavit.

18. Accordingly, there is reason to believe that, were the Service Provider to notify the subscriber or others of the existence of the warrant, the investigation would be seriously jeopardized. Pursuant to 18 U.S.C. § 2705(b), I therefore respectfully request that the Service Provider be directed not to notify the subscriber or others of the existence of the Warrant and Order for a period of one year, and that the Warrant and Order and all supporting papers be maintained under seal until the Court orders otherwise, as specified in the Application submitted in conjunction with this Affidavit.



/s ███████        (By Court with Authorization)

███████
Federal Bureau of Investigation

Sworn to by reliable electronic means
pursuant to Fed. R. Cr. P. 4.1 & 41(d)
(3) this 12th day of August, 2024

HONORABLE SARAH L. CAVE
United States Magistrate Judge
Southern District of New York

2019.07.24

9

SDNY_01_000008923
SUBJECT TO PROTECTIVE ORDER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**24 MAG 2930**

In re: Warrant and Order For Prospective and Historical Location Information and Pen Register Information for the Cellphone Assigned Call Number █████ 6335, USAO Reference No. 2021R00778

**WARRANT AND ORDER**

_____ Mag. _____

**Warrant and Order
for Cellphone Location Information and Pen Register Information
and for Sealing and Non-Disclosure**

TO:    T-Mobile ("Service Provider"), and any subsequent provider of service to the Target Cellphone specified below

Federal Bureau of Investigation ("Investigating Agency")

Upon the Application and Agent Affidavit submitted by the Government in this matter:

**I.  Findings**

The Court hereby finds:

1.  The Target Cellphone (the "Target Cellphone") that is the subject of this Order is assigned call number █████ 6335, is subscribed to in the name of Eric L. Adams (the "Subscriber"), and is currently serviced by the Service Provider.

2.  Pursuant to 18 U.S.C. § 2703(c)(1)(A) and the applicable provisions of Rule 41 of the Federal Rules of Criminal Procedure, the Government's application sets forth probable cause to believe that the prospective and historical location information for the Target Cellphone will reveal evidence, fruits, or instrumentalities of suspected violations of (i) 18 U.S.C. §§ 371 and 666 (theft of federal funds, federal program bribery, and conspiracy to commit both), (ii) 18 U.S.C. §§ 1343 and 1349 (wire fraud and attempt and conspiracy to commit wire fraud), (iii) 18 U.S.C. § 371 and 52 U.S.C. § 30121 (campaign contributions by foreign nationals and conspiracy to commit the

2024.07.12

SDNY_01_000008924
SUBJECT TO PROTECTIVE ORDER.

same); and (iv) 18 U.S.C. §§ 1512(b) and (k) (witness tampering and conspiracy to commit the same) (collectively, the "Subject Offenses").

3.    Pursuant to 18 U.S.C. § 2703(d), the Government's application also sets forth specific and articulable facts showing that there are reasonable grounds to believe that the toll records for the Target Cellphone are relevant and material to an ongoing criminal investigation.

4.    Pursuant to 18 U.S.C. § 3123(b)(1), the Government has certified that the pen register information for the Target Cellphone is relevant to an ongoing investigation by the Investigating Agency of ERIC ADAMS and others known and unknown in connection with suspected violations of the Subject Offenses.

5.    Pursuant to 18 U.S.C. § 2705(b), there is reason to believe that notification of the existence of this Warrant and Order will result in destruction of or tampering with evidence or intimidation of potential witnesses, or otherwise will seriously jeopardize an ongoing investigation.

NOW, THEREFORE, pursuant to Fed. R. Crim. P. 41, 18 U.S.C. §§ 3121 *et seq.*, 18 U.S.C. §§ 2701 *et seq.*, and 18 U.S.C. § 3103a, IT IS HEREBY ORDERED:

## II.  Order to Service Provider

6.    **Service Provider.** This Order shall apply to the Service Provider specified above, and to any subsequent provider of service to the Target Cellphone without need for further Order of this Court.

7.    **Prospective Location Information**. The Service Provider shall provide to the Investigating Agency on a prospective basis, for a period of 45 days from the date of this Order, information concerning the location of the Target Cellphone ("Prospective Location Information"), including all available:

2

2019.07.24

SDNY_01_000008925
SUBJECT TO PROTECTIVE ORDER.

a.  precision location information, including GPS data, E-911 Phase II data, and latitude-longitude data; and

b.  cell site data, including any data reflecting (a) the cell towers and sectors thereof utilized in routing any phone, text, or data communication to or from the Target Cellphone, and (b) the approximate range of the target phone from the cell towers during the communication (including per-call measurement ("PCM") or round-trip time ("RTT") data);

8.  **Historical Location Information and Toll Records**. The Service Provider shall provide to the Investigating Agency all available historical cell site location information reflecting the cell towers and sectors thereof utilized in routing any phone, text, or data communication to or from the Target Cellphone, and the approximate range of the target phone from the cell towers during the communication (PCM/RTT data), for the period from July 1, 2024 through the date of this Order, as well as all available toll records (including call detail, SMS detail, or data session detail records) for the communications.

9.  **Pen register with caller identification and/or trap and trace device.**  The Service Provider shall provide to the Investigating Agency, for a period of 45 days from the date of this order, all dialing, routing, addressing, or signaling information associated with each voice, text, or data communication transmitted to or from the Target Cellphone, including but not limited to:

a.  any unique identifiers associated with the phone, including ESN, MEIN, MSISDN, IMSI, IMEI, SIM, MIN, or MAC address;

b.  source and destination telephone numbers and/or Internet protocol ("IP") addresses;[1]

---

[1] The Service Provider is not required to provide post-cut-through dialed digits ("PCTDD"), or digits that are dialed after a telephone call from the Target Cellphone has been connected.  If possible, the Service Provider will forward only pre-cut-through-dialed digits to the Investigating

2019.07.24

SDNY_01_000008926
SUBJECT TO PROTECTIVE ORDER.

    c.   date, time, and duration of the communication; and

    d.   cell-site information as specified above.

10.  **Technical Assistance.** The Service Provider shall furnish the Investigating Agency all information, facilities, and technical assistance necessary to accomplish the disclosure of all of the foregoing information relating to the Target Cellphone unobtrusively and with the minimum interference to the service presently provided to the Subscriber.

11. **Non-Disclosure to Subscriber.** The Service Provider, including its affiliates, officers, employees, and agents, shall not disclose the existence of this Warrant and Order, or the underlying investigation, to the Subscriber or any other person, for a period of one year from the date of this Warrant and Order, subject to extension upon application to the Court, if necessary.

**III.  Additional Provisions**

12. **Compensation for Costs.** The Investigating Agency shall compensate the Service Provider for reasonable expenses incurred in complying with the Warrant and this Order.

13. **Sealing.** This Warrant and Order, and the supporting Application and Agent Affidavit, shall be sealed until otherwise ordered by the Court, except that the Government may without further order of this Court: serve this Warrant and Order on the Service Provider; provide copies of the Warrant and Order or the supporting Application and Agent Affidavit as need be to personnel assisting the Government in the investigation and prosecution of this matter; and

---

Agency.  However, if the Service Provider's technical capabilities require it to forward all dialed digits, including PCTDD, to the Investigating Agency, the Investigating Agency will only decode and forward to the agents assigned to the investigation, the numbers that are dialed before the call is cut through.

2019.07.24

SDNY_01_000008927
SUBJECT TO PROTECTIVE ORDER.

disclose these materials as necessary to comply with discovery and disclosure obligations in any prosecutions related to this matter.

Dated: New York, New York

<u>8/12/2024</u>            <u>11:37am</u>
Date Issued                    Time Issued

_____
UNITED STATES MAGISTRATE JUDGE
Southern District of New York

2019.07.24

5

SDNY_01_000008928
SUBJECT TO PROTECTIVE ORDER.

EXHIBIT A
[23 MAG 7090]

# EXHIBIT B
# [24 MAG 2450]