# UNITED STATES DISTRICT COURT

for the

_____ District of _____

| | |
|---|---|
| In the Matter of the ~~Search of~~ <br> *(Briefly describe the property to be searched <br> or identify the person by name and address)* | ) <br> ) <br> )    Case No. <br> ) <br> ) <br> ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

❒ evidence of a crime;

❒ contraband, fruits of crime, or other items illegally possessed;

❒ property designed for use, intended for use, or used in committing a crime;

❒ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| | |

The application is based on these facts:

❒ Continued on the attached sheet.

❒ Delayed notice of \_\_\_\_\_ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s authorized electronic signature

_____
*Applicant's signature*

██████████
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____

City and state: _____

_____
*Judge's signature*

_____
*Printed name and title*

SDNY_01_000009147 <br> SUBJECT TO PROTECTIVE ORDER.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE USE OF A CELL-SITE SIMULATOR TO IDENTIFY THE CELLULAR DEVICES CARRIED BY ERIC ADAMS, USAO REFERENCE NO. 2021R00778 | **24 MAG 3318**<br><br>**SEALED APPLICATION** |

Derek Wikstrom hereby affirms, under penalty of perjury, as follows:

I am an Assistant United States Attorney in the office of Damian Williams, United States Attorney for the Southern District of New York, and I am familiar with this matter.   I hereby certify, pursuant to 18 U.S.C. § 3123(a)(1), that the information likely to be obtained from the Requested Pen-Trap is relevant to the Investigating Agency's ongoing criminal investigation of the Target Subject.

The foregoing is affirmed under the penalties of perjury, pursuant to 28 U.S.C. § 1746.

Dated: New York, New York
       September 12, 2024

  /s/ Derek Wikstrom
Derek Wikstrom
Assistant United States Attorney
Southern District of New York
Telephone: 212-637-1085

SDNY_01_000009148
SUBJECT TO PROTECTIVE ORDER.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE USE OF A CELL-SITE SIMULATOR TO IDENTIFY THE CELLULAR DEVICES CARRIED BY ERIC ADAMS, USAO REFERENCE NO. 2021R00778 | Case No. **24 MAG 3318** <br><br> **Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, ▮▮▮▮▮ being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I have been a Special Agent with the Federal Bureau of Investigation (the "FBI") since 2019. I am currently assigned to a public corruption squad of the New York Field Office, where, among other things, I investigate crimes involving illegal campaign contributions, theft of federal funds, and bribery. Through my training and experience, I also have become familiar with some of the ways in which individuals use smart phones and electronic communications, including social media, email, and electronic messages, in furtherance of their crimes, and have participated in the execution of search warrants involving electronic evidence.

2.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique further described in Attachment B, in order to identify the cellular device or devices carried by New York City Mayor Eric Adams (the "**TARGET CELLULAR DEVICES**"), described in Attachment A.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended

SUBJECT TO PROTECTIVE ORDER.

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     This Court has authority to issue the requested warrant under Federal Rule of Criminal Procedure Rule 41(b)(1) & (2) because the **TARGET CELLULAR DEVICES** are currently believed to be located inside this district because, as described in greater detail below, the FBI currently has a warrant authorizing the disclosure of cell-site location information for a cellphone known to be subscribed to and used by Eric Adams. Data the FBI has received pursuant to that warrant confirms that Adams works in lower Manhattan most days, and that Adams sleeps at Gracie Mansion on the Upper East Side of Manhattan on many nights. I will confirm that the most recent cell-site data received pursuant to that warrant is consistent with one of Adams's cellphones being located in the Southern District of New York before I swear to the contents of this Affidavit. Pursuant to Rule 41(b)(2), law enforcement may use the technique described in Attachment B outside the district provided the device is within the district when the warrant is issued.

5.     Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41. *See* 18 U.S.C. §§ 3121-3127.  This warrant therefore includes all the information required to be included in a pen register order.  *See* 18 U.S.C. § 3123(b)(1).

## PROBABLE CAUSE

6.     I respectfully submit that probable cause exists to believe that the Requested Information will lead to evidence of the crimes of (i) 18 U.S.C. §§ 371 and 666 (theft of federal funds, federal program bribery, and conspiracy to commit both), (ii) 18 U.S.C. §§ 1343 and 1349

2

SUBJECT TO PROTECTIVE ORDER.

(wire fraud and attempt and conspiracy to commit wire fraud), and (iii) 18 U.S.C. § 371 and 52

U.S.C. § 30121 (campaign contributions by foreign nationals and conspiracy to commit the

same) (collectively, the "Subject Offenses").

### *Background on the Investigation*

7.      Since in or about August 2021, the FBI and the Office of the United States

Attorney for the Southern District of New York have been investigating the receipt of so-called

"straw" donations[1] by the 2021 and 2025 New York City mayoral campaigns of New York City

Mayor Eric Adams (the "Adams Campaigns"), including certain straw donations that were

funded by and/or made at the direction of foreign government officials and other foreign persons.

8.      On or about November 5, 2023, the Honorable Gary Stein, United States

Magistrate Judge for the Southern District of New York, issued a warrant authorizing the search

and seizure of electronic devices used by Adams (the "Adams Devices Warrant"). The Adams

Devices Warrant, and the Government's application submitted in support of the issuance of that

warrant, are attached as Exhibit A and incorporated by reference herein.

9.      On or about August 12, 2024, the Honorable Sarah L. Cave, United States

Magistrate Judge for the Southern District of New York, issued a warrant authorizing the

disclosure of prospective and historical location information for a cellphone with a call number

ending -6335, that is used by and subscribed in the name of Eric Adams (the "Adams Location

---

[1] A straw, or "conduit," donation occurs when a donation to a political campaign is made in the name of one donor, but the funds in question in fact belong to a different person.

SDNY_01_000009151
SUBJECT TO PROTECTIVE ORDER.

Warrant"). The Adams Location Warrant, and the Government's application submitted in support of the issuance of the warrant, are attached as Exhibit B and incorporated by reference herein.[2]

  10.  As described in greater detail in Exhibits A and B, evidence gathered in this investigation has established probable cause to believe that Adams has used multiple cellphones to commit the Subject Offenses, including by scheduling and attending meetings at which straw donations were planned and executed, and by planning and executing the exchange of benefits, such as free or steeply discounted luxury travel given to Adams and his companions, in return for official action, such as Adams's intervention with the New York City Fire Department to allow one of his benefactors to occupy an office building. (*See* Ex. A ¶¶ 14-19).

---

[2] The Government's application for the Adams Location Warrant attached the Adams Devices Warrant and its application as Exhibit A. Because that warrant and application are also Exhibit A to this Affidavit, they are intentionally omitted from Exhibit B.

One of the exhibits to the affidavit submitted as part of Exhibit B was a warrant for a premises that is the home of ███████████ That warrant included money laundering as a Subject Offense, and described, in paragraphs 31 and 32, facts relating to the probable cause for that Subject Offense. ███████ is participating in proffers pursuant to a proffer agreement, in the hopes of obtaining leniency in connection with the Government's investigation into the Subject Offenses, and during one of his proffers, in substance and in part, he explained the transactions described in the affidavit and denied that they constituted money laundering.

In addition, certain earlier affidavits in this investigation have, when discussing straw certain straw contributions made by employees of ████████████ mistakenly described those contributions as having been refunded on the same day they were made. Records from the New York City Campaign Finance Board show that those contributions were made on September 27, 2021, flagged as potential straw contributions in an October 8, 2021 CFB report, and refunded on October 14, 15, and 19, 2021.

4

SUBJECT TO PROTECTIVE ORDER.

*Adams's Use of Multiple Cellphones*

11.     Based on my involvement in this investigation, including my review of electronic communications obtained pursuant to more than 20 search warrants for electronic devices and accounts, my review of records received from cellphone providers, and my interviews of numerous witnesses who have interacted with Adams, I know of at least six different cellphone numbers that Adams has used during the time period relevant to this investigation. I also know that within the last 12 months, Adams stopped using his longtime personal cellphone number, and acquired a new cellphone number (which is the -6335 number that was the subject of the Adams Location Warrant).

12.     On or about November 6, 2023, I participated in the execution of the Adams Devices Warrant, during which the FBI seized two cellphones and a tablet (as well as a laptop that was subsequently returned without being searched) from Adams. On or about November 7, 2023, Adams's counsel turned over to the FBI, in response to a subpoena, two additional cellphones used by Adams at different times.

13.     On or about September 10, 2024, the *New York Post* released an article entitled "Paranoid police officials meeting in parking lots as fed raids leave NYPD, City Hall in shock: sources,"[3] which reports the following information: "The mayor himself — who's had several different phone numbers and is known for using the encrypted messaging app Signal — has kept up his practice, with one City Council source saying the last number they had for Hizzoner was 'two phones ago.'"

_____

[3] Available at https://nypost.com/2024/09/10/us-news/federal-raids-have-paralyzed-nypd-city-hall-and-scared-the-police-brass-into-talking-in-parking-lots-sources/.

5

SDNY_01_000009153
SUBJECT TO PROTECTIVE ORDER.

14.     Although, as just explained, Adams is known to sometimes carry at least three different electronic devices at once, I am currently aware of only one cellphone number for Adams that I know to be currently active.

15.     Based on my involvement in this investigation and my review of the contents of devices seized pursuant to previous search warrants, I know that Adams and his co-conspirators have used cellphones to communicate about the Subject Offenses. Thus, as described in greater detail in Exhibits A and B, numerous messages constituting evidence of the Subject Offenses sent by Adams, his agents, and his co-conspirators have been recovered from cellphones seized during the course of this investigation. Moreover, as explained in Exhibit B, I am aware that Adams uses Signal to communicate and sometimes encourages others to do so, and that people who work with Adams also use Signal to communicate with him and others. Based on my experience and participation in this and other investigations, I know that Signal is an encrypted messaging application, which allows users to set the application to automatically delete messages at certain intervals. In the course of this investigation I have learned that on at least some occasions, law enforcement has been able to retrieve Signal messages from seized electronic devices.

16.     I also know, based on my involvement in this investigation, that Adams has also taken other steps to conceal his electronic messages. For example, as described in Exhibit A, Adams confirmed in a text message to a co-conspirator that he "always" deleted messages she sent him. (Ex. A ¶ 15.c.)

17.     From my involvement in this investigation, I know that since the FBI seized multiple electronic devices from Adams in November 2023, Adams has continued to use electronic devices, and to use Signal, to engage in communications which constitute evidence of

SDNY_01_000009154
SUBJECT TO PROTECTIVE ORDER.

the Subject Offenses. For instance, as described in Exhibit B, in May 2024 Adams used Signal to exchange messages with ████████████ had previously orchestrated straw donations to Adams's campaigns, at the behest of Mohamed Bahi, a staffer of Adams's. (*See* Ex. B ¶ 11.a). In May 2024, Adams exchanged Signal messages with ████████ requesting that ████████ identify 20 people to donate $250 each to Adams's 2025 mayoral campaign. (Ex. B ¶¶ 13.a-f).

18.     As also described in greater detail in Exhibit B, after a search warrant was executed at ████████ home, Bahi went to see ████████ During the meeting, in substance and in part, Bahi told ████████ that he had met with Adams to discuss ████████ and then encouraged ████████ to lie about his straw donations to Adams's campaigns. (Ex. B. ¶¶ 11.b-e). And location data for cellphones used by Adams and Bahi obtained pursuant to a search warrant is consistent with Adams and Bahi meeting at City Hall at the time Bahi described to ████████ (Ex. B ¶ 12).

19.     On or about July 24, 2024, at approximately 6 a.m., FBI agents executed a search warrant at Bahi's home, and seized Bahi's cellphone. Based on my review of information from the forensic extraction of that cellphone, I have learned, among other things, that the Signal application was not on the cellphone at the time it was forensically searched, but that according to activity logs for the cellphone, it had been used to access the Signal application as recently as approximately 12:04 a.m. on July 24, 2024, *i.e.* the day of the search. In other words, Bahi deleted Signal from the cellphone FBI agents seized from him sometime between approximately midnight and approximately 6 a.m. on July 24, 2024.[4]

---

[4] In a voluntary interview on or about July 24, 2024, Bahi—who was traveling to Egypt that evening—admitted that he had recently deleted Signal, but claimed that he has a practice of deleting applications that were suspicious before traveling internationally, in case he was

7

SUBJECT TO PROTECTIVE ORDER.

20.     Based on my training and experience, I know that individuals involved in criminal activity commonly use multiple cellphones, in order to reduce the chances that law enforcement's discovery or seizure of one phone will reveal or disrupt their illegal activities.

21.     Based on the foregoing, I respectfully submit that there is probable cause to believe that (1) Adams committed the Subject Offenses, (2) he frequently uses multiple cellphones and changes cellphone numbers, (3) he takes other steps to conceal his electronic communications from scrutiny, (4) he is likely to be carrying the **TARGET CELLULAR DEVICES**, not all of which have been identified to date by law enforcement, and (5) the identification of the **TARGET CELLULAR DEVICES** will both constitute evidence of Adams's use of multiple cellphones and will facilitate potential further investigative steps to gather evidence from and about the **TARGET CELLULAR DEVICES**, including potentially seeking a search warrant authorizing law enforcement to seize and search the **TARGET CELLULAR DEVICES**.

## <u>MANNER OF EXECUTION</u>

22.     In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications.  When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication.  These signals include a cellular device's unique identifiers.

---

questioned during his travel. When agents asked Bahi directly whether he had deleted Signal that day, Bahi stated that he would not disclose when he deleted Signal.

8

SUBJECT TO PROTECTIVE ORDER.

23.    To facilitate execution of this warrant, law enforcement may use an investigative device that sends signals to cellular devices, including the **TARGET CELLULAR DEVICES**, and in reply, the cellular devices will broadcast signals that include their unique identifiers.  The investigative device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell to communicate with others.  Law enforcement will use this investigative device when they have reason to believe that Eric Adams is present.  Law enforcement will collect the identifiers emitted by cellular devices in the range of the **TARGET CELLULAR DEVICES** when the subject is in multiple locations and/or multiple times at a common location and use this information to identify the **TARGET CELLULAR DEVICES**, as only the **TARGET CELLULAR DEVICES**' unique identifiers will be present in all or nearly all locations.[5]  Once investigators ascertain the identities of the **TARGET CELLULAR DEVICES**, they will cease using the investigative technique.  Because there is probable cause to determine the identities of the **TARGET CELLULAR DEVICES**, there is probable cause to use the investigative technique described by the warrant to determine the identities of the **TARGET CELLULAR DEVICES**.

24.    The investigative device may interrupt cellular service of cellular devices within its range.  Any service disruption will be brief and temporary, and all operations will attempt to

---

[5] I know from my participation in this investigation that Adams travels with a protective detail, and therefore that he is frequently in close proximity to a relatively small group of people who work in shifts to protect him. As a result, it will be necessary to use the technique described in Attachment B repeatedly, in various locations and at various times, during the 30-day period in which this warrant seeks authorization to do so, to identify the **TARGET ELECTRONIC DEVICES**, meaning the devices consistently carried by Adams himself, and to eliminate as candidates devices carried by members of Adams's protective detail or staff.

9

SUBJECT TO PROTECTIVE ORDER.

limit the interference with such cellular devices.  Once law enforcement has identified the

**TARGET CELLULAR DEVICES**, it will delete all information concerning non-targeted

cellular devices.  Absent further order of the court, law enforcement will make no investigative

use of information concerning non-targeted cellular devices other than distinguishing the

**TARGET CELLULAR DEVICES** from all other devices.

## AUTHORIZATION REQUEST

25.     Based on the foregoing, I request that the Court issue the proposed search

warrant, pursuant to Federal Rule of Criminal Procedure 41.  The proposed warrant also will

function as a pen register order under 18 U.S.C. § 3123.

26.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal

Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until

30 days from the end of the period of authorized surveillance.  This delay is justified because

there is reasonable cause to believe that providing immediate notification of the warrant may

have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the person

carrying the **TARGET CELLULAR DEVICES** would alert Adams to the fact that law

enforcement is taking this investigative step, and could therefore seriously jeopardize the

ongoing investigation, as such a disclosure would give Adams the ability to stop using, or delete

data from, one or more of the **TARGET CELLULAR DEVICES**, or otherwise to change

patterns of behavior. *See* 18 U.S.C. § 3103a(b)(1).  There is reasonable necessity for the use of

the technique described above, for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

27.     I further request that the Court authorize execution of the warrant at any time of

day or night, owing to the potential need to identify the **TARGET CELLULAR DEVICES**

outside of daytime hours.

10

28.    I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that has been the subject of public news reporting, but the full scope and nature of which are not known to Adams or to other subjects of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

29.    A search warrant may not be legally necessary to compel the investigative technique described herein.  Nevertheless, I hereby submit this warrant application out of an abundance of caution.

Respectfully submitted,

/s authorized electronic signature

_____

Special Agent
Federal Bureau of Investigation

Sworn to me through the transmission of this
Affidavit by reliable electronic means, pursuant to
Federal Rules of Criminal Procedure 41(d)(3) and 4.1,
on September 13, 2024

_____
HON. SARAH NETBURN
UNITED STATES MAGISTRATE JUDGE

11

SUBJECT TO PROTECTIVE ORDER.

## **ATTACHMENT A**

This warrant authorizes the use of the electronic investigative technique described in Attachment B when the officers to whom it is directed have reason to believe that New York City Mayor Eric Adams is present.

SDNY_01_000009160
SUBJECT TO PROTECTIVE ORDER.

## ATTACHMENT B

The "**TARGET CELLULAR DEVICES**" are the cellular device or devices carried by Eric Adams.  Pursuant to an investigation of Adams for violations of (i) 18 U.S.C. §§ 371 and 666 (theft of federal funds, federal program bribery, and conspiracy to commit both), (ii) 18 U.S.C. §§ 1343 and 1349 (wire fraud and attempt and conspiracy to commit wire fraud), and (iii) 18 U.S.C. § 371 and 52 U.S.C. § 30121 (campaign contributions by foreign nationals and conspiracy to commit the same) (collectively, the "Subject Offenses"), this warrant authorizes the officers to whom it is directed to identify the **TARGET CELLULAR DEVICES** by collecting radio signals, including the unique identifiers, emitted by the **TARGET CELLULAR DEVICES** and other cellular devices in its range for a period of thirty days, during all times of day and night.

Absent further order of a court, law enforcement will make no affirmative investigative use of any identifiers collected from cellular devices other than the **TARGET CELLULAR DEVICES**, except to identify the **TARGET CELLULAR DEVICES** and distinguish them from the other cellular devices.  Once investigators ascertain the identity of all of the **TARGET CELLULAR DEVICES**, they will end the collection, and any information collected concerning cellular devices other than the **TARGET CELLULAR DEVICES** will be deleted.

This warrant does not authorize the interception of any telephone calls, text messages, or other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above.  *See* 18 U.S.C. § 3103a(b)(2).

2

SDNY_01_000009161
SUBJECT TO PROTECTIVE ORDER.

# Exhibit A

## [23 MAG 7090]

SDNY_01_000009166
SUBJECT TO PROTECTIVE ORDER.

# Exhibit B

# [24 MAG 2930]

SDNY_01_000009317
SUBJECT TO PROTECTIVE ORDER.

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

_____ District of _____

| | |
|---|---|
| In the Matter of the ~~Search of~~ *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) ) ) ) |

Case No. _____

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**YOU ARE COMMANDED** to execute this warrant on or before _____ *(not to exceed 14 days)*
❑ in the daytime 6:00 a.m. to 10:00 p.m.    ❑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ .
*(United States Magistrate Judge)*

❑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❑ for _____ days *(not to exceed 30)*    ❑ until, the facts justifying, the later specific date of _____ .

Date and time issued:     9/13/2024 at 9:45 a.m.          _____
                                                              *Judge's signature*

City and state: _____          _____
                                                              *Printed name and title*

SDNY_01_000009162
SUBJECT TO PROTECTIVE ORDER.

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>24 MAG 3318 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

SDNY_01_000009163
SUBJECT TO PROTECTIVE ORDER.

Print    Save As...    Reset

## **ATTACHMENT A**

This warrant authorizes the use of the electronic investigative technique described in Attachment B when the officers to whom it is directed have reason to believe that New York City Mayor Eric Adams is present.

SDNY_01_000009164
SUBJECT TO PROTECTIVE ORDER.

## ATTACHMENT B

The "**TARGET CELLULAR DEVICES**" are the cellular device or devices carried by Eric Adams.  Pursuant to an investigation of Adams for violations of (i) 18 U.S.C. §§ 371 and 666 (theft of federal funds, federal program bribery, and conspiracy to commit both), (ii) 18 U.S.C. §§ 1343 and 1349 (wire fraud and attempt and conspiracy to commit wire fraud), and (iii) 18 U.S.C. § 371 and 52 U.S.C. § 30121 (campaign contributions by foreign nationals and conspiracy to commit the same) (collectively, the "Subject Offenses"), this warrant authorizes the officers to whom it is directed to identify the **TARGET CELLULAR DEVICES** by collecting radio signals, including the unique identifiers, emitted by the **TARGET CELLULAR DEVICES** and other cellular devices in its range for a period of thirty days, during all times of day and night.

Absent further order of a court, law enforcement will make no affirmative investigative use of any identifiers collected from cellular devices other than the **TARGET CELLULAR DEVICES**, except to identify the **TARGET CELLULAR DEVICES** and distinguish them from the other cellular devices.  Once investigators ascertain the identity of all of the **TARGET CELLULAR DEVICES**, they will end the collection, and any information collected concerning cellular devices other than the **TARGET CELLULAR DEVICES** will be deleted.

This warrant does not authorize the interception of any telephone calls, text messages, or other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above.  *See* 18 U.S.C. § 3103a(b)(2).

2

SDNY_01_000009165
SUBJECT TO PROTECTIVE ORDER.