UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**24 MAG 3544**

In re: Warrant and Order For
Prospective and Historical Location
Information and Pen Register
Information for the Cellphone Assigned
Call Number ████8792, USAO
Reference No. 2021R00778

**APPLICATION**

_____ **Mag.** _____

**Application for Warrant and Order
for Cellphone Location and Pen Register Information**

The United States of America, by its attorney, Damian Williams, United States Attorney

for the Southern District of New York, Celia V. Cohen, Assistant United States Attorney, of

counsel, respectfully requests that the Court issue the accompanying proposed Warrant and Order

for prospective and historical location information and pen register information for a cellphone.

As grounds for this Application the Government relies on the following facts and authorities.

**I. Introduction**

1. I am an Assistant United States Attorney in the U.S. Attorney's Office for the Southern

District of New York. This Application is submitted in conjunction with the accompanying

affidavit of a law enforcement agent ("Agent Affidavit"), to be sworn before this Court, and

incorporated by reference herein. I make this Application based on information and belief,

including the Agent Affidavit, my review of other documents in the case, and information received

from investigative personnel.

2. The Investigating Agency, Target Cellphone, Subscriber, Target Subject, Subject

Offenses, and Service Provider referenced in this Application are as specified in the Agent

Affidavit.

2019.07.24

SUBJECT TO PROTECTIVE ORDER

## II. Legal Authority

### A. Prospective Location Information

3.    The Government seeks to obtain both precision location information and cell site data for the Target Cellphone on a prospective basis (the "Prospective Location Information") for a period of 45 days from the date of this order – the same period of time for which a warrant for a tracking device may be granted under Rule 41(e)(2)(C).  It bears noting, however, that while the Prospective Location Information may permit "tracking" the user of the phone in the colloquial sense, this is not an application for a warrant for a "tracking device" as defined in Fed. R. Crim. P. 41(a)(2)(E) and 18 U.S.C. § 3117(b).  Those provisions only apply where an agent is seeking to physically install a tracking device on a given object.   Instead, the Prospective Location Information will be obtained by requiring the Service Provider to provide the information.

4.    The authority for this application is found in 18 U.S.C. § 2703(c)(1), which authorizes a court of competent jurisdiction to require any electronic communication service provider (which includes a cellular telephone service provider[1]) to disclose any "record or other information pertaining to a subscriber" other than the "contents of communications," when the government obtains, *inter alia*, a warrant under the applicable procedures of Rule 41.  *See* 18 U.S.C. § 2703(c)(1)(A).  Because data concerning a subscriber's location, such as precision location information and cell site data, constitutes "information pertaining to a subscriber" that does not include the "contents of communications," that data is among the types of information available

---

[1] *See* 18 U.S.C. § 2711(1) (incorporating by cross-reference statutory definitions set forth in 18 U.S.C. § 2510); 18 U.S.C. § 2510(15) (defining "electronic communication service" as "any service which provides to users thereof the ability to send or receive wire or electronic communications").

SDNY_09_0000003892
SUBJECT TO PROTECTIVE ORDER

under § 2703(c)(1)(A).[2]  Further, as specified in 18 U.S.C. § 2711(3), this Court is a court of competent jurisdiction under the Stored Communications Act because it has jurisdiction over the Subject Offenses.

5.  The Government's request for cell site data also implicates the pen register statute, because such data constitutes signaling information used by the Service Provider to route communications to and from the Target Cellphone.  In order to collect such data, a valid pen register order is required.[3]  Accordingly, I hereby certify pursuant to 18 U.S.C. § 3122 that such signaling information is relevant to an ongoing investigation being conducted by the Investigating Agency into Mohamed Bahi, who is "a person to be arrested" within the meaning of Rule 41.

**B.  Historical Location Information**

6.  The Government also seeks historical cell site data for the Target Cellphone for the period from August 27, 2024 to the present (the "Historical Location Information").  Because such data—like "Prospective Location Information"—constitutes information concerning a subscriber, the Court is authorized to order the Service Provider to provide this data pursuant to a warrant

---

[2] *See In re Application*, 460 F. Supp. 2d 448, 459–60 & n. 55 (S.D.N.Y. 2006) (Kaplan, J.) (cellphone location information falls within § 2703(c)(1)); *accord, e.g.*, *United States v. Caraballo*, 963 F. Supp. 2d 341, 361 (D.Vt. 2013); *In re Order*, 632 F. Supp. 2d 202, 207 (E.D.N.Y. 2008); *In re Application*, 405 F. Supp. 2d 435, 444-45 (S.D.N.Y. 2005).  *But see In re Application*, 849 F. Supp. 2d 526, 574 (D.Md. 2011) (rejecting view that cellular location data falls within the scope of the SCA and finding that phone must be treated as "tracking device" for purposes of Rule 41 where used to collect location data); *In re Application*, 2009 WL 159187, at *5-*6 (S.D.N.Y. Jan.13, 2009) (McMahon, J.) (same).

[3] *See* 18 U.S.C. § 3121 (prohibiting use of pen register or trap and trace device without an order under the pen register statute); 3127(3) & (4) (defining pen register and trap and trace device to include devices or processes that record, *inter alia*, signaling information).  Although cell site data constitutes "signaling" information within the meaning of the pen register statute, a separate statute precludes the Government from relying "solely" on the authority provided by the pen register statute to ascertain a subscriber's location.  47 U.S.C. § 1002(a).  Here, the Government seeks to obtain such data pursuant to 18 U.S.C. § 2703(c) as well as the pen register statute, rather than "solely" under the latter statute.  *See In re Application*, 460 F. Supp. 2d at 456-59.

2019.07.24

SDNY_09_0000003893
SUBJECT TO PROTECTIVE ORDER

application under 18 U.S.C. § 2703(c), under the applicable procedures of Rule 41.  *See* 18 U.S.C.

§ 2703(c)(1)(A).   I respectfully submit that the same probable cause supporting the Government's

request for a warrant to obtain the Prospective Location Information requested above also supports

the issuance of a warrant under § 2703(c) for the requested Historical Location Information.  In

addition, the Government seeks toll records for the same period as the Historical Location

Information.  Pursuant to 18 U.S.C. § 2703(d), I respectfully submit that the Agent Affidavit offers

specific and articulable facts showing that there are reasonable grounds to believe that the toll

record information sought is relevant and material to an ongoing criminal investigation.

### C.  Pen Register Information

7.    Finally, the Government seeks an order pursuant to 18 U.S.C. §§ 3121-26 authorizing

the use of a pen register on the Target Cellphone for a period of 45 days from the date of this order.

Specifically, the Government seeks an order directing the Service Provider to furnish any

information, facilities, and technical assistance necessary to operate, unobtrusively and with

minimum disruption of service, a pen register and trap and trace device to capture all dialing,

routing, addressing, or signaling information associated with each call transmitted to or from the

Target Cellphone, as specified further in the proposed Warrant and Order (the "Pen Register

Information").[4]

---

[4] The Government is also not seeking authorization to obtain post-cut-through dialed digits ("PCTDD"), or digits that are dialed after a telephone call from the Target Cellphones has been connected.  Pursuant to the attached Order, if possible, the Service Provider will forward only pre-cut-through-dialed digits to the Investigating Agency.  However, if the Service Provider's technical capabilities require it to forward all dialed digits, including PCTDD, to the Investigating Agency, the Investigating Agency will only decode and forward to the agents assigned to the investigation the numbers that are dialed before the call is cut through.

2019.07.24

SDNY_09_0000003894
SUBJECT TO PROTECTIVE ORDER

8.  I hereby certify pursuant to 18 U.S.C. § 3122 that the Pen Register Information is relevant to an ongoing investigation being conducted by the Investigating Agency into suspected violations of the Subject Offenses by the Target Subject.

### D.  Sealing and Non-Disclosure Order to Service Provider

9.  When the Government obtains records or information under § 2703(c), it is not required to notify the subscriber or customer. 18 U.S.C. § 2703(c)(3).  Additionally, the Government may obtain an order precluding the Service Provider from notifying the subscriber or any other third-party of the warrant or order obtained, for such period as the Court deems appropriate, where there is reason to believe that such notification will result in endangering the life or physical safety of an individual, flight from prosecution, destruction of or tampering with evidence, or intimidation of potential witnesses, or will otherwise seriously jeopardize the investigation.   18 U.S.C. § 2705(b).

10. Further, 18 U.S.C. § 3123(d) provides that an order directing installation of a pen register or trap and trace device shall direct the pertinent service provider "not to disclose the existence of the pen register or trap and trace device or the existence of the investigation to the listed subscriber, or to any other person unless or until otherwise ordered by the Court."

11. Accordingly, as explained further in the Agent Affidavit, in light of the confidential nature of the continuing criminal investigation and the adverse consequences expected in the event of premature notification, the Government respectfully requests that the Court direct the Service Provider not to notify the Subscriber or any other person of the Warrant and Order sought herein for a period of one year, subject to extension upon application to the Court, if necessary.

12. For similar reasons, I respectfully request that the proposed Warrant and Order, this Application, and the accompanying Agent Affidavit, be maintained under seal until the Court orders otherwise, except that the Government be permitted without further order of this Court to

2019.07.24

SDNY_09_0000003895
SUBJECT TO PROTECTIVE ORDER

serve this Warrant and Order on the Service Provider; provide copies of the Warrant and Order or the supporting Application and Agent Affidavit as need be to personnel assisting the Government in the investigation and prosecution of this matter; and disclose these materials as necessary to comply with discovery and disclosure obligations in any prosecutions related to this matter.

### III. Prior Requests

13. On or about July 12, 2024, the Honorable Sarah Netburn, United States Magistrate Judge, Southern District of New York, issued a warrant for historical and prospective location information for the Target Cellphone, which expired on August 26, 2024.

14. Except as may be set forth above, no prior request for the relief requested herein has been made.

Dated:  New York, New York
        October 7, 2024

_____
Celia V. Cohen
Assistant United States Attorney
Tel.: 914-993-1921

6

2019.07.24

SDNY_09_0000003896
SUBJECT TO PROTECTIVE ORDER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**24 MAG 3544**

---------------------------------
In re: Warrant and Order For Prospective
and Historical Location Information and
Pen Register Information for the
Cellphone Assigned Call Number ▆▆▆
▆▆8792, USAO Reference No.
2021R00778
---------------------------------

**AGENT AFFIDAVIT**

_____ Mag. _____

**Agent Affidavit in Support of Warrant and Order
for Cellphone Location and Pen Register Information**

STATE OF NEW YORK      )
                       ) ss.
COUNTY OF NEW YORK  )

▆▆▆▆▆▆▆▆▆ being duly sworn, deposes and states:

**I.  Introduction**

1.  I have been a Special Agent with the Federal Bureau of Investigation (the "FBI" or
"Investigating Agency") since 2019. I am currently assigned to a public corruption squad of the
New York Field Office, where, among other things, I investigate crimes involving illegal campaign
contributions, theft of federal funds, and bribery. Through my training and experience, I also have
become familiar with some of the ways in which individuals use smart phones and electronic
communications, including social media, email, and electronic messages, in furtherance of their
crimes, and have participated in the execution of search warrants involving electronic evidence.

2.  **Requested Information.** I respectfully submit this Affidavit pursuant to 18 U.S.C.
§§ 2703(c) and (c)(1)(A) and the applicable procedures of Federal Rule of Criminal Procedure 41;
18 U.S.C. §§ 2703(d) & 2705; and 18 U.S.C. §§ 3121-3126, in support of a warrant and order for
prospective location information, historical location information, toll records, and pen register

2019.07.24

SUBJECT TO PROTECTIVE ORDER

information, for the Target Cellphones identified below (collectively, the "Requested Information").

3. **Basis for Knowledge.** This Affidavit is based upon my participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals, as well as my training and experience. Because this Affidavit is being submitted for the limited purpose of obtaining the Requested Information, it does not include all the facts that I have learned during the course of this investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. In addition, unless otherwise indicated, statements by others referenced in this Affidavit were not necessarily made to me, but may have been provided to me by someone else to whom I have spoken or whose report I have read (and who in turn may have had either direct or indirect knowledge of the statement). Similarly, unless otherwise indicated, information in this Affidavit resulting from surveillance does not necessarily set forth my personal observations, but may have been provided to me by other law enforcement agents who observed the events, and to whom I have spoken or whose report I have read.

4. **Target Cellphone, Subscriber, Target Subject, and Service Provider.** The Target Cellphone referenced in this Affidavit is the cellphone assigned call number ███ 8792. ████ ████ is the Subscriber of the Target Cellphone, but as explained herein, the Target Cellphone is believed to be used by Mohamed Bahi, who is a Target Subject of this investigation. T-Mobile is the Service Provider for the Target Cellphone.

5. **Precision Location Capability.** Cellphone service providers have technical capabilities that allow them to collect at least two kinds of information about the locations of the

2019.07.24

2

SDNY_09_0000003898
SUBJECT TO PROTECTIVE ORDER

cellphones to which they provide service: (a) precision location information, also known as E-911 Phase II data, GPS data, or latitude-longitude data, and (b) cell site data, also known as "tower/face" or "tower/sector" information.  Precision location information provides relatively precise location information about a cellphone, which a provider can typically collect either via GPS tracking technology built into the phone or by triangulating the device's signal as received by the provider's nearby cell towers.  Cell site data, by contrast, reflects only the cell tower and sector thereof utilized in routing any communication to and from the cellphone, as well as the approximate range of the cellphone from the tower during the communication (sometimes referred to as "per-call measurement" ("PCM") or "round-trip time" ("RTT") data).  Because cell towers are often a half-mile or more apart, even in urban areas, and can be ten or more miles apart in rural areas, cell site data is typically less precise than precision location information.  Based on my training and experience, I know that the Service Provider has the technical ability to collect precision location information from any cellphone on its network, including by initiating a signal on the Service Provider's network to determine the phone's location.  I further know that cell site data is routinely collected by the Service Provider in the course of routing calls placed to or from any cellphone on its network.[1]

## II.  Facts Establishing Probable Cause

6.  Although I understand that probable cause is not necessary to obtain all of the Requested Information, I respectfully submit that probable cause exists to believe that Mohamed Bahi is engaged in violations of 18 U.S.C. §§ 1513(b)(3) and 1519 (witness tampering and

---

[1] Toll records are sometimes necessary or helpful in order to obtain or interpret historical cell site data and are therefore also requested herein.

SDNY_09_0000003899
SUBJECT TO PROTECTIVE ORDER

destruction of records) (the "Subject Offenses") and that the Requested Information will lead to the location of Bahi, who is "a person to be arrested" within the meaning of Rule 41.

7.   On or about October 7, 2024, the Honorable Robert W. Lehrburger issued a complaint charging Mohamed Bahi with the Subject Offenses (the "Complaint").   Judge Lehrburger also issued an arrest warrant for Bahi in connection with the Complaint (the "Arrest Warrant").  Copies of the Complaint and Arrest Warrant are attached hereto as Exhibit A and B, respectively, and incorporated by reference herein.

8.   Based on my involvement in this investigation, I believe that Mohamed Bahi is the user of the Target Cellphone and therefore that the Requested Information will assist in locating Bahi.

a.   Based on my review of records from the Service Provider, I know that although ████████ is listed as the Subscriber for the Target Cellphone, under the header "Device Details" in the Service Provider's records for the Target Cellphone, the name "Mohamed Bahe," a commonly used alternate spelling of Bahi's name, is listed.

b.   Furthermore, on or about July 12, 2024, the Honorable Sarah Netburn, United States Magistrate Judge, Southern District of New York, issued a warrant for historical and prospective location information for the Target Cellphone, which expired on August 26, 2024 (the "Prior Warrant").  Based on location information obtained pursuant to the Prior Warrant, I know that the Target Cellphone was regularly located at Bahi's residence during overnight hours, consistent with Bahi's use of the Target Cellphone.

## III.  Request for Warrant and Order

9.   Based on the foregoing I respectfully request that the Court require the Service Provider to provide the Requested Information as specified further in the Warrant and Order proposed herewith, including prospective precision location and cell site data for a period of 45 days from the date of this Order, historical cell site data and toll records for the period from August 27, 2024

2019.07.24

4

SDNY_09_0000003900
SUBJECT TO PROTECTIVE ORDER

through the date of this Order, and pen register information for a period of 45 days from the date of this Order.

10. **Nondisclosure.** The fact of the Complaint and Arrest Warrant is not publicly known. Premature public disclosure of this affidavit or the requested Warrant and Order could cause Bahi to destroy evidence, flee from prosecution, or otherwise seriously jeopardize the investigation. *See* 18 U.S.C. §§ 2705(b)(2), (3), (5)  Accordingly, I respectfully request that the Provider be directed not to notify the Subscriber or others of the existence of the Warrant and Order for a period of one year, and that the Warrant and Order and all supporting papers be maintained under seal until the Court orders otherwise, as specified in the Application submitted in conjunction with this Affidavit.

2019.07.24

5

SDNY_09_0000003901
SUBJECT TO PROTECTIVE ORDER

11.   Accordingly, there is reason to believe that, were the Service Provider to notify the subscriber or others of the existence of the warrant, the investigation would be seriously jeopardized.   Pursuant to 18 U.S.C. § 2705(b), I therefore respectfully request that the Service Provider be directed not to notify the subscriber or others of the existence of the Warrant and Order for a period of one year, and that the Warrant and Order and all supporting papers be maintained under seal until the Court orders otherwise, as specified in the Application submitted in conjunction with this Affidavit.

S/ by the Court with permission

███████

Special Agent
Federal Bureau of Investigation

Sworn to me through the transmission of this
Affidavit by reliable electronic means, pursuant to
Federal Rules of Criminal Procedure 41(d)(3) and 4.1, on

October 7, 2024

HONORABLE ROBERT W. LEHRBURGER
United States Magistrate Judge
Southern District of New York

2019.07.24

6

SDNY_09_0000003902
SUBJECT TO PROTECTIVE ORDER

# EXHIBIT A

SDNY_09_0000003903
SUBJECT TO PROTECTIVE ORDER

AUSAs: Celia Cohen, Andrew Rohrbach, Hagan Scotten, Derek Wikstrom

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 24 MAG 3535

UNITED STATES OF AMERICA

v.

MOHAMED BAHI,

Defendant.

**SEALED COMPLAINT**

Violations of 18 U.S.C. §§ 1512 and 1519

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

███████████ being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation, and charges as follows:

## COUNT ONE
### (Witness Tampering)

1.     In or about June 2024, in the Southern District of New York and elsewhere, MOHAMED BAHI, the defendant, knowingly used intimidation, threatened, and corruptly persuaded another person, and attempted to do the same, with the intent to hinder, delay, and prevent the communication to a law enforcement officer of information relating to the commission and possible commission of a federal offense, to wit, BAHI met with five potential witnesses and directed them to lie to law enforcement officers in connection with a federal criminal investigation being conducted by the Federal Bureau of Investigation.

(Title 18, United States Code, Section 1512(b)(3).)

## COUNT TWO
### (Destruction of Records)

2.     On or about July 24, 2024, in the Southern District of New York and elsewhere, MOHAMED BAHI, the defendant, knowingly altered, destroyed, mutilated, concealed, covered up, falsified, and made a false entry in a record, document, and tangible object with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, and in relation to and in contemplation of such a matter, to wit, BAHI deleted the encrypted-messaging application Signal from his cellphone upon the Federal Bureau of Investigation's arrival at his home to execute a court-issued warrant authorizing the search of BAHI's home and the seizure of his cellphone.

(Title 18, United States Code, Section 1519.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

3.     I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and I have been personally involved in the investigation of this matter, which has been jointly investigated

with the New York City Department of Investigation ("DOI"). This affidavit is based upon my personal participation in the investigation of this matter, my conversations with other law enforcement personnel, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my participation in the investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

<u>Background</u>

4.      From approximately 2022 through the present, MOHAMED BAHI, the defendant, has worked as a Senior Liaison in the Community Affairs Unit of the New York City mayoral administration of a certain public official ("Official-1").

5.      Beginning at least in or about 2018, Official-1 campaigned to be New York City Mayor, in connection with an election to be held in 2021 (the "2021 Official-1 Campaign"). In or about 2020, MOHAMED BAHI, the defendant, solicited campaign contributions for the 2021 Official-1 Campaign.

6.      Since in or about 2021, the FBI and DOI have been investigating, among other things, the receipt of so-called "straw" contributions by the 2021 Official-1 Campaign (the "Federal Investigation"). A straw contribution to a political campaign is a contribution that is made in the name of one donor, for which the donated funds in fact came from a different person. The knowing solicitation and acceptance of straw contributions can violate federal law when, for example, a political campaign makes false statements about straw contributions to a public entity to fraudulently obtain public matching funds based on the contributions, or when the straw contributions are used to smuggle foreign money into a campaign. I am one of the FBI Special Agents conducting the Federal Investigation.

7.      As explained in greater detail below, in or about December 2020, MOHAMED BAHI, the defendant, was involved in organizing a fundraiser for the 2021 Official-1 Campaign at which the donors made straw contributions. In or about 2024, when the FBI was investigating the 2021 Official-1 Campaign's solicitation and acceptance of straw contributions, BAHI took steps to obstruct the Federal Investigation by tampering with multiple witnesses and destroying evidence.

<u>The December 2020 Fundraiser</u>

8.      Based on my review of records from the New York City Campaign Finance Board (the "CFB"), I know, among other things, the following:

a.      On or about December 10, 2020, four individuals (each a "Donor," and collectively, the "Donors") associated with the same employer (the "Construction Company") made contributions to the 2021 Official-1 Campaign. Contribution cards for each of the Donors were submitted to the CFB by the 2021 Official-1 Campaign. Each of the Donors' contribution cards listed the Construction Company in the field "employer."

b.      A fifth person (the "Businessman") also contributed to the 2021 Official-1 Campaign, on the same date and in the same amount as each of the Donors. The Businessman's

2

SUBJECT TO PROTECTIVE ORDER

contribution card, submitted to the CFB by the 2021 Official-1 Campaign, listed the Businessman's employer as "Self," and his occupation as "President." Based on, among other things, my review of open-source information, I know that the Businessman is the founder and chief executive officer of the Construction Company.

        c.     Each of the four Donors, and the Businessman, contributed to the 2021 Official-1 Campaign by check, in the amount of $2,000.

        d.     All five of the contribution cards submitted by the Donors and the Businessman in connection with these December 10, 2020 contributions had matching, pre-typed information, including the recipient, the names and addresses of the respective Donors, and their employer.

        e.     Each of the five relevant contribution cards contained a signature on a line reading "Contributor's Signature." Above the signature line, each contribution card stated: "I understand that State law requires that a contribution be in my name and be from my own funds. I hereby affirm that I was not, nor, to my knowledge, was anyone else, reimbursed in any manner for this contribution; that this contribution is not being made as a loan; and that this contribution is being made from my personal funds or my personal account, which has no corporate or business affiliation."

    9.     I have reviewed text messages from electronic devices and accounts belonging to the Businessman, which were obtained pursuant to court-authorized search warrants. Based on that review, I have learned, among other things, the following:

        a.     On or about November 19, 2020, a telephone number saved to the Businessman's phone contacts as a variant of the name of MOHAMED BAHI,[1] the defendant, texted the Businessman: "Dec 10th - Thursday 7pm - Your Office," "Private Fundraiser and Dinner for [Official-1]."

        b.     On or about December 9, 2020, BAHI texted the Businessman: "…he moved it tomorrow to 5pm. Is that ok?" The Businessman responded: "yes even better."

        c.     On or about December 10, 2020, at approximately 4:57 p.m., BAHI texted the Businessman: "im coming now," "i think he is about 15 mins away." Less than ten minutes later, BAHI texted the Businessman: "he's outside," "bringing him in."

    10.    Law enforcement has interviewed each of the Donors and the Businessman.[2] Based on my participation in some of those interviews, my discussions with other law enforcement agents

---

[1] Specifically, the number was saved in the Businessman's contacts as "Muhammad Bahi."

[2] Each of these five witnesses was interviewed by the FBI on or about June 13, 2024, and, in sum and substance, denied having been involved in straw donations. Each of these witnesses was subsequently interviewed, pursuant to proffer agreements and while represented by counsel, and it is these counseled, proffer-protected interviews that are described in this paragraph. Each of these witnesses agreed to speak with law enforcement in the hopes of receiving leniency in connection with this investigation. In the course of proffering with the Government, the Businessman admitted his involvement in straw donations to Official-1's mayoral campaigns and

SDNY_09_0000003906
SUBJECT TO PROTECTIVE ORDER

who participated in the interviews, and my review of related reports, I know, among other things, that multiple witnesses confirmed each of the following facts:

       a.    The Donors and the Businessman attended a fundraiser for the 2021 Official-1 Campaign held at the Brooklyn headquarters of the Construction Company on December 10, 2020;

       b.    Official-1 attended the fundraiser;

       c.    MOHAMED BAHI, the defendant, organized and attended the fundraiser, and suggested that the Businessman should reimburse donations by his employees;

       d.    Each of the Donors made straw contributions: each of their $2,000 contributions was either reimbursed by, or paid for in advance by, the Construction Company.

<u>The June 13, 2024 Interviews and BAHI's Witness Tampering</u>

11.    On or about June 13, 2024, in connection with the Federal Investigation, FBI agents executed a court-authorized search warrant at the home of the Businessman, and also served him with a subpoena issued by a grand jury in the Southern District of New York. Around the same time the search warrant was executed, FBI agents also approached each of the four Donors with subpoenas issued by a grand jury in the Southern District of New York, and attempted to interview each of them.

12.    Based on my participation in certain interviews, my discussions with other law enforcement officers who interviewed the Donors and the Businessman as discussed above, and my review of related reports, I have learned, in substance and in part, that:

       a.    On or about June 13, 2024, the Businessman called MOHAMED BAHI, the defendant, and informed BAHI that the FBI had executed a search warrant at the Businessman's home that morning.

       b.    In the afternoon on or about June 13, 2024, BAHI went to the offices of the Construction Company, where he met privately with the Businessman, and then met with the Businessman and the four Donors.

       c.    During the private meeting between BAHI and the Businessman on or about June 13, 2024, BAHI told the Businessman that he had just spoken with Official-1. BAHI then asked the Businessman to describe his interactions with the FBI. After the Businessman told BAHI that the Businessman had denied having funded straw donations to Official-1 when questioned by the FBI, BAHI advised the Businessman that if he continued to tell that lie to federal investigators the Businessman would be ok.

---

in an unrelated fraud offense. The information these witnesses have provided has proven reliable and is corroborated by other evidence.

SDNY_09_0000003907
SUBJECT TO PROTECTIVE ORDER

d.    BAHI then met with the Businessman and the four Donors. BAHI asked each of them to describe their interactions with the FBI. BAHI took photographs of the grand jury subpoenas that had been served on the Donors and the Businessman.

e.    During the meeting between BAHI, the Businessman, and the four Donors, BAHI encouraged the Donors to lie to federal investigators by denying that they had made straw donations to the 2021 Official-1 Campaign, and remarked that because the Donors' contributions to the 2021 Official-1 Campaign had been reimbursed in cash, the FBI would be unable to prove that the reimbursements had occurred.

f.    On or about June 14, 2024, BAHI again met with the Businessman. During that meeting, BAHI indicated to the Businessman, in substance and in part, that BAHI had met with Official-1, and that Official-1 believed that the Businessman would not cooperate with law enforcement.

<u>BAHI's Destruction of Evidence</u>

13.    Based on my training and experience, including my experience in the Federal Investigation, I know that Signal is an encrypted-messaging application that allows users to set the application to automatically delete messages at certain intervals. Based on my involvement in the Federal Investigation, and my review of both open-source information and the contents of devices and accounts seized pursuant to court-authorized search warrants, I know that Official-1 used Signal to communicate and sometimes encouraged others to do so, and that people who—like MOHAMED BAHI, the defendant—work for Official-1 also used Signal to communicate with Official-1 and others.

14.    On July 24, 2024, in connection with the Federal Investigation, FBI agents executed a court-authorized search warrant at the home of MOHAMED BAHI, the defendant. Based on my discussions with FBI agents who participated in the search, I have learned, among other things, the following:

a.    On July 24, 2024, at approximately 6:00 a.m., FBI agents began knocking on the door of BAHI's home, and calling a phone number known to be used by BAHI to announce that they were present to execute a search warrant. No one answered the door, and BAHI did not answer multiple calls from the agents.

b.    FBI agents then called BAHI's former spouse, who lives at BAHI's home. She answered the phone, and FBI agents identified themselves as federal agents, and told her that they were at the door and wanted to speak with BAHI. BAHI's former spouse initially claimed not to be home. She eventually came to the door, but initially refused to open it.

c.    Some time after BAHI's former spouse came to the door, BAHI himself came to the door, and let the FBI into his home to execute the search warrant.

d.    Once FBI agents were inside BAHI's home executing the search warrant, an agent mentioned to BAHI that the agent had repeatedly called BAHI. This prompted BAHI to take a cellphone (the "Bahi Cellphone") out of his pocket, which the agent then seized pursuant to the warrant. Thus, BAHI had uninhibited access to his cellphone between learning that the FBI was present at his home and the FBI entering his home.

SDNY_09_0000003908
SUBJECT TO PROTECTIVE ORDER

e.      During an interview with FBI agents who were executing the search warrant, BAHI stated, in substance and in part, that he had used the Bahi Cellphone as his personal cellphone for approximately the last few months. BAHI also stated that he was planning to travel to Egypt that evening.

15.      Based on my review of information from the forensic extraction of the Bahi Cellphone, which was performed after the Bahi Cellphone was seized by FBI agents, I have learned, among other things, that Signal was not on the Bahi Cellphone at the time it was forensically searched. Activity logs for the Bahi Cellphone indicated, however, that the Bahi Cellphone had been used to access the Signal application as recently as approximately 12:04 a.m. on July 24, 2024, the day that BAHI's home was searched and the Bahi Cellphone was seized by FBI agents. In other words, the Signal application was deleted from the Bahi Cellphone sometime between approximately midnight and shortly after 6:00 a.m., when the Bahi Cellphone was seized by FBI agents on July 24, 2024.

16.      In the afternoon of July 24, 2024, FBI agents called MOHAMED BAHI, the defendant, to ask him follow-up questions about the Bahi Cellphone. I participated in that call, along with other agents. During the call, BAHI admitted, in substance and in part, that he had recently deleted the Signal application. When agents asked BAHI when that day he had deleted Signal, BAHI stated that he would not disclose when he deleted Signal.

17.      During the interview described in the preceding paragraph, MOHAMED BAHI, the defendant, claimed, in substance and in part, that he had a practice of deleting applications that were suspicious before traveling internationally, in case he was questioned by authorities during that travel. That statement appears to be false. From my review of travel records, I have learned that BAHI traveled to Egypt on or about February 15, 2024, returning to New York on or about February 23, 2024.[3] And, based on my review of the contents of the Bahi Cellphone, I know that BAHI did not delete Signal on that trip, but instead continued to use Signal, including to exchange messages with Official-1 via Signal. Specifically, the Bahi Cellphone contains a screenshot of messages BAHI and Official-1 exchanged during BAHI's travel to Egypt and Yemen, and metadata for the screenshot indicates that the screenshot was created on or about February 19, 2024, during that trip.

---

[3] Based on my review of the contents of the Bahi Cellphone, I believe that BAHI traveled to Yemen by way of Egypt during this trip.

6

SDNY_09_0000003909
SUBJECT TO PROTECTIVE ORDER

WHEREFORE, I respectfully request that a warrant be issued for the arrest of MOHAMED BAHI, the defendant, and that he be imprisoned or bailed, as the case may be.

S/ by the Court with permission

Special Agent
Federal Bureau of Investigation

Sworn to me through the transmission of this Affidavit
by reliable electronic means, pursuant to
Federal Rules of Criminal Procedure 41(d)(3) and 4.1,

this __7th__ day of October, 2024.

THE HONORABLE ROBERT W. LEHRBURGER
United States Magistrate Judge
Southern District of New York

7

SDNY_09_0000003910
SUBJECT TO PROTECTIVE ORDER

# EXHIBIT B

SDNY_09_0000003911
SUBJECT TO PROTECTIVE ORDER

Mod AO 442 (09/13) Arrest Warrant    AUSA Name & Telno: Derek Wikstrom, 212-637-1085

# UNITED STATES DISTRICT COURT

for the

## Southern District of New York

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. **24 MAG 3535** |
| | ) | |
| | ) | |
| Mohamed Bahi | ) | |
| | ) | |

*Defendant*

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*    Mohamed Bahi                                                     ,

who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment    ☐ Superseding Indictment    ☐ Information    ☐ Superseding Information    ☐ Complaint
☐ Probation Violation Petition    ☑ Supervised Release Violation Petition    ☐ Violation Notice    ☐ Order of the Court

This offense is briefly described as follows:

Violations of 18 U.S.C. § 1512 (witness tampering) and 18 U.S.C. § 1519 (destruction of records)

Date:     10/07/2024                                        _____
                                                                              *Issuing officer's signature*

City and state:     New York, New York                      Hon. Robert W. Lehrburger, U.S.M.J.
                                                                              *Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . |
| Date: _____          _____ |
|                                                              *Arresting officer's signature* |
|                                                              _____ |
|                                                              *Printed name and title* |

SDNY_09_0000003912
SUBJECT TO PROTECTIVE ORDER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**24 MAG 3544**

In re: Warrant and Order For Prospective
and Historical Location Information and
Pen Register Information for the
Cellphone Assigned Call Number ▮
▮8792, USAO Reference No.
2021R00778

**WARRANT AND ORDER**

_____ Mag. _____

**Warrant and Order**
**for Cellphone Location Information and Pen Register Information**
**and for Sealing and Non-Disclosure**

TO:     T-Mobile ("Service Provider")

     Federal Bureau of Investigation ("Investigative Agency")

     Upon the Application and Agent Affidavit submitted by the Government in this matter:

**I.  Findings**

     The Court hereby finds:

     1.  The Target Cellphone (the "Target Cellphone") that is the subject of this Order is assigned call number ▮8792, and is currently serviced by the Service Provider.

     2.  Pursuant to 18 U.S.C. § 2703(c)(1)(A) and the applicable provisions of Rule 41 of the Federal Rules of Criminal Procedure, the Government's application sets forth probable cause to believe that the prospective and historical location information for the Target Cellphone will reveal the location of Mohamed Bahi, who is engaged in violations of 18 U.S.C. §§ 1513(b)(3) and 1519 (witness tampering and destruction of records) (the "Subject Offenses") and who is "a person to be arrested" within the meaning of Rule 41.

     3.  Pursuant to 18 U.S.C. § 2703(d), the Government's application also sets forth specific and articulable facts showing that there are reasonable grounds to believe that the toll records for the Target Cellphones are relevant and material to an ongoing criminal investigation.

2019.07.24

SDNY_09_0000003913
SUBJECT TO PROTECTIVE ORDER

4.    Pursuant to 18 U.S.C. § 3123(b)(1), the Government has certified that the pen register information for the Target Cellphones is relevant to an ongoing investigation by the Investigating Agency of the Subject Offenses and of Mohamed Bahi, who is "a person to be arrested" within the meaning of Rule 41.

5.    Pursuant to 18 U.S.C. § 2705(b), there is reason to believe that notification of the existence of this Warrant and Order will result in destruction of or tampering with evidence, flight from prosecution, and/or intimidation of potential witnesses, or otherwise will seriously jeopardize an ongoing investigation.

NOW, THEREFORE, pursuant to Fed. R. Crim. P. 41, 18 U.S.C. §§ 3121 *et seq.*, 18 U.S.C. §§ 2701 *et seq.*, and 18 U.S.C. § 3103a, IT IS HEREBY ORDERED:

**II.  Order to Service Provider**

6.    **Service Provider.** This Order shall apply to the Service Provider specified above.

7.    **Prospective Location Information**. The Service Provider shall provide to the Investigating Agency on a prospective basis, for a period of 45 days from the date of this Order, information concerning the location of the Target Cellphone ("Prospective Location Information"), including all available:

a.    precision location information, including GPS data, E-911 Phase II data, and latitude-longitude data; and

b.    cell site data, including any data reflecting (a) the cell towers and sectors thereof utilized in routing any phone, text, or data communication to or from the Target Cellphones, and (b) the approximate range of the target phone from the cell towers during the communication (including per-call measurement ("PCM") or round-trip time ("RTT") data);

2

2019.07.24

SDNY_09_0000003914
SUBJECT TO PROTECTIVE ORDER

8. **Historical Location Information and Toll Records**. The Service Provider shall provide to the Investigating Agency all available historical cell site location information reflecting the cell towers and sectors thereof utilized in routing any phone, text, or data communication to or from the Target Cellphone, and the approximate range of the target phone from the cell towers during the communication (PCM/RTT data), for the period from August 27, 2024 through the date of this Order, as well as all available toll records (including call detail, SMS detail, or data session detail records) for the communications.

9. **Pen register with caller identification and/or trap and trace device.** The Service Provider shall provide to the Investigating Agency, for a period of 45 days from the date of this order, all dialing, routing, addressing, or signaling information associated with each voice, text, or data communication transmitted to or from the Target Cellphone, including but not limited to:

a.  any unique identifiers associated with the phone, including ESN, MEIN, MSISDN, IMSI, IMEI, SIM, MIN, or MAC address;

b.  source and destination telephone numbers and/or Internet protocol ("IP") addresses;[1]

c.  date, time, and duration of the communication; and

d.  cell-site information as specified above.

---

[1] The Service Provider is not required to provide post-cut-through dialed digits ("PCTDD"), or digits that are dialed after a telephone call from the Target Cellphones has been connected. If possible, the Service Provider will forward only pre-cut-through-dialed digits to the Investigative Agency. However, if the Service Provider's technical capabilities require it to forward all dialed digits, including PCTDD, to the Investigative Agency, the Investigative Agency will only decode and forward to the agents assigned to the investigation, the numbers that are dialed before the call is cut through.

2019.07.24

3

SDNY_09_0000003915
SUBJECT TO PROTECTIVE ORDER

10.  **Technical Assistance.** The Service Provider shall furnish the Investigating Agency all information, facilities, and technical assistance necessary to accomplish the disclosure of all of the foregoing information relating to the Target Cellphones unobtrusively and with the minimum interference to the service presently provided to the Subscriber.

11. **Non-Disclosure to Subscriber.**  The Service Provider, including its affiliates, officers, employees, and agents, shall not disclose the existence of this Warrant and Order, or the underlying investigation, to the Subscriber or any other person, for a period of one year from the date of this Warrant and Order, subject to extension upon application to the Court, if necessary.

2019.07.24

SDNY_09_0000003916
SUBJECT TO PROTECTIVE ORDER

### III.  Additional Provisions

12. **Compensation for Costs.** The Investigating Agency shall compensate the Service Provider for reasonable expenses incurred in complying with the Warrant and this Order.

13. **Sealing.** This Warrant and Order, and the supporting Application and Agent Affidavit, shall be sealed until otherwise ordered by the Court, except that the Government may without further order of this Court: serve this Warrant and Order on the Service Provider; provide copies of the Warrant and Order or the supporting Application and Agent Affidavit as need be to personnel assisting the Government in the investigation and prosecution of this matter; and disclose these materials as necessary to comply with discovery and disclosure obligations in any prosecutions related to this matter.

Dated: New York, New York

_____Oct. 7, 2024_____          _____12:25 a.m._____
        Date Issued                          Time Issued


_____
UNITED STATES MAGISTRATE JUDGE
Southern District of New York

5

2019.07.24

SDNY_09_0000003917
SUBJECT TO PROTECTIVE ORDER