AO 93C  (08/18) SDNY Rev.  Warrant by Telephone or Other Reliable Electronic Means        ☐ Original        ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Alabama

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )    Case No.  24 Cr. 556 (DEH) |
| Two Blue Titanium iPhone 15 Pro Max Cellphones | ) |
| Bearing IMEI Numbers 355364287102652 and | ) |
| 358606710123987 | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Southern_____ District of _____New York_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

The search and seizure are related to violation(s) of *(insert statutory citations)*:

18 U.S.C. §§ 371, 666, and 1343; 52 U.S.C. § 30121

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment A

**YOU ARE COMMANDED** to execute this warrant on or before _____December 3, 2024_____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:    11/19/2024 2:47 p.m.                    *Stewart D. Aaron*
                                                                  *Judge's signature*

City and state:   New York, New York                    Hon. Stewart D. Aaron
                                                        *Printed name and title*

SDNY_09_0000003918
SUBJECT TO PROTECTIVE ORDER

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

**Return**

| Case No.:<br>24 Cr. 556 (DEH) | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

| Print | Save As... | | Reset |
|---|---|---|---|

SDNY_09_0000003919
SUBJECT TO PROTECTIVE ORDER

**Attachment A**

## I. The Subject Devices

The Subject Devices are two blue titanium iPhone 15 Pro Max cellphones bearing IMEI numbers 355364287102652 and 358606710123987 seized from ▇▇▇▇▇▇▇▇▇ on September 27, 2024, and presently in the custody the New York County District Attorney's office in New York, New York.

## II. Seizure and Review of ESI on the Subject Device

### A. Evidence, Fruits, and Instrumentalities of the Subject Offenses

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the ESI contained on the Subject Devices for evidence, fruits, and instrumentalities of violations of (i) wire fraud, in violation of 18 U.S.C. § 1343; (ii) solicitation of campaign contributions from foreign nationals, in violation of 52 U.S.C. § 30121; (iii) federal program bribery, in violation of 18 U.S.C. § 666; and (iv) conspiracy to commit each of the above offenses, in violation of 18 U.S.C. § 371 (collectively, the "Subject Offenses"), described as follows:

1.  Evidence concerning the identity or location of the owner(s) or user(s) of the Subject Devices.

2.  Evidence of knowledge or understanding of, or intent to violate, laws and regulations governing the conduct of the 2021 and 2025 New York City mayoral races.

3.  Evidence of foreign donations to the 2021 Adams Campaigns.

4.  Evidence of individuals or entities who donated to the Adams Campaigns before or after receiving transfers of funds similar to the amount of the donation.

5.  Identity of any persons or entities involved, wittingly or unwittingly, in straw donations to the Adams Campaigns.

6.  Evidence relating to the source of funds for payment or reimbursement of persons serving as conduits for campaign contributions to the Adams Campaigns.

7.  Evidence regarding any requests by the Adams Campaigns for matching funds based on straw donations, including any discussions of matching funds.

8.  Evidence of free or discounted travel benefits (including airfare, accommodations, meals, transportation, and entertainment) provided to Adams or persons traveling with Adams.

9.  Evidence of an intent to exchange benefits between the Turkish Government or entities and persons acting at its behest, and Adams or the Adams Campaigns, including but not

2022.01.31

SDNY_09_0000003920
SUBJECT TO PROTECTIVE ORDER

limited to evidence of a relationship between straw donations or travel benefits and any actions taken by Adams or any persons connected to Adams.

10.    Evidence relating to coordination between Turkish nationals or the Turkish Government and the Adams Campaigns concerning political contributions to the Adams Campaigns, including, but not limited to, evidence of motive and intent for Turkish nationals or the Turkish Government to provide or facilitate campaign contributions to the Adams Campaigns, and evidence of motive and intent by any person who is or was associated with or employed by the Adams Campaigns to provide benefits, whether lawfully or unlawfully, to Turkish nationals or the Turkish Government in return for campaign contributions.

11.    Evidence of Adams's relationship with  Erden Arkan, ██████ Mohammed Bahi, ██████ or ██████

12.    Evidence concerning efforts to conceal the Subject Offences, to destroy or conceal evidence of the Subject Offenses, to devise or coordinate false exculpatory explanations for the conduct underlying the Subject Offenses, or to otherwise obstruct law enforcement from investigating the Subject Offenses.

**B.  Review of ESI**

Following seizure of any electronic communications device and/or the creation of forensic image copies, law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the ESI contained therein for information responsive to the warrant.

In conducting this review, law enforcement personnel may use various techniques to locate information responsive to the warrant, including, for example:

- surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);

- opening or cursorily reading the first few "pages" of such files in order to determine their precise contents;

- scanning storage areas to discover and possibly recover recently deleted files or deliberately hidden files;

- performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation; and

2017.08.02

SDNY_09_0000003921
SUBJECT TO PROTECTIVE ORDER

- reviewing metadata, system information, configuration files, registry data, and any other information reflecting how, when, and by whom the device was used.

Law enforcement personnel will make reasonable efforts to search only for files, documents, or other electronically stored information within the categories identified in Section II.A of this Attachment.  However, law enforcement personnel are authorized to conduct a complete review of all the ESI from seized devices or storage media if necessary to evaluate its contents and to locate all data responsive to the warrant.

2017.08.02

SDNY_09_0000003922
SUBJECT TO PROTECTIVE ORDER

AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Two Blue Titanium iPhone 15 Pro Max Cellphones<br>Bearing IMEI Numbers 355364287102652 and<br>358606710123987 | )<br>)<br>)  Case No. 24 Cr. 556 (DEH)<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Southern_____ District of _____New York_____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attached Affidavit and its Attachment A

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 371, 666, 1343;<br>52 USC 30121 | Theft of federal funds, wire fraud, campaign contributions by foreign nationals, and conspiracy to commit these offenses |

The application is based on these facts:

Please see Attached Affidavit and its Attachment A

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ ██████  by SDA with permission

*Applicant's signature*

██████████

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means).*

Date: _____11/19/2024_____

*Judge's signature*

City and state:  New York, New York

Hon. Stewart D. Aaron

*Printed name and title*

| Print | Save As... | Attach | Reset |
|---|---|---|---|

SDNY_09_0000003923
SUBJECT TO PROTECTIVE ORDER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the Matter of the Application of the United States of America for a Warrant to Search Two Blue Titanium iPhone 15 Pro Max Cellphones Bearing IMEI Numbers 355364287102652 and 358606710123987, Seized from ██████████ ██ on September 27, 2024, USAO Reference No. 2021R00778 | **TO BE FILED UNDER SEAL**<br><br>**Agent Affidavit in Support of Application for Search and Seizure Warrant** |

SOUTHERN DISTRICT OF NEW YORK) ss.:

███████████ being duly sworn, deposes and says:

## I. Introduction

### A. Affiant

1.      I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since 2019. I am currently assigned to a public corruption squad of the New York Field Office, where, among other things, I investigate crimes involving illegal campaign contributions, wire fraud, and bribery. Through my training and experience, I also have become familiar with some of the ways in which individuals use smart phones and electronic communications, including social media, email, and electronic messages, in furtherance of their crimes, and have participated in the execution of search warrants involving electronic evidence.

2.      I make this Affidavit in support of an application pursuant to Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search two particular cellphones, which were seized from ██████████ on September 27, 2024, for the items and information described in Attachment A. This affidavit is based upon my personal knowledge; my review of documents and other evidence; my conversations with other law enforcement personnel; and my training, experience and advice received concerning the use of electronic devices in criminal activity and the forensic analysis of electronically stored information ("ESI"). Because this affidavit is being

2017.08.02

1

SUBJECT TO PROTECTIVE ORDER

submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

**B. The Subject Devices**

3.     The Subject Devices are two blue titanium iPhone 15 Pro Max cellphones bearing IMEI numbers 355364287102652 and 358606710123987, which were seized from █████████ ████ on September 27, 2024, and are presently in the custody the New York County District Attorney's office in New York, New York.

**C. The Subject Offenses**

4.     For the reasons detailed below, I respectfully submit that there is probable cause to believe that the Subject Devices contain evidence, fruits, and instrumentalities of violations of (i) wire fraud, in violation of 18 U.S.C. § 1343; (ii) solicitation of campaign contributions from foreign nationals, in violation of 52 U.S.C. § 30121; (iii) federal program bribery, in violation of 18 U.S.C. § 666; and (iv) conspiracy to commit each of the above offenses, in violation of 18 U.S.C. § 371 (collectively, the "Subject Offenses").

**II. Probable Cause**

**A. Probable Cause Regarding the Subject Offenses**

5.     ████████████ is a longtime advisor of New York City Mayor Eric Adams. She served as Deputy Brooklyn Borough President when Adams was Brooklyn Borough President, Chief Advisor to the Mayor starting in 2022, and as a member of Adams's 2021 and 2025

SDNY_09_0000003925
SUBJECT TO PROTECTIVE ORDER

campaigns for New York City Mayor. ██████████ is regularly described in the press as Adams's closest advisor.[1]

      6.     Since in or about 2021, I have been involved in an investigation of Adams and his associates, including ██████████ for campaign finance, bribery, conspiracy, and other offenses. On September 24, 2024, a grand jury sitting in the Southern District of New York returned an indictment charging Adams with the Subject Offenses (the "Indictment"). The Indictment is attached to this affidavit as Exhibit A, and incorporated herein.

      7.     I know, based on my involvement in this investigation, that the following terms in the Indictment refer to the following persons:

    a.   "Turkish Official" - ██████████

    b.   "Airline Manager" - ████████

    c.   "Promoter" - ████████

    d.   "Businessman-5" - Erden Arkan

    e.   "Businessman-1"- ████████

    f.   "University President" - ██████████

    g.   "Businessman-2" - ████████

    h.   "Businessman-4" - ████████

    i.   "Businessman-6" - ████████

    j.   "Adams Employee-1" - Mohamed Bahi

    k.   "Adams Employee-2" - ██████████

---

██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████

2017.08.02

3

SUBJECT TO PROTECTIVE ORDER

l.   "Adams Fundraiser" - █████████

m.   "Adams Scheduler" - █████████

n.   "Adams Liaison" – ████████

o.   "Adams Staffer" – ████████

8.   I know based on my conversations with an investigator with the New York County District Attorney's Office that on or about September 27, 2024, investigators with the New York County District Attorney's Office seized the Subject Devices from █████████ pursuant to a warrant issued by a New York State court judge.

9.   As detailed in the Indictment, there is probable cause to believe that Adams and his co-conspirators and agents committed the Subject Offenses, and used electronic messages sent from and received by electronic devices to do so.

10.   As described in the Indictment, Adams engaged in a long-running scheme to accept illegal campaign contributions and free and steeply discounted luxury travel arranged by █████ █████ who was until recently Turkey's Consul General in New York City, and who is identified in the Indictment as the "Turkish Official."  Adams and █████ frequently communicated through █████████ who is referred to as the "Adams Staffer" in the Indictment.  As described in the Indictment, █████████ who is referred to as "Adams's senior advisor" in the Indictment— met with █████ on or about July 11, 2022.  In connection with that meeting, █████ informed █████ among other things, that █████████ should be █████ point-of-contact for "all your pending problems regarding [the Turkish consulate's New York building] … Like FDNY approvals . . . ."

11.   I have reviewed the contents of an Apple iPhone used by █████████ obtained pursuant to court-issued search warrants.  I know from these sources that the message from

4

SDNY_09_0000003927
SUBJECT TO PROTECTIVE ORDER

██████ to ████ also referenced ███████ as the point-of-contact "Regarding poli[ce] boo[th] in front of the building."

12.    I know from my review of the contents of an iCloud account used by ████████ among other sources, that on or about July 22, 2022, ████████ (███ exchanged the following text messages with ██████ (█ regarding a meeting with █████

| FROM | TO | |
|------|-----|---|
| ■ | ■ | Hi ███<br>The dates for private meeting is 8/25 at 8 pm<br>8/26 at 8:15 or 8:30 pm |
| ■ | ■ | Regarding NYPD he will send you an email |
| ■ | ■ | Thanks again for following up 🙏 |
| ■ | ■ | Please send some other date options for the night rooftop and send his name. Thanks |
| ■ | ■ | Consul Generals name is ██████<br>He will be in vacation from July 27 till August 21<br>We can check the dates after August 21 |
| ■ | ■ | Thanks |

5

2017.08.02

SDNY_09_0000003928
SUBJECT TO PROTECTIVE ORDER

Based on my training and experience and involvement in this investigation, I believe that in this conversation, ▮▮▮▮ and ▮▮▮▮▮ discussed an NYPD-related concern[2] that ▮▮▮▮ intended to email ▮▮▮▮ about, as well as ▮▮▮▮ assisting in arranging a "private meeting" with ▮▮▮.

13.    I know from my review of the contents of the iCloud account used by ▮▮▮▮ obtained pursuant to a court-issued search warrant, among other sources, that on or about July 25 and July 26, 2022, ▮▮▮▮▮ ▮ exchanged the following text messages with ▮▮▮▮ ▮ and ▮▮▮▮ (Adams's scheduler, who is referred to as the "Adams Scheduler" in the Indictment and ▮ in the messages below), reflecting that the private meeting referred to above was to be between Adams and ▮▮▮.



| FROM | TO | |
|------|-----|---|
| ▮▮ | ▮▮ | The Mayo[r] has agreed to a personal late evening on the rooftop with Consul Generals name is ▮▮▮ ▮▮ |
| | | It will be a small group. Below are the dates. ▮▮ will work with you to coordinate. |
| | | Thanks. |
| | | ▮▮ The dates for private meeting is 8/25 at 8pm 8/26 at 8:15 or 8:30pm |
| ▮▮ | ▮▮ ▮ | Thank you ▮▮ |
| | | I will coordinate the ▮▮▮ |

---

[2]    Based on my investigation, I believe this was likely a request by ▮▮▮ that the NYPD place a police booth near the Turkish Consulate.  It does not appear, based on investigation to date, that a police booth was in fact placed outside the consulate.

2017.08.02

SDNY_09 ▮▮▮▮
SUBJECT TO PROTECTIVE ORDER



14.    I understand, based on my review of the contents of an iCloud account used by ███████████ as well as messages ██████████ has exchanged with others that were recovered from search warrants for other accounts and/or devices, that ██████████ has communicated using electronic messages in various forms, including text messages and messaging applications such as Signal, at least as recently as August 2024, and that such messages are likely to be stored on her personal electronic devices. Based on my involvement in this investigation, including my review of electronic communications obtained by subpoena and search warrant, I am aware that Adams uses Signal to communicate, including in connection with the Subject Offenses, and sometimes encourages others to do so, and that people who work with Adams also use Signal to communicate with him and others. Based on my experience and participation in this and other investigations, I know that Signal is an encrypted messaging application, which allows users to set the application to automatically delete messages at certain intervals. In the course of this investigation, I have learned that on at least some occasions, law enforcement has been able to

7

2017.08.02

SUBJECT TO PROTECTIVE ORDER

retrieve Signal messages from seized electronic devices, even if those messages were not found on an iCloud account used by the device's owner.

**B. Probable Cause Justifying Search of the Subject Device**

15.    For the reasons set forth above, there is probable cause to believe that the Subject Devices will contain evidence of the Subject Offenses. In addition to the evidence discussed above that ████████ has used such devices to send and receive communications which constitute evidence of the Subject Offenses, there is probable cause to believe that the Subject Devices will contain evidence of the Subject Offenses for these additional reasons:

a.    I am aware, based on my training and experience, and consultation with other FBI personnel, that messages of the type discussed above can be, and often are, found on multiple devices used by the same user.  For example, the messages described in paragraphs 11 through 13 are iMessages (the messaging program used on Apple iPhones), and iMessages will typically be found on all iPhones used by the same user, assuming the user continues to use the same iCloud account.  Although Signal does not readily transfer between devices, as noted above the Signal communications sent or received by ████████ are recent, and thus likely to be found on a cellphone that was recently in her possession.

b.    Cellphones can be used to store documents, including emails, text messages, previous electronic chats, and financial documents like bank statements and travel expenditures.  Document attachments to communications can be saved intentionally or as a result of a cellphone's operating system or web browser to an electronic device, including a cellphone.  Moreover, and more generally, users of cellphones who are engaged in or communicating about the commission of the Subject Offenses often store documents relevant to that activity on their devices, and also maintain notes of meetings and telephone calls on their devices.  Such documents

8

2017.08.02

SDNY_09_0000003931
SUBJECT TO PROTECTIVE ORDER

can include, but are not limited to, Microsoft Word and PDF documents, drafts, scans, bank statements received from financial institutions, and government filings.

      c.    Electronic files (such as files containing the messages discussed above), or remnants of those files, downloaded to a cellphone, can be stored for years at little or no cost. Even when such files have been deleted, they can be recovered months or years later using readily available forensics tools.  When a person "deletes" a file on a cellphone the data contained in the file does not actually disappear; rather, that data remains on the storage medium and within the device unless and until it is overwritten by new data.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space–that is, in space on the device that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space–for long periods of time before they are overwritten.  In addition, a device's operating system may also keep a record of deleted data in a "swap" or "recovery" file.  Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or "cache."  The browser typically maintains a fixed amount of electronic storage medium space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages.  Thus, the ability to retrieve "residue" of an electronic file from a cellphone depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and cellphone habits.

      d.    Additionally, a person can transfer data from an old cellphone to a new device, including, for example, mail, contacts, calendars, photos and videos, books and pdfs, call logs, and text messages.  For individuals who regularly change or upgrade their devices, including cellphones, it is common to transfer electronic records, such as emails, contacts, calendars, photos and videos, books and pdfs, call logs, and text messages from the old phone to a new phone.

9

2017.08.02

SDNY_09_0000003932
SUBJECT TO PROTECTIVE ORDER

Individuals can transfer data in a few ways, including via a cellphone provider or Apple store, through a personal computer containing a backup, or through an iCloud backup. Accordingly, data found on one electronic device is often found on other devices used by the same person.

        e.     As discussed above, ████████ is known to use encrypted messaging applications, including Signal, to send messages. Such messages can sometimes be recovered from physical electronic devices even where they cannot be recovered from an iCloud backup.

        f.     Accordingly, there is probable cause to believe that evidence, fruits, and instrumentalities of the Subject Offenses listed in Attachment A, which is incorporated by reference herein, will be found on the Subject Devices.

      16.    Based on the foregoing, I respectfully submit there is probable cause to believe that the Subject Offenses have been committed, and that evidence of this criminal activity is likely to be found on the Subject Devices.

### III. Procedures for Searching ESI

#### A. Review of ESI

      17.    Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) will review the ESI contained on the Subject Devices for information responsive to the warrant.

      18.    In conducting this review, law enforcement may use various techniques to determine which files or other ESI contain evidence or fruits of the Subject Offenses. Such techniques may include, for example:

- surveying directories or folders and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);

2017.08.02

SDNY_09_0000003933
SUBJECT TO PROTECTIVE ORDER

- conducting a file-by-file review by "opening" or reading the first few "pages" of such files in order to determine their precise contents (analogous to performing a cursory examination of each document in a file cabinet to determine its relevance);

- "scanning" storage areas to discover and possibly recover recently deleted data or for deliberately hidden files; and

- performing electronic keyword searches through all electronic storage areas to determine the existence and location of search terms related to the subject matter of the investigation. (Keyword searches alone are typically inadequate to detect all information subject to seizure. For one thing, keyword searches work only for text data, yet many types of files, such as images and videos, do not store data as searchable text. Moreover, even as to text data, there may be information properly subject to seizure but that is not captured by a keyword search because the information does not contain the keywords being searched.)

19.     Law enforcement personnel will make reasonable efforts to restrict their search to data falling within the categories of evidence specified in the warrant.  Depending on the circumstances, however, law enforcement may need to conduct a complete review of all the ESI from the Subject Devices to locate all data responsive to the warrant.

**B.  Return of the Subject Devices**

20.     If the Government determines that the Subject Devices are no longer necessary to retrieve and preserve the data on the device, and that the Subject Devices are not subject to seizure pursuant to Federal Rule of Criminal Procedure 41(c), the Government will return the Subject Devices, upon request, if the New York County District Attorney's Office does not assert a legal basis to resume possession of the Subject Devices.  Data that is encrypted or unreadable will not be returned unless law enforcement personnel have determined that the data is not (i) an instrumentality of the offense, (ii) a fruit of the criminal activity, (iii) contraband, (iv) otherwise unlawfully possessed, or (v) evidence of the Subject Offenses.

2017.08.02

SDNY_09_0000003934
SUBJECT TO PROTECTIVE ORDER

## IV.  Conclusion and Ancillary Provisions

21.    Based on the foregoing, I respectfully request the court to issue a warrant to seize the items and information specified in Attachment A to this affidavit and to the Search and Seizure Warrant.

22.    In light of the confidential aspects of the continuing investigation, I respectfully request that this affidavit and all papers submitted herewith be maintained under seal until the Court orders otherwise.

/s/ ████████  by SDA with permission
████████
_____
Special Agent
Federal Bureau of Investigation

Sworn to me through the transmission of this
Affidavit by reliable electronic means, pursuant to
Federal Rules of Criminal Procedure 41(d)(3) and 4.1,
on 19th day of November, 2024

_Stewart D. Aaron_

_____
HON. STEWART D. AARON
UNITED STATES MAGISTRATE JUDGE

2017.08.02

12

SDNY_09_0000003935
SUBJECT TO PROTECTIVE ORDER

**Attachment A**

## I.  The Subject Devices

The Subject Devices are two blue titanium iPhone 15 Pro Max cellphones bearing IMEI numbers 355364287102652 and 358606710123987 seized from ████████████ on September 27, 2024, and presently in the custody the New York County District Attorney's office in New York, New York.

## II.  Seizure and Review of ESI on the Subject Device

### A.  Evidence, Fruits, and Instrumentalities of the Subject Offenses

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the ESI contained on the Subject Devices for evidence, fruits, and instrumentalities of violations of (i) wire fraud, in violation of 18 U.S.C. § 1343; (ii) solicitation of campaign contributions from foreign nationals, in violation of 52 U.S.C. § 30121; (iii) federal program bribery, in violation of 18 U.S.C. § 666; and (iv) conspiracy to commit each of the above offenses, in violation of 18 U.S.C. § 371 (collectively, the "Subject Offenses"), described as follows:

1.  Evidence concerning the identity or location of the owner(s) or user(s) of the Subject Devices.

2.  Evidence of knowledge or understanding of, or intent to violate, laws and regulations governing the conduct of the 2021 and 2025 New York City mayoral races.

3.  Evidence of foreign donations to the 2021 Adams Campaigns.

4.  Evidence of individuals or entities who donated to the Adams Campaigns before or after receiving transfers of funds similar to the amount of the donation.

5.  Identity of any persons or entities involved, wittingly or unwittingly, in straw donations to the Adams Campaigns.

6.  Evidence relating to the source of funds for payment or reimbursement of persons serving as conduits for campaign contributions to the Adams Campaigns.

7.  Evidence regarding any requests by the Adams Campaigns for matching funds based on straw donations, including any discussions of matching funds.

8.  Evidence of free or discounted travel benefits (including airfare, accommodations, meals, transportation, and entertainment) provided to Adams or persons traveling with Adams.

9.  Evidence of an intent to exchange benefits between the Turkish Government or entities and persons acting at its behest, and Adams or the Adams Campaigns, including but not

2022.01.31

SDNY_09_0000003936
SUBJECT TO PROTECTIVE ORDER

limited to evidence of a relationship between straw donations or travel benefits and any actions taken by Adams or any persons connected to Adams.

10.    Evidence relating to coordination between Turkish nationals or the Turkish Government and the Adams Campaigns concerning political contributions to the Adams Campaigns, including, but not limited to, evidence of motive and intent for Turkish nationals or the Turkish Government to provide or facilitate campaign contributions to the Adams Campaigns, and evidence of motive and intent by any person who is or was associated with or employed by the Adams Campaigns to provide benefits, whether lawfully or unlawfully, to Turkish nationals or the Turkish Government in return for campaign contributions.

11.    Evidence of Adams's relationship with



Erden Arkan,                                                                    Mohammed Bahi,                   or

12.    Evidence concerning efforts to conceal the Subject Offences, to destroy or conceal evidence of the Subject Offenses, to devise or coordinate false exculpatory explanations for the conduct underlying the Subject Offenses, or to otherwise obstruct law enforcement from investigating the Subject Offenses.

**B.  Review of ESI**

Following seizure of any electronic communications device and/or the creation of forensic image copies, law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the ESI contained therein for information responsive to the warrant.

In conducting this review, law enforcement personnel may use various techniques to locate information responsive to the warrant, including, for example:

- surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);

- opening or cursorily reading the first few "pages" of such files in order to determine their precise contents;

- scanning storage areas to discover and possibly recover recently deleted files or deliberately hidden files;

- performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation; and

2017.08.02

SDNY_09_0000003937
SUBJECT TO PROTECTIVE ORDER

- reviewing metadata, system information, configuration files, registry data, and any other information reflecting how, when, and by whom the device was used.

      Law enforcement personnel will make reasonable efforts to search only for files, documents, or other electronically stored information within the categories identified in Section II.A of this Attachment.  However, law enforcement personnel are authorized to conduct a complete review of all the ESI from seized devices or storage media if necessary to evaluate its contents and to locate all data responsive to the warrant.

3

2017.08.02

SDNY_09_0000003938
SUBJECT TO PROTECTIVE ORDER